UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

SLY MAGAZINE, LLC,

                 Plaintiff,

      vs.

WEIDER PUBLICATIONS L.L.C.,
and AMERICAN MEDIA, INC.,

              Defendants.

-----------------------------------------------------------------X

05 Civ. 3940 (CM)(RLE)

**<u>JOINT PRE-TRIAL ORDER</u>**

The parties having conferred among themselves and with the Court pursuant to Fed. R. Civ. P. 16, the following statements, directions and agreements are adopted as the Pretrial Order herein.

## I.  NATURE OF THE CASE

In April 2005, Plaintiff Sly Magazine, LLC brought this action against Weider Publications L.L.C. and American Media, Inc. alleging unfair competition, trade dress infringement, federal and state dilution and common law infringement of the Lanham Act, 15 U.S.C. § 1125(a) and (c), New York law, and N.Y. Gen. Bus. Law § 360-1 arising out of Defendants' use of the name SLY.  Plaintiff claims that it has priority to the mark SLY and that Defendants' use of the term "SLY" as the name of their magazine was confusingly similar to Plaintiff's use of the term "SLY."

Plaintiff seeks money damages and a declaratory judgment.

Defendants seek judgment dismissing the Complaint in its entirety.

9896.5

## II.    JURY/NON-JURY

A jury is claimed, and the estimated length of the trial is 3-4 days.

## III.    STIPULATED FACTS

The following facts are stipulated:

1.    Defendant Weider Publications L.L.C. is a Delaware limited liability company.

2.    American Media, Inc. is a Delaware Corporation.

3.    Both defendants are in the business of magazine publishing.

4.    Plaintiff Sly Magazine LLC is a New York limited liability corporation that maintains and operates an emagazine at plaintiff's website, www.slymagazine.com.

5.    Defendants' first issue of SLY had an on sale date of February 14, 2005, and a cover date of May/June 2005 and their third issue had an on sale date of July 25, 2005, and a cover date of July/August 2005, their fourth issue of SLY had an on sale date of December 26, 2005, and a cover date of December/January 2006.

6.    Defendants have ceased publication of SLY Magazine.

7.    Plaintiff's limited liability corporation was formed on or about May of 2004.

8.    Plaintiff's website www.slymagazine.com launched on or about November 2, 2004.

9.    Plaintiff continues to publish its emagazine.

2

9896.5

10.    Plaintiff's trademark SLY was registered in January of 2006 in class 16 goods.

11.    Plaintiff sent a cease and desist letter to defendants dated January 12, 2005.

12.    Plaintiff filed this lawsuit in April 2005.

13.    Plaintiff plans to offer a print version as well as its online version of its magazine.

## IV.    PARTIES' CONTENTIONS

### A.    Plaintiff's Contentions

1.    At least as early as June 30, 2003, Plaintiff adopted the "SLY" trademark to identify a fashion/life style publication which Plaintiff has marketed and advertised widely. *See* Ruby Charles Declaration, Exh. A.

2.    At least as early as October 2004, Plaintiff used in interstate commerce its trade dress and trademark for it's SLY. *See* Bates Stamped # S00012. Printouts from Wayback Machine internet archive website displaying different pages by year and from the dates prior to Plaintiff's official launch.

3.    Plaintiff has expended considerable time, effort, and resources to design and develop its unique and inherently distinctive trade dress and trademarks for its magazine. *See* Bates Stamped #'s S00012 – S00083.

4.    Plaintiff's trade dress is the word mark "SLY" used to identify its magazine.  A copy of the cover of one of plaintiff's publications. *See* Bates Stamped # S00001.

3

5.      Plaintiff has and continues to prominently display the "SLY" trade dress and trademark for its publication.  Such use by Plaintiff has been continuous since its first use.  *See* Bates Stamped #'s S00014-S00054. Printouts from Wayback Machine internet archive website displaying different pages by year and from the dates prior to Plaintiff's official launch.

6.      The word "SLY" is arbitrary as it refers to magazines and published materials. *See* Ruby Charles Deposition, 28:7-29:15.

7.      The word "SLY" does not describe or suggest the Defendants' publication.  *See* Ruby Charles Deposition, 28:7-29:15.

8.      The word "SLY" does not describe or suggest the Plaintiff's publication. *See* Ruby Charles Deposition, 28:7-29:15.

9.      Plaintiff's use of the "SLY" trademark for its Sly Magazine is non-functional. *See* Ruby Charles Deposition, 28:7-29:15; Bates Stamped #'s S00014-S00054.

10.      The Plaintiff's SLY is a lifestyle/fashion magazine.  *See* Bates Stamped #'s S00002; S00011–S00012; S00062; S00064; S1221-S1226.

11.      Plaintiff's use of the "SLY" trademark for its publication is inherently distinctive. *See* Ruby Charles Deposition, 28:7-29:15.

12.      Plaintiff's use of the "SLY" trademark for its publication has substantial secondary meaning in the marketplace. *See* Bates Stamped #'s S00879- S00889; S00891-S00953; S00969-S00972; S00976-S00984; S1292-S1295; S1299-S1306.

13.      Plaintiff has extensively advertised and promoted SLY in various media in the United States including, Internet web-sites, promotional mailers and sales materials, company profiles, trade show displays, sample requests, promotional events, clothing and in

9896.5

business transactions with journalists, photographers and stylists. *See* Bates Stamped #'s S00005- S00008; S00012; S00084; S00089-S00090; S00096-S00098; S00112-S00121; S00145-S00157; S00163-S00164; S00201-S00204; S00211-S00216; S00269-S00293; S00294-S00309; S1311.

14.    Upon information and belief, as a result of Plaintiff's continuous and exclusive use of SLY and its extensive advertising and promotion, the purchasing public has come to associate Plaintiff as the source and sponsor of SLY. *See* Bates Stamped #'s S00852-S00866; S1008-S1034; S1071-S1220.

15.    Plaintiff has established goodwill in its trade dress and trademark. As a result, these trade dress and trademarks are valuable assets of Plaintiff's business. *See* Declaration Ruby Charles, ¶¶ 14, 16; Declaration Alexandra Charles, ¶ 14.

16.    Defendants are in the business of inter alia, designing, advertising, marketing, publishing, distributing, selling and/or offering for sale magazines and other published materials. *See* Bates Stamped #'s S00985-S00986.

17.    Since January of 2005, Defendants have advertised their magazine as "SLY". *See* Bates Stamped #'s S0867-S00877; D1688-90.

18.    Since February 14, 2005, Defendants have offered their SLY publication for sale to the public. *See* John D. Swider Deposition, 38:4-38:6.

19.    A fifth issue of Defendants' SLY magazine was scheduled to go on sale on February 6, 2006. *See* Charles E. Wetzel Deposition, 26:11-26:14; 27:2-27:7; 28:20-29:5; 34:6-36:8; Exh. 9.

5

20.     The Defendants' SLY magazine remained on sale throughout 2006. *See* Wetzel Deposition, 66:18-66:25; 73:13-73:20; 75:8-75:18; Exh. 15; Receipt for sale of defendants' magazine dated February 15, 2006 annexed as attachment to Jason Gerdes Declaration.

21.     Defendants' use of the "SLY" word mark to identify its publication is confusingly similar to Plaintiff's use of the SLY word mark to identify its publication. *See* Ruby Charles Declaration, ¶ 11.

22.     The Defendants' SLY publication is a lifestyle/fashion magazine. *See* Alexandra Charles Declaration, Exh. T.

23.     Defendants have used the mark "SLY" that is confusingly similar to Plaintiff's "SLY". Defendants published its premier issue long after receiving actual notice of plaintiff prior use of the SLY mark. *See* Bates Stamped # S00890.

24.     The use of the mark "SLY" by Defendants is likely to cause confusion with Plaintiff's magazine also identified by the SLY trademark. *See* Bates Stamped #'s S00638-S00847; S1036-S1058; S1322; S1333-S1339.

25.     The Defendants used the word mark SLY in commerce to identify a magazine long after Plaintiff adopted and first used the same trademark in commerce to identify its magazine. *See* John D. Swider Deposition, 38:4-38:6.

26.     Defendants have extensively advertised, promoted, marketed and sold their publication under the name "SLY". *See* Bates Stamped #'s S00867-S00877; D1688-90.

27.     As a result, many relevant purchasers are deceived into believing that the word mark "SLY" is associated with Defendants' Magazine, even though defendants are the

6

junior user. *See* Bates Stamped #'s S00638-S00847; S1036-S1058; S1322; S1330; S1333-S1339.

28.    Defendants' sales and advertising greatly exceeds that of Plaintiff; the senior holder. *See* John D. Swider Deposition, 66:8-66:12, 73:11-73:12.

29.    Defendants' revenue for all sales of SLY magazine is $794,317. *See* Defendant's Sly Magazine Statement of Income dated 12/16/2005, Bates Stamped #1547.

30.    400,000 copies of the first issue of SLY were distributed by American Media, Inc. through a distribution company. The final settlement resulted in sales of $106,906.09. *See* Wetzel Deposition, Exh. 16, Curtis' Wholesaler Statement and Final Settlement Statement for Defendants' SLY Issue 1.

31.    392,524 copies of the second issue of SLY were distributed by American Media, Inc. through a distribution company. The final settlement resulted in sales of $31,836.89. The final settlement resulted in sales of $106,906.09. *See* Wetzel Deposition, Exh. 18, Curtis' Wholesaler Statement and Final Settlement Statement for Defendants' SLY Issue 2.

32.    292,080 copies of the third issue of SLY were distributed by American Media, Inc. through a distribution company. The final settlement resulted in sales of $77,437.34. *See* Wetzel Deposition, Exh. 17, Curtis' Wholesaler Statement and Final Settlement Statement for Defendants' SLY Issue 3.

33.    143,260 copies of the fourth issue of SLY were distributed by American Media, Inc. through a distribution company. The sales through week three were $121,435. *See* Wetzel Deposition, Exh. 15, Curtis' Wholesaler Statement and Final Settlement Statement for Defendants' SLY Issue 4.

9896.5

34.    As such there is reverse confusion in that in the minds of the relevant purchasers any attempt at sales by Plaintiff of its SLY will be viewed as either originating or copied from Defendants. *See* Bates Stamped #'s S00867-S00877; D1688-90.

35.    Defendants' willfully infringed with actual knowledge of Plaintiff's trademark prior to each of their 4 publications. *See* Bates Stamped # D1544.

36.    Defendants' allege that they never conducted a trademark search. *See* Kahane Deposition, dated December 13, 2005, 68:23-69:18.

37.    A settlement conference was held on March 2, 2005. *See* John Bostany's letter to former defense counsel, Orin Snyder dated March 3, 2005.

38.    A settlement conference was order to be held on November 23, 2005. *See* Docket Entries 12 and 14.

39.    The conference was adjourned at Defendants' request to December 2, 2005 which was the day after Defendants' claim they sent the final issue for publication. *See* Cynthia S. Arato's Letter to Judge Casey dated November 4, 2005; Facsimiles between Plaintiff's and Defendant's counsel dated November 18, 2005 and November 21, 2005; Alison C. Gooding's Letter to Plaintiff's counsel dated November 21, 2005; and Cynthia S. Arato's Letter to Plaintiff's counsel dated November 22, 2005.

40.    On November 4, 2005, the Defendants' requested a postponement of discovery and revised schedule. *See* Cynthia S. Arato's Letter to Judge Casey dated November 4, 2005.

41.    On December 20, 2005, Judge Casey denied Defendants' application to adjourn the December 27, 2005 hearing. *See* Docket Entry 22.

8

9896.5

42.    Sylvester Stallone never licensed the SLY mark to Defendants.

43.    Sylvester Stallone does not own the SLY mark with respect to a magazine.

44.    Sylvester Stallone did not publish, print, disseminate, sell or buy Defendants' SLY magazine. *See* John D. Swider Deposition, dated December 13, 2005.

**B.    Defendant's Contentions**

1.    Plaintiff has never published a print magazine under the designation SLY, nor has it ever sold any such print magazine.  (P.I. Hr'g Tr. 4-5, 34; R. Charles Dep. 80, 99.)

2.    Plaintiff operates an Internet site using the designation SLY that features articles related to women's fashion and shoes and is directed to young women in the New York metropolitan area.  (Compl. ¶¶ 22 & 37; P.I. Hr'g Tr. 9; R. Charles Dep. 54; R. Charles Decl., Ex. M.)

3.    Defendants' use of SLY for a print magazine refers to the famous nickname "Sly" for Sylvester Stallone, by which he has been known since the *Rocky* movies in the 1970's. (Kahane Decl. ¶ 5; Kohlmann Decl. ¶¶ 2, 3, Exs. A, B.)

4.    This Court acknowledged that Plaintiff knew or should have known that Mr. Stallone is known as SLY.  (P.I. Hr'g Tr. 36.)

5.    Defendants' use of SLY for the title of its test magazine conveyed the image of Sylvester Stallone and and is directed to the fit over 40-year-old male market for which Sly Stallone is a role model.   (Kahane Decl. ¶¶ 3, 5-6.)

6.    Defendants' magazine relates to men's fitness and lifestyle.  (*Id.*)

9896.5

7.     This Court found that there is a difference between the focus of Plaintiff's web site magazine – a shoe fetish – and Defendant's magazine – Sylvester Stallone.  (P.I. Hr'g Tr. 10.)

8.     Defendants published and distributed four issues of its magazine and have discontinued publication since December 2005 – when the  last issue was shipped to newsstands. (P.I. Hr'g Tr. 7-8; Swider Dep. 47-8.)

9.     The Court found that Defendants' and plaintiff's products will never appear side by side on the shelf in a newsstand.  (P.I. Hr'g Tr. 33.)

10.    Defendants' right to the Sly designation is superior.

11.    Plaintiff's trademark is invalid.

12.    Plaintiff's mark is weak.

13.    Plaintiff's use of the Sly Designation is distinct from Defendants' "SLY."

14.    The markets for Plaintiff's and Defendants' respective publications are distinct.

15.    The relevant consumers are sufficiently sophisticated and can distinguish between the defendants' and the plaintiff's publications.

16.    There is no evidence of actual confusion.

17.    Defendants acted in good faith in adopting its name.

18.    The quality of the Defendants' product -- a defunct men's magazine -- has no bearing on plaintiff's product.

19.    There is no likelihood of confusion to support any of Plaintiff's claims.

20.    Plaintiff has suffered no damages.

9896.5

## V.    ISSUES TO BE TRIED

1.    Whether plaintiff has a valid mark entitled to protection?

2.    Whether defendants' use of "Sly" is likely to cause confusion with Plaintiff's use of "Sly"?

3.    Whether plaintiff or defendants have priority in the mark?

4.    Whether defendants' use of "Sly" constitutes a violation of the New York Anti-Dilution statute, misappropriation and unfair competition?

5.    Whether defendants' use of "Sly" was willful or in bad faith?

6.    Whether plaintiff is entitled to damages and if so, in what amount?

## VI.    PLAINTIFF'S EXHIBITS

P Ex. 1:    Printout from the tucows website evidencing creation of the SLY Magazine domain name on June 30, 2003 (attached as Exh. A to the December 9, 2005 Ruby Charles Declaration)

P Ex. 2:    SLY Magazine meeting minutes from 2002 (attached as Exh. B to the December 9, 2005 Ruby Charles Declaration)

P Ex. 3:    Production estimates for the SLY magazine from 2004 and 2005 (attached as Exh. C to the December 9, 2005 Ruby Charles Declaration).

P Ex. 4:    January 2004 photo shoots for SLY at Grand Central Station (attached as Exh. E to the December 9, 2005 Ruby Charles Declaration)

P Ex. 5:    March 2004 mock up for SLY (attached as Exh. F. to the December 9, 2005 Ruby Charles Declaration)

9896.5

P Ex 6:        June 2004 mock up for SLY (attached as Exh. G. to the December 9, 2005 Ruby Charles Declaration)

P Ex. 7:       May 2004 Articles of Organization of SLY Magazine, LLC. (attached as Exh. H to the December 9, 2005 Ruby Charles Declaration)

P Ex. 8:       May 15, 2004 company meeting invite and catering contract (attached as Exh. I to the December 9, 2005 Ruby Charles Declaration)

P Ex. 9:       Early 2004 Invoices for production, photography, designing and creation of SLY (attached as Exh. J to the December 9, 2005 Ruby Charles Declaration)

P Ex. 10:      Invitation sent by ENFLYER for the magazine launch party dated November 4, 2004 (attached as Exh. K to the December 9, 2005 Ruby Charles Declaration)

P Ex. 11:      Copies of portions of Plaintiff's SLY magazine (attached as Exh. L to the December 9, 2005 Ruby Charles Declaration)

P Ex. 12:      Description and profile of Plaintiff's SLY magazine (attached as Exh. M, N, and O to the December 9, 2005 Ruby Charles Declaration)

P Ex. 13:      Examples of the actual confusion that has occurred between Plaintiff's SLY trademark and Defendant's magazine (attached as Exh. P to the December 9, 2005 Ruby Charles Declaration)

P Ex. 14:      March 3, 2005 letter following up a settlement conference between plaintiff and defendants wherein the abortion of the planned publication of the Defendant's magazine under the SLY mark was discussed (attached as Exh. Q to the March 3, 2005 Alexandra Charles Declaration)

12

9896.5

P Ex. 15:     Correspondence adjourning the court ordered November 23, 2005 settlement conference to December 1 and then December 2 at Defendant's requests (attached as Exh. R to the March 3, 2005 Alexandra Charles Declaration)

P Ex. 16:     Testimony of Mr. Swider stating that the magazine is not on sale on December 13 and will not be on sale until December 26 (attached as Exh. Q to the March 3, 2005 Alexandra Charles Declaration)

P Ex. 17:     Copies of some of the articles from Defendant's most recent magazine showing that it is not a magazine about Sylvester Stallone. (attached as Exh. T to the March 3, 2005 Alexandra Charles Declaration)

P Ex. 18:     Copies of subscriptions to Plaintiff's printed magazine. (attached as Exh. U to the March 3, 2005 Alexandra Charles Declaration)

P Ex. 19:     Copy of a reader's submission in Defendants' magazine showing readership confusion. (attached as Exh. V to the March 3, 2005 Alexandra Charles Declaration)

P Ex. 20:     Attached receipt for Defendants' publication dated February 15, 2006 (attached as an Exhibit to the March 24, 2006 Jason Gerdes Declaration)

P Ex. 21:     Deposition of Ruby Charles, dated January 9, 2006.

P Ex. 22:     Deposition of John D. Swider, dated December 13, 2005.

P Ex. 23:     Deposition of John D. Swider, Exhibit A, Spreadsheet summarizing draws and sales for Defendants' SLY publication.

P Ex. 24:     Deposition of Charles E. Wetzel, dated February 23, 2006

9896.5

P Ex. 25:    Redacted page except for 5 lines which show the draw for issues 1 & 2 of Defendants' SLY magazine (marked as Exh. 3 at the Wetzel Deposition)

P Ex. 26:    4 line report of unsold copies of Issue (marked as Exh. 4 at the Wetzel Deposition)

P Ex. 27:    Redacted page except for 5 lines which appear to show a projected schedule as of 2/22/05 but refers to issues 8 and 10 of Defendants' SLY magazine (marked as Exh. 5 at the Wetzel Deposition)

P Ex. 28:    Notice that Defendants' SLY publication will come out 8 times a year (marked as Exh. 6 at the Wetzel Deposition)

P Ex. 29:    Email referring to a database of wholesalers and retailers (marked as Exh. 7 and 8 at the Wetzel Deposition)

P Ex. 30:    Redacted document except for small portion dated 3/1/05 advising of change in sale dates. (marked as Exh. 9 at the Wetzel Deposition)

P Ex. 31:    Completely redacted document except for the sale dates of the July 2005 issue (marked as Exh. 11 at the Wetzel Deposition)

P Ex. 32:    Email changing the sale date of the July 2005 issue (marked as Exh. 12 and 13 at the Wetzel Deposition)

P Ex. 33:    Revised Notice that Defendants' SLY publication will come out 8 times a year (marked as Exh. 14 at the Wetzel Deposition)

P Ex. 34:    Curtis' Wholesaler Statement and Final Settlement Statement for Defendants' SLY Issue 4 (marked as Exh. 15 at the Wetzel Deposition)

9896.5

P Ex. 35:    Curtis' Wholesaler Statement and Final Settlement Statement for Defendants' SLY Issue 1 (marked as Exh. 16 at the Wetzel Deposition)

P Ex. 36:    Curtis' Wholesaler Statement and Final Settlement Statement for Defendants' SLY Issue 3 (marked as Exh. 17 at the Wetzel Deposition)

P Ex. 37:    Curtis' Wholesaler Statement and Final Settlement Statement for Defendants' SLY Issue 2 (marked as Exh. 18 at the Wetzel Deposition)

P Ex. 38:    4 documents produced by Curtis indicating who the publisher used as the printer for all 4 issues of Defendants' magazine (marked as Exh. 19 at the Wetzel Deposition)

P Ex. 39:    Letter from Jim Lillis with Class Trade Analysis for first two issues of Defendants' SLY magazine (marked as Exh. 20 at the Wetzel Deposition)

P Ex. 40:    Curtis' responses to Plaintiff's requests for documents delineating the distribution by wholesalers of Defendants' SLY publication dated January 10, 2005, June 13, 2005, and November 12, 2005.

P Ex. 41:    Curtis' responses to Plaintiff's requests for unsold copies of Defendants' SLY publication.

P Ex. 42:    Curtis' responses to Plaintiff's requests for sales breakdown by retailer of Defendants' SLY publication.

P Ex. 43:    Spreadsheets listing the distributors and wholesalers, (bates stamped #'s D1736-37)

P Ex. 44:    Balance sheets identifying American Media, Inc.'s revenue for their SLY publication (bates stamped #'s D0512-0529)

15

P Ex. 45:    Balance sheets identifying American Media, Inc.'s revenue for their SLY publication (bates stamped # D0446)

P Ex. 46:    American Media's Inc.'s Master Production Date Schedule (bates stamped #'s D1546; D1549-52; D1556; D1559)

P Ex. 47:    American Media Inc.'s Summary of Cumulative Revenue by Distributor (bates stamped #'s D0447-D0448)

P Ex. 48:    Cease and Desist Letter from John P. Bostany to David Pecker, dated January 12, 2005 (Bates Stamped # S00890)

P Ex. 49:    Letter from John P. Bostany to Hon. Ronald L. Ellis dated January 20, 2006 and exhibits referenced therein.

P Ex. 50:    Cover of Plaintiff's publication, (Bates Stamped # S00001)

P Ex. 51:    Description of Plaintiff's SLY publication, (Bates Stamped # S00002)

P Ex. 52:    Plaintiff's Launch Party, (Bates Stamped #'s S00005-S00008)

P Ex. 53:    Letter from Plaintiff accepting invitation to fashion show, (Bates Stamped # S00011)

P Ex. 54:    Description of Plaintiff's SLY publication, (Bates Stamped #'s S00012-S00013)

P Ex. 55:    Plaintiff's website in 2004 (Bates Stamped #'s S00014-S00032); Plaintiff's website in 2004-2005, (Bates Stamped #'s S00033-S00054)

P Ex. 56:    Plaintiff's drafts of magazine and advertisements, Winter 2003, (Bates Stamped #'s S00055-S00057); Plaintiff's drafts of magazine and advertisements, Fall 2004, (Bates Stamped #'s S00058-S00062)

9896.5

P Ex. 57:    Plaintiff's meeting held on May 15, 2004, (Bates Stamped # S00063)

P Ex. 58:    Plaintiff's profile, (Bates Stamped #'s S00064-S00065)

P Ex. 59:    Plaintiff's public relations campaign, (Bates Stamped #'s S00066-S00072)

P Ex. 60:    Testimonials to Plaintiff's magazine, (Bates Stamped # S00073)

P Ex. 61:    Drafts of Plaintiff's magazine, (Bates Stamped #'s S00074-S00076)

P Ex. 62:    Plaintiff's business plan dated August 20, 2004, (Bates Stamped #'s S00077-S00081)

P Ex. 63:    Usage statistics for May 2004 through March 2005 on Plaintiff's website, www.slymagazine.net, (Bates Stamped # S00082); Usage statistics for September 2004 through August 2005 on Plaintiff's website, www.slymagazine.net, (Bates Stamped # S00083)

P Ex. 64:    Plaintiff's permission for its photo shoot in Grand Central Terminal dated January 22, 2004, (Bates Stamped # S00084)

P Ex. 65:    Plaintiff's vendor estimates and invoices dated in 2004, (Bates Stamped #'s S00089-S00090; S00096-S00098; S00112-S00116)

P Ex. 66:    Plaintiff's expenses in connection with promotions in April 2004, (Bates Stamped #'s S00118-S00121)

P Ex. 67:    Plaintiff's sample requests from October 2004 through December 2004, (Bates Stamped #'s S00145-S00157; S00163-S00164; S00269-S00293)

P Ex. 68:    Plaintiff's poster printing estimates dated April 21, 2004, (Bates Stamped #'s S00201-S00202)

P Ex. 69:      Article submissions to Plaintiff's magazines, (Bates Stamped #'s S00203-S00204; S00211-S00216; S00294)

P Ex. 70:      Plaintiff's design and production estimates, (Bates Stamped #'s S00295-S00309)

P Ex. 71:      Plaintiff's distribution estimate, (Bates Stamped #'s S000301-S000303)

P Ex. 72:      Response to a reader submission found in Defendants' publication where Defendants' apologize for the confusion between Plaintiff's and Defendants' publications. (Bates Stamped #'s S00676-S00677)

P Ex. 73:      Numerous emails written to Plaintiff requesting a subscription to Defendants' magazine, (Bates Stamped #'s S00651; S00656; S00666; S00678-S00681; S00689-S00693; S00743-S00825; S1322; S1344)

P Ex. 74:      Several emails written to Plaintiff commenting on articles in Defendants' publication, (Bates Stamped #'s S00653; S00683; S00697; S00837-S00838; S1330; S1333; S1336)

P Ex. 75:      Several emails written to Plaintiff referencing Sylvester Stallone, (Bates Stamped #'s S00657-S00658; S00673; S00684; S00741; S1337)

P Ex. 76:      Numerous emails written to Plaintiff requesting a business relationship with Defendants' magazine, (Bates Stamped #'s S00638-S00650; S00652; S00654-S00655; S00659-S00672; S00674-S00675; S00682; S00685-S00686; S00694-S00696; S00698-S00740; S00742; S00826-S00835; S00839-S00847; S1338-S1339)

P Ex. 77:      Several survey responses to Plaintiff answered by consumers who believed they were rating Defendants' publication. (Bates Stamped #'s S1036-S1058)

9896.5

P Ex. 78:    Defendants' advertising of its magazine in February 2005. (Bates Stamped #'s S00867-S00877; D1688-1690)

P Ex. 79:    Invitations from the industry to Plaintiff in 2004 and 2005, (Bates Stamped #'s S00879-S00889; S00891-953; S1292-S1295)

P Ex. 80:    Bacon's 2005 New York Publicity Outlets listing Plaintiff's SLY, (Bates Stamped #'s S00969-S00972)

P Ex. 81:    NYC FootCare's 2005 Plaintiff's SLY listing, (Bates Stamped #'s S00977-S00984)

P Ex. 82:    Editorial info of Defendants' SLY publication identifying American Media, Inc., (Bates Stamped #'s S00985-S00986)

P Ex. 83:    Plaintiff's spreadsheet of advertising contacts, (Bates Stamped #'s S1299-S1306)

P Ex. 84:    Subscriptions to Plaintiff's SLY in 2005, (Bates Stamped #'s S00852-S00S866; S01008- S01034)

P Ex. 85:    Content of Plaintiff's magazine, (Bates Stamped #'s S1221-S1236)

P Ex. 86:    Plaintiff's showroom shoe sale held on September 9th, 2005; (Bates Stamped #'s S1311-S1312)

P Ex. 87:    Plaintiff's website mock-up April/May 2004, (Bates Stamped #'s S00217-S00248)

P Ex. 88:    Plaintiff's website mock-up June 7, 2004, (Bates Stamped #'s S00249-S00251)

P Ex. 89:    Plaintiff's customers' website feedback survey dated from November 4, 2004 through November 25, 2005, (Bates Stamped #'s S1071-S1120)

9896.5

P Ex. 90:    Defendants' email dated October 4, 2004, admitting knowledge of Plaintiff's trademark application, (Bates Stamped # D1544)

P Ex. 91:    Advertising order and picture received by Plaintiff from Ford for advertisement, (Bates Stamped #'s S00850-S00851)

P Ex. 92:    Defendants' emails discussing Ford's purchase of advertisement in Defendants' SLY magazine, (Bates Stamped #'s D0410-D0411)

P Ex. 93:    Defendants' distribution spreadsheet listing wholesalers, (Bates Stamped #'s D0425-D0438)

P Ex. 94:    Defendants' return report, (Bates Stamped #'s D0439-D0445)

P Ex. 95:    Defendants' account payable spreadsheet, (Bates Stamped #'s D0530-D0538.)

P Ex. 96:    Defendants' deductions, (Bates Stamped #'s D1087; D1089; D1143; D1145)

P Ex. 97:    Plaintiff's updated website, May 25, 2007.

P Ex. 98:    Plaintiff's SLY trademark registration (attached as Exh. A to the March 3, 2006 John P. Bostany Declaration)

P Ex. 99:    Plaintiff's SLY magazine subscriptions received from Ebsco Industries pursuant to subpoena.

P Ex. 100:    Printouts from Wayback Machine internet archive website displaying different pages by year and from the dates prior to Plaintiff's official launch (attached as Exh. C to the December 20, 2005 Susan Kohlmann Declaration)

P Ex. 101:    Article submissions for SLY magazine from 2004 (attached as Exh. D to the December 9, 2005 Ruby Charles Declaration)

9896.5

P Ex. 102:     Ruby Charles Declaration dated December 9, 2005

P Ex. 103:     Alexandra Charles Declaration dated December 22, 2005.

P Ex. 104:     Jason Gerdes Declaration dated March 24, 2006.

P Ex. 107:     Deposition of Jason Gerdes, dated January 9, 2006 and January 11, 2006.

P Ex. 108:     Deposition of Alexandra Charles, dated January 11, 2006.

P Ex. 109:     Deposition of Dan Danqua.

P Ex. 110:     Deposition of Beagy Francois.

P Ex. 111:     Deposition of Michael B. Kahane, dated December 13, 2005.

P. Ex. 112:    Deposition of Thomas J. Helms, dated December 13, 2005.

P. Ex. 113:    Defendants' initial disclosures.

P. Ex. 114:    Subpoena of Sylvester Stallone Docket Entry 35.

P. Ex. 115:    Transcript of Court Conference, dated February 10, 2006.

P. Ex. 116:    Affirmation of Susan Kohlmann attesting to lack of Sylvester Stallone's address.

P. Ex. 117:    Plaintiff's Print Contract, (Bates Stamped #'s S00126-S00144)

P. Ex. 118:    Receipt for re-registration of Plaintiff's domain name, dated June 16, 2007.

P. Ex. 119:    Emails regarding Plaintiff's Sweepstake Promotion, dated in January 2007.

P. Ex. 120:    Job Posting for Plaintiff's publication, dated July 2, 2007.

P. Ex. 121:    Receipt for Rental for an upcoming promotional event, dated July 5, 2007.

P. Ex. 122:    Invoice for Plaintiff's Web design, dated April 30, 2007.

P. Ex. 123:    Invoice for Plaintiff's Web design, dated January 1, 2007.

P. Ex. 124:    Email from distributor requesting to distribute Plaintiff's magazine, dated February 9, 2007.

P. Ex. 125:    Email request from model to appear in Defendants' magazine sent to Plaintiff, dated July 12, 2007.

9896.5

P. Ex. 126:    Plaintiff's Spring 2007 magazine mock-up.


## VII.    DEFENDANTS' EXHIBITS

DX-1:    Defendants' first issue of SLY Magazine with a cover date of March 2005.

DX-2:    Defendants' second issue of SLY Magazine with a cover date of May/June 2005.

DX-3:    Defendants' third issue of SLY Magazine with a cover date of July/August 2005.

DX-4:    Defendants' fourth issue of SLY Magazine with a cover date of December/January 2006.

DX-5:    Copies of printouts from the Internet Movie Database for "Sylvester Stallone" (attached as Ex. A to the 2005 Kohlmann Declaration)

DX-6:    Copies of printouts from Sylvester Stallone's fan website (attached as Ex. B to the 2005 Kohlmann Declaration)

DX-7:    Copies of printouts from Plaintiff's website on December 17, 2005 (attached as Ex. D to the 2005 Kohlmann Declaration)

DX-8:    An email from a third party to Plaintiff dated October 25, 2004 (Plaintiff's production S-00639-40)

DX-9:    Copies of Sly Magazine's press announcements (attached as Ex. A to the Swider Declaration)

DX-10:    Susan J. Kohlmann Declaration dated December 20, 2005

DX-11:    Michael B. Kahane Declaration dated December 20, 2005

DX-12:    John D. Swider Declaration dated December 20, 2005

DX-13:    Susan J. Kohlmann Declaration dated March 17, 2006

DX-14:    Sales Efficiency Report for Sly Magazine (D 1545; marked as Exhibit A at the deposition of Thomas J. Helms)

DX-15:    Sly Magazine Statement of Income dated 12/16/2005 designated as "Highly Confidential" (D 1547)

DX-16:    Memorandum dated 12/02/04 re Sly Stallone Magazine, Issue #1, Specs and Schedule designated as "Highly Confidential" (D 1548)

9896.5

DX-17:     Sly Magazine Master Production Date Schedule 2005-10 designated as "Highly
           Confidential" (D 1549)

DX-18:     Sly Magazine Master Production Date Schedule 2005-11 designated as "Highly
           Confidential (D 1551)

DX-19:     Sly Magazine Master Production Date Schedule 2006-1 designated as "Highly
           Confidential (D 1552)

DX-20:     Sly Production Plan dated 3/1/05 designated as "Highly Confidential" (D 1550)

DX-21:     Letter from J. Bostany to Hon. R.C. Casey dated October 28, 2005 (attached as Ex. C
           to the Kohlmann Declaration dated March 17, 2006)

DX-22:     Copy of Plaintiff's Amendment to Allege Use filing with specimens to the USPTO
           (attached as Ex. H to the Kohlmann Declaration dated March 17, 2006)

DX-23:     Copy of USPTO Office Action dated February 5, 2005 re Serial No. 78/444,956
           (attached as Ex. I to the Kohlmann Declaration dated March 17, 2006)

DX-24:     Copy of Plaintiff's Response to Office Action dated March 11, 2005 re Serial No.
           78/444,956 (attached as Ex. J to the Kohlmann Declaration dated March 17, 2006)

DX-25:     Copy of USPTO Office Action dated March 31, 2005 re Serial No. 78/444,956
           (attached as Ex. L to the Kohlmann Declaration dated March 17, 2006)

DX-26:     Copy of Plaintiff's Response to Office Action dated April 25, 2005 re Serial No.
           78/444,956 (attached as Ex. M to the Kohlmann Declaration dated March 17, 2006)

DX-27:     A single page, double-sided promotional item entitled "SLY: shoes. the obsession"
           (attached as Ex. P to the Kohlmann Declaration dated March 17, 2006)

DX-28:     Transcript of the preliminary injunction hearing held on December 27, 2005

DX-29:     Sly Magazine Statement of Income dated 10/5/2005 designated as "Highly
           Confidential" (D 0446; marked as Exhibit B at the deposition of Thomas J. Helms)


## VIII.  STIPULATIONS AND OBJECTIONS WITH RESPECT TO EXHIBITS AND
## WITNESSES

### Plaintiff's Objections

DX-1:      No objection.

DX-2:      No objection.

9896.5

DX-3:      No objection.

DX-4:      No objection.

DX-5:      Plaintiff objects on the grounds of authenticity, hearsay and relevance.

DX-6:      Plaintiff objects on the grounds of authenticity, hearsay and relevance.

DX-7:      No objection.

DX-8:      No objection.

DX-9:      Plaintiff objects on the grounds of relevance, prejudice, hearsay, and authenticity.

DX-10:     Plaintiff objects on the grounds of hearsay and authenticity.

DX-11:     Plaintiff objects on the grounds of hearsay and authenticity.

DX-12:     Plaintiff objects on the grounds of hearsay and authenticity.

DX-13:     Plaintiff objects on the grounds of hearsay and authenticity.

DX-14:     Plaintiff objects on the grounds of authenticity, hearsay and relevance.

DX-15:     Plaintiff objects on the grounds of hearsay and authenticity.

DX-16:     Plaintiff objects on the grounds of hearsay, authenticity, relevance, and prejudice.

DX-17:     No objection.

DX-18:     No objection.

DX-19:     No objection.

DX-20:     No objection.

DX-21:     Plaintiff objects on the ground of relevance and hearsay.

DX-22:     Plaintiff objects on the grounds of hearsay, relevance, and authenticity.

DX-23:     Plaintiff objects on the grounds of hearsay, relevance, and authenticity.

DX-24:     Plaintiff objects on the grounds of hearsay, relevance, and authenticity.

DX-25:     Plaintiff objects on the grounds of hearsay, relevance, and authenticity.

DX-26:     Plaintiff objects on the grounds of hearsay, relevance, and authenticity.

DX-27:     No objection.

9896.5

DX-28:    Plaintiff objects on the grounds of relevance and prejudice.

DX-29:    Plaintiff objects on the grounds of hearsay and authenticity.

Defendants' Objections

Defendants object to the use of the descriptions provided in connection with Plaintiff's Exhibit List and do not concede that the Exhibits reflect the descriptions. Defendants object to the extent that Plaintiff has identified multiple exhibits more than once but cannot, based on the description specifically identify which are duplicative. Defendants object to the following plaintiff's exhibits on the grounds of hearsay, authenticity, foundation and relevance: 3, 4, 9, 14, 15, 18, 20, 25, 26, 27, 28, 29, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 49, 60, 80, 91, 99, 113, 114 and 116. Defendants specifically object to the admissibility of Plaintiff's Exhibits 117 to 126 on the grounds that they were produced for the first time on July 20, 2007 at 7 p.m. Discovery in this case is long over and Plaintiff's belated submission should be stricken by the Court and these Exhibits excluded.

Defendants object to Plaintiff's witnesses 5 through 32, and 34 through 45, as irrelevant.

IX.    **PLAINTIFF'S WITNESS LIST**

1.    Ruby Charles

2.    Alexandra Charles

3.    Jason Gerdes

4.    Dan Danqua

5.    Sherisse Liwanag

9896.5

6.    Taj Smith

7.    Hakim Peay

8.    Kerry Giblin

9.    Albert Azout

10.   Michael Ventura

11.   Hyun Kim

12.   Mariel Concepcion

13.   Rachel Andre

14.   Debra Soto

15.   Tanya McDonald

16.   Charu Suri

17.   Christina Kallery

18.   Susan Eliya

19.   John Nantes

20.   Sandra Dieudonne

21.   Andrea Huxford

22.   Marie Simon

23.   Staci Griesbach

24.   Becky Aoanan

9896.5

25.    Khyati Shah

26.    Stefanie Gudis

27.    Dean Case

28.    Bruce Elfstrom

29.    Joe Tabacca

30.    Sharon Danquah

31.    Macary Fils-Aime

32.    Robert and Carolyn Gerdes

33.    Beagy Francois

34.    Ann Marie Rogers

35.    Eric Hason

36.    Brian Robinson

37.    Nechelle Vanias

38.    Sam Spragg

39.    Dr. Oliver Zong

40.    Gustavo Arango

41.    Christiani Barbeiri

42.    Roni Abrams

43.    Bekai Cole

9896.5

44.    Doug McKendry

45.    Fred Genther

## X.    DEFENDANTS' WITNESS LIST

Assuming that plaintiffs will call, as identified above, Ruby Charles, Alexandra Charles, Jason Gerdes, and Dan Danqua, defendants will call in their case in chief:

John Swider, Sr. Vice President of Operations for Defendant American Media, Inc.

Michael Kahane, Former Executive Vice President and General Counsel of Defendant American Media, Inc.

Charles E. Wetzel, Curtis Circulation Company.

9896.5

## XI.    RELIEF SOUGHT

Plaintiff seeks (1) damages consisting of Defendants' revenue for their willful infringement upon the SLY trademark; and (2) a declaratory judgment that Defendants' infringed upon Plaintiff's SLY trademark.

Defendants seek judgment dismissing the Complaint in its entirety.

Dated:        July 20, 2007

_____
U.S.D.J.

JENNER & BLOCK LLP

By: _____
    Susan J. Kohlmann
919 Third Avenue
37th Floor
New York, NY 10022-3908
(212) 891-1600

*Attorneys for Defendants*
*Weider Publications L.L.C. and*
*American Media, Inc.*

THE BOSTANY LAW FIRM

By: _____
    Andrew T. Sweeney
40 Wall Street
New York, NY 10005-1315
(212) 530-4400

*Attorneys for Plaintiff*
*Sly Magazine, LLC*

9896.5