UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SLY MAGAZINE, LLC,

      Plaintiff,

  - against -

WEIDER PUBLICATIONS L.L.C. and
AMERICAN MEDIA,

      Defendants.

05 Civ. 3940 (RCC)

OPINION
& ORDER

RICHARD CONWAY CASEY, United States District Judge:[1]

  This case involves the ownership and use of the "SLY" trademark in the sale of magazine publications. The Court has previously ruled on discovery issues and has denied an application for preliminary injunction by Plaintiff Sly Magazine, LLC ("Plaintiff"). Now before the Court is Plaintiff's motion for leave to amend the complaint and to join new parties pursuant to Rule 15(a) and Rules 20(a) and 21, respectively, of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion is **DENIED**.

I. BACKGROUND

  Plaintiff, a New York limited liability company, purchased the domain name "www.slymagazine.com" on June 30, 2003, and launched an "online magazine" it calls "SLY" at that web address on November 1, 2004. (See Compl. ¶ 7.) Plaintiff describes its SLY publication as a "fashion/lifestyle" magazine; the website is titled "Sly . . . shoes, the obsession" in italicized script. At the time Plaintiff filed the instant motion, it had yet to publish a print version of SLY.

---

[1] The Honorable Richard Conway Casey passed away on March 22, 2007. Prior to his death, Judge Casey completed a substantial portion of the work on this opinion. In his honor and on his behalf, I issue this opinion in his name.

(Def.'s Opp. Mot. Amend at 1.)

Defendants Weider Publications LLC and American Media (collectively "Defendants") are publishers of numerous print magazines, some of which report news about the lives of film and television celebrities. (See Def.'s Mem. Opp. Prelim. Inj. at 3-4.) In September 2004, Defendants began promoting their SLY magazine, a print publication named after the actor Sylvester Stallone and purportedly aimed at a particular demographic: men over age 40 with an interest in physical fitness and an active lifestyle. (Id.) Defendants published four issues of SLY magazine during the calendar year 2005. Defendants' fourth and final issue of SLY magazine had an on-sale date of December 26, 2005 and hit newsstands as early as December 20, 2005. (Def.'s Opp. Mot. Amend at 10; Kohlmann Decl. ¶ 8.) The final issue was scheduled to remain on sale until at least March 26, 2006. (Id. at 11.)

At the beginning of 2005, however, before Defendants' published the first issue of their print magazine, Plaintiff sent a letter notifying Defendants of its purported right to the "SLY trademark" and asking Defendants to cease and desist any use of the mark. (Compl. Ex. 3.) Defendants proceeded with publication despite this request. Plaintiff then filed this action in April 2005 alleging claims for trade dress infringement, trademark dilution, and trademark infringement under § 43(a) of the Lanham Act, 15 U.S.C. § 1125, and New York trademark law, see N.Y. Gen. Bus. Law § 360 (McKinney 2006).

In July 2005, the parties agreed to a discovery schedule whereby amended pleadings were to be filed and joinder of additional parties was to be accomplished by August 15, 2005. (See Case Mgmt. Plan, Docket Entry #8.) In addition, the schedule demarcated July 29, 2005 as the last date for the parties to serve interrogatories. (Id.) The parties agreed that all discovery was to be

completed by December 21, 2005. (Id.) On November 7, 2005, however, the parties stipulated to an extension of discovery until January 24, 2006 for the limited purposes of obtaining and exchanging expert reports, conducting depositions, and serving requests for admissions. (See Scheduling Order, Docket Entry #11.)

On December 13, 2005, one week before the end of the initial discovery deadline and five weeks preceding the end of the extended deadline, Plaintiff issued a second set of interrogatories requesting that Defendants, among other things, "identify the wholesalers, distributors and/or sales companies involved in the sale or distribution of defendants [sic] 'SLY magazine.'" (Reply Decl. ¶ 3.) Defendants assert that Plaintiff had been on notice of "the existence and identities of the majority of these companies since as early as August 2005, when Defendants responded to Plaintiff's first discovery requests." (Def.'s Opp. Mot. Amend at 6.) Nonetheless, Defendants provided a response to the second set of interrogatories on January 19, 2006, identifying only "Curtis Circulation Company" ("Curtis") as a wholesaler, distributor, or sales company. (Reply Decl. ¶ 3.) Plaintiff issued a third-party subpoena for Curtis requesting, among other things, its distribution list for Defendants' SLY magazine. (Docket Entry #36.)

Meanwhile, on January 17, 2006, the United States Patent and Trademark Office ("PTO") issued Plaintiff's registration for the trademark "SLY." (Bostany Decl. ¶ 2.) Defendants' final issue of SLY magazine was already on sale through retailers at this time and, as noted above, remained on sale until at least March 26, 2006.

Discovery in this case came to a close when Curtis produced the list of third party distributors and retailers to Plaintiff in early February 2006. (Bostany Decl. ¶ 6.) On March 3, 2006, Plaintiff filed the instant motion.

3

II.  DISCUSSION

Plaintiff, whose current complaint alleges violations under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), seeks leave to amend its complaint to add a new claim against Defendants pursuant to § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), based on its acquisition of the registered trademark, and to join as defendants some of the companies identified through Curtis.[2] (See Reply Decl. ¶ 12.) Plaintiff claims that the distribution and retail companies it seeks to join as additional defendants are liable under the same provisions of the Lanham Act—§§ 43(a) and 32(1). Defendants oppose leave to amend on grounds that Plaintiff's motion follows an undue delay, that granting leave to amend would result in undue prejudice and, in any event, that Plaintiff's proposed amended complaint would be futile.

A.  **Leave to Amend to Add New Claim**

Under Rule 15(a), "a party may amend [its] pleading . . . by leave of court . . . and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Nevertheless, a district court has discretion to deny leave to amend upon a showing of "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962); see also The Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 604-05 (2d Cir. 2005) (stating that leave to amend "'should be denied only for such reasons as undue delay, bad faith, futility of the amendment, and

---

[2] Plaintiff seeks to join the following companies as defendants: Anderson News; Chas Levy Circulating Co.; Magazine Distributors, Inc.; Hudson News Co.; Ingram Periodicals, Inc.; The News Group; Hudson County News; Hudson R&M; Gopher News Co.; Curtis Circulation Co., LLC; WalMart Stores; and The Hudson Group. (Reply Decl. ¶ 6.)

4

perhaps most important, the resulting prejudice to the opposing party'") (quoting Richardson Greenshields Sec., Inc. v. Lau, 825 F.2d 647, 653 n.6 (2d Cir. 1987)); Ronzani v. Sanofi S.A., 899 F.2d 195, 198 (2d Cir. 1990) (holding that "refusal to grant leave must be based on a valid ground").

When addressing whether a proposed amendment would be futile, a court's inquiry is comparable to that required upon a Rule 12(b)(6) motion to dismiss for failure to state a claim. Aniero Concrete, 404 F.3d at 604. "[T]he court must accept the facts alleged by the party seeking to amend as true and construe them in the light most favorable to that party." Id. The court should not refuse leave to amend due to futility "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which could entitle him to relief." Id. (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

Here, Plaintiff seeks to add a claim against Defendants pursuant to § 32(1) of the Lanham Act, which governs liability for infringement of a registered mark. 15 U.S.C. § 1114(1) ("Any person who shall, without consent of the registrant . . . use in commerce any . . . colorable imitation of a registered mark . . . shall be liable."). Plaintiff obtained its registered trademark on January 17, 2006, several weeks after Defendants published the final issue of SLY magazine. Plaintiff is unable to allege direct infringement of its registered mark because there can be no liability based on retroactive registration of a trademark. See IMAF, S.p.A., v. J.C. Penney Co., Inc., No. 86 CV 9080, 1989 WL 54128, at *3 (S.D.N.Y. May 15, 1989) ("[T]he plaintiff has presented no cases and the Court has uncovered no authority that supports [a] theory" whereby "once registration of a trademark is granted it applies retroactively from the date of filing.").

Plaintiff believes it avoids this prohibition by claiming that Defendants are contributorily liable under § 32(1) for third-party distribution and retail sales of SLY magazine after the effective

5

date of Plaintiff's trademark registration. Contributory liability for trademark infringement can arise when "a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows is engaging in trademark infringement." Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 855 (1982). Thus, "a defendant is liable for infringement of plaintiff's registered mark if defendant knowingly 'supplied the ammunition' that allowed the wrongful user to complete the infringement." Power Test Petroleum Distribs., Inc. v. Manhattan & Queens Fuel Corp., 556 F. Supp. 392, 394 (E.D.N.Y. 1982) (quoting Stix Prods., Inc. v. United Merchants & Mfrs., Inc., 295 F. Supp. 479, 496 (S.D.N.Y. 1968)); see also The Proctor & Gamble Co. v. Haugen, 317 F.3d 1121, 1128 (10th Cir. 2003) ("The elements of a contributory liability claim are . . . (1) supply of a product and (2) knowledge of direct infringement.").

Plaintiff contends that Defendants are contributorily liable for third party sales of the final issue of SLY magazine occurring after January 17, 2006 because Defendants published and distributed the final issue of SLY magazine to retailers in December 2005 with knowledge of Plaintiff's claim of right to the mark. It is likely, Plaintiff argues, that Defendants were on notice of Plaintiff's claim to ownership and use of the SLY mark following Plaintiff's initial cease-and-desist letter of January 2005, and most certainly were on notice upon the onset of this litigation. Thus, according to Plaintiff, Defendants are "contributorily responsible" for third parties' direct infringement of a registered trademark even though, as Plaintiff admits, the final issue of SLY magazine was no longer in Defendants' custody and control when the SLY mark became registered. (Pl.'s Mem. Supp. Mot. Amend at 4-5.)

The benefit to Plaintiff under this theory is considerable because the Lanham Act treats infringement of a registered mark quite differently from infringement of a non-registered mark. For

example, infringement of a registered trademark exposes the infringing party to treble damages absent a court finding of "extenuating circumstances," 15 U.S.C. § 1117(b), or to substantial statutory damages upon plaintiff's election, id. § 1117(c), whereas infringement of a non-registered mark allows a plaintiff to recover only the infringing party's profits, damages sustained by the plaintiff, and the costs of the litigation, id. § 1117(a).³ Likewise, a registered trademark carries with it a presumption of validity and its holder a presumption of ownership, 15 U.S.C. § 1057(b); Am. Home Prods. Corp. v. Johnson Chem. Corp., 589 F.2d 103, 106 (2d Cir. 1978); a non-registered mark and its purported holder receive no similar advantages, see Reese Pub. Co., Inc. v. Hampton Int'l Commc'ns, Inc., 620 F.2d 7, 11 (2d Cir. 1980) (holding that "plaintiff must bear the burden of proving that [an] unregistered mark is not generic").⁴

To permit direct liability under § 32(1) based upon retroactive registration or, for that matter, contributory liability based upon acts which occurred in their entirety prior to registration, would obviate these elemental distinctions. And were the Court to accept Plaintiff's theory, it would cede an end-run around the general prohibition on retroactive registration. See IMAF, No. 86 CV 9080, 1989 WL 54128, at *3. Under the guise of contributory liability, Defendants could be held liable for infringement of the registered trademark from the date they were notified of Plaintiff's mere application for, or call to ownership of, that mark. Not only is this result contravened by direct case law, see id., but also cuts against the grain of federal trademark law writ large, which (as noted)

---

³ With respect to infringement of a non-registered mark, a court has discretion to adjust damages to reflect that which "the court shall find to be just, according to the circumstances of the case." Id. § 1117(a). Such damages may not exceed three times the amount actually sustained. Id.

⁴ But cf. Brookfield Commc'ns, Inc. v. West Coast Entm't Corp., 174 F.3d 1036 (9th Cir. 1999) (holding that, for purposes of determining priority of use, the trademark registrant is entitled to a presumptive first use date equivalent to the filing date of its registration application).

distinguishes between registered versus non-registered marks.

Thus, the fact that Defendants knew of Plaintiff's claim to the non-registered SLY mark is irrelevant to the question of Defendants' contributory liability under § 32(1) of the Lanham Act. Defendants cannot be held liable for infringement by others of Plaintiff's <u>registered</u> trademark unless Defendants knew or had reason to know that their publishing activity in December 2005 would "supply the ammunition" for those third parties to violate § 32(1), that is, infringe upon a <u>registered</u> mark. See <u>Power Test Petroleum</u>, 556 F. Supp. at 394. And not surprisingly, Plaintiff does not allege that Defendants could know, in December 2005, of that which did not exist until January 2006.

Accordingly, the Court finds "that the plaintiff can prove no set of facts in support of [its] claim" against Defendants for contributory liability under § 32(1) of the Lanham Act. Amending the complaint to add such a claim would be futile. See <u>Aniero Concrete</u>, 404 F.3d at 604.

**B.     Joinder of Additional Parties**

Plaintiff also seeks leave to join twelve additional parties to this litigation, all of them third-party distributors or retailers that sold Defendants' SLY magazine after January 17, 2006. Rule 21 of the Federal Rules of Civil Procedure governs proposed amendments seeking to add new defendants. <u>Momentum Luggage & Leisure Bags v. Jansport, Inc.</u>, No. 00 Civ. 7909, 2001 WL 58000, at *1-2 (S.D.N.Y. Jan. 23, 2001) (citing <u>Kaminsky v. Abrams</u>, 41 F.R.D. 168, 169 (S.D.N.Y. 1966) (applying Rule 21 to motion to amend complaint which sought to join parties though plaintiff moved pursuant to Rule 20(a) for that purpose)). Rule 21 allows for addition of parties "at any stage of the action and on such terms as are just." Fed. R. Civ. P. 21. Under Rule 21, "courts must consider judicial economy and their ability to manage each particular case, as well as how the

amendment would affect the use of judicial resources, the impact the amendment would have on the judicial system, and the impact [it] would have on each of the parties already named in the action." Momentum Luggage, 2001 WL 58000, at *2.

In deciding whether to allow joinder, courts adhere to "the same standard of liberality afforded to motions to amend under Rule 15." Id. (quoting Solar v. G & U, Inc., 86 F.R.D. 524, 527-28 (S.D.N.Y. 1980)). Thus, while "[i]n the absence of any apparent or declared reason . . . the leave sought should, as the rules require, be freely given," a court's refusal to grant leave to amend is justified on grounds of, inter alia, undue delay and undue prejudice. Foman, 371 U.S. at 182 (internal quotation omitted); see also Aniero Concrete, 404 F.3d at 604-05.

Often, as here, the concepts of undue delay and prejudice are interrelated. Courts have discretion "to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant." Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990). "The burden is on the party who wishes to amend to provide a satisfactory explanation for the delay . . . ." Id. Although "[d]elay alone, in the absence of a showing of undue prejudice or bad faith, typically provides an insufficient basis for denying a motion to amend," Resqnet.com, Inc. v. Lansa, Inc., 382 F. Supp. 2d 424, 449 (S.D.N.Y. 2005), "[t]he longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice," Evans v. Syracuse City Sch. Dist., 704 F.2d 44, 47 (2d Cir. 1983) (internal quotation omitted).

Undue prejudice may result from a proposed amendment which will cause further delay in the litigation. See H.L. Hayden Co. v. Siemens Med. Sys. Inc., 112 F.R.D. 417 (S.D.N.Y. 1986). Indeed, when determining whether undue prejudice would result in a particular case, the Second

Circuit has instructed district courts to ask whether the proposed amendments would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993). This analysis requires an assessment of "not only the amount of time that passed before the movant sought to amend, but also the reasons for that delay and its practical impact on the other side's legitimate interests, including both that party's ability to respond to new claims or defenses and any other prejudice flowing from a delay in the final adjudication of the case." Credit Suisse First Boston LLC v. Coeur D'Alene Mines Corp., 03 Civ. 9547, 2004 WL 2903772, at *3 (S.D.N.Y. Dec. 15, 2004).

Here, Plaintiff seeks leave to join twelve additional parties to its action against two current defendants after discovery has closed and both sides are poised to file motions for summary judgment. The parties' discovery schedule set August 15, 2005 as the last date for amended pleadings and the addition of new parties. That plan also listed July 29, 2005 as the last date for the parties to serve interrogatories. Although the parties agreed to extend the initial discovery deadline from December 21, 2005 to January 24, 2006, they did so to allow for specific discovery matters, not to permit additional interrogatories, amendments to the complaint, or joinder of additional parties. Despite this agreed-upon schedule, Plaintiff waited until December 13, 2005, one week before the end of the initial discovery deadline and five weeks preceding the end of the extended deadline, to even inquire about the identity of the third parties it now seeks to join.

Plaintiff provides no explanation for this delay, that is, other than its conclusory assertion that its "second set of interrogatories were timely." (Reply Decl. ¶ 3.) Some more substantive

10

justification is needed as to why Plaintiff waited six months to ask Defendants about the existence and identity of third party distributors and retailers that are commonly employed to distribute printed copies of magazines in the publishing industry. Such an explanation is particularly necessary in light of Defendants' contention that Plaintiff had been on notice of "the existence and identities of the majority of these companies since as early as August 2005, when Defendants responded to Plaintiff's first discovery requests." (Def.'s Opp. Mot. Leave at 6.) In the absence of any justification, it is clear Plaintiff's motion for leave to join additional parties after the close of discovery follows an undue delay on Plaintiff's part.[5]

Perhaps Plaintiff did not seek to join these parties before now because it only recently perceived its new theory of liability against Defendants based on the SLY trademark registration; after all, Plaintiff's theory requires it to affix third party liability for direct infringement as the hook upon which it can then hang a claim against Defendants for contributory liability. Were this Plaintiff's motive in seeking joinder, as the Court suspects it is, the Court's preceding determination that Plaintiff's theory of contributory liability is unavailing renders the proposed joinder fundamentally beside the point. In any event, the Court would not allow joinder at this stage of the litigation for such pretextual purposes.

Furthermore, it is evident that Plaintiff's motion to join twelve additional parties at this stage of the litigation will cause Defendants undue prejudice. Joinder of the distributors and retailers

---

[5] The Court also notes that, for the same reasons, Plaintiff fails to satisfy the "good cause" standard in Rule 16(b) of the Federal Rules of Civil Procedure, which applies to requests for modifications to a scheduling order. See Grochowski v. Phoenix Constr., 318 F.3d 80, 86 (2d Cir. 2003) ("Where a scheduling order has been entered, the lenient standard under Rule 15(a), which provides that leave to amend 'shall be freely given,' must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'").

11

would require the reopening of discovery and force Defendants to expend substantial additional resources as a result. In turn, reopening discovery on the scale necessary to accommodate so many new defendants would undoubtably cause significant further delays in this litigation. See <u>NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.</u>, 262 F. Supp. 2d 134, 151 (S.D.N.Y. 2003) ("If the motion [to amend] were to be granted, discovery would have to be reopened because the Amended Complaint seeks to add two additional defendants to the action and they would be entitled to . . . conduct discovery and prepare their defenses."). These consequences would amount to undue prejudice against Defendants; this prejudice is sufficient to deny Plaintiff leave to file an amended complaint. See <u>Credit Suisse</u>, 2004 WL 2903772, at *3-4 (denying a motion for leave to amend where the amendment would interfere with the scheduling order, cause prejudice to the non-movant by extending discovery time, and where movant failed to provide a good-faith basis for the delay).

### III. CONCLUSION

For the foregoing reasons, Defendants' motion for leave to file an amended complaint is **DENIED**.

So Ordered:  New York, New York
April 9, 2007

                                                **Loretta A. Preska, U.S.D.J.**
                                      **on behalf of the Hon. Richard Conway Casey**

resources as a result. In turn, reopening discovery on the scale necessary to accommodate so many new defendants would undoubtably cause significant further delays in this litigation. See NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd., 262 F. Supp. 2d 134, 151 (S.D.N.Y. 2003) ("If the motion [to amend] were to be granted, discovery would have to be reopened because the Amended Complaint seeks to add two additional defendants to the action and they would be entitled to . . . conduct discovery and prepare their defenses."). These consequences would amount to undue prejudice against Defendants; this prejudice is sufficient to deny Plaintiff leave to file an amended complaint. See Credit Suisse, 2004 WL 2903772, at *3-4 (denying a motion for leave to amend where the amendment would interfere with the scheduling order, cause prejudice to the non-movant by extending discovery time, and where movant failed to provide a good-faith basis for the delay).

### III. CONCLUSION

For the foregoing reasons, Defendants' motion for leave to file an amended complaint is **DENIED**.

So Ordered:   New York, New York
April 9, 2007

*Loretta A. Preska*
Loretta A. Preska, U.S.D.J.
**on behalf of the Hon. Richard Conway Casey**

12