UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SLY MAGAZINE, LLC,

                              Plaintiff,                    CASE NO. 07 CV 6265

        -against-

CURTIS CIRCULATION COMPANY, HUDSON
NEWS COMPANY, WAL-MART STORES, INC.,
CHAS LEVY CIRCULATING CO., LLC,
ANDERSON NEWS, LLC, MAGAZINE
DISTRIBUTORS, INCORPORATED, INGRAM
PERIODICALS, INC., THE NEWS GROUP,
INC., AND GOPHER NEWS COMPANY,

                              Defendants.
------------------------------------------------------------X

        Defendant, INGRAM PERIODICALS, INC., (hereinafter INGRAM

PERIODICALS) brings this motion to dismiss plaintiff's complaint pursuant to

Rules 12(b)(6) and 12(c) of the  Federal Rules of Civil Procedure.  This motion is

based upon the allegations made in plaintiff's complaint (Exhibit A), the pendency

of a related case pending in this court entitled *Sly Magazine*, *LLC v. Weider*

*Publications, L.L.C. and American Media* (05 CIV 3940) and the affidavit of

Bruce H. Jones, Director of Publisher Relations for INGRAM PERIODICALS.

**FACTS**

According to plaintiff's complaint, and the stipulated facts contained within the joint pre-trial order entered into by the parties in the related case of *Sly Magazine, LLC v. Weider Publications L.L.C. and American Media* case (Exhibit D), plaintiff is a New York limited liability corporation which maintains and operates an internet magazine at plaintiff's website www.slymagazine.com. The stipulated facts section of that joint pre-trial order also states that plaintiff's limited liability corporation was formed on or about May of 2004, that plaintiff's website launched on November 2, 2004, that plaintiff continues to publish its internet magazine and that plaintiff plans to offer a print magazine sometime in the future. Plaintiff's complaint further alleges that the trademark and trade dress which identifies plaintiff's magazine is the word mark "SLY" and that plaintiff continues to prominently display the "SLY" trademark on its publication. The complaint vaguely describes plaintiff's magazine as a lifestyle/fashion magazine, but its website, and the facts developed in the previously filed action entitled *Sly Magazine, LLC v. Weider Publications L.L.C. and American Media*, elaborate on this by stating that SLY's target audience is the sophisticated, under 40 year old single woman who has an obsession with shoes.

Both the complaint and the joint pre-trial order state that plaintiff's trademark SLY was registered in January 2006 – January 17, 2006 to be exact.

2

The complaint goes on to allege that the nine defendants sued in this case advertised and sold a print magazine called SLY which was also a lifestyle/fashion magazine, that the defendants extensively advertised, promoted, marketed and sold the other SLY magazine, and that the two SLY magazines are confusingly similar to each other, thereby deceiving relevant purchasers into believing that plaintiff's word mark "SLY" is actually associated with the print magazine of the same name.

The instant lawsuit actually represents plaintiff's second attempt to assert claims against INGRAM PERIODICALS INC. and the other eight named defendants, the first coming within the context of an earlier lawsuit entitled *Sly Magazine, LLC v. Weider Publications, LLC & American Media, Inc.* (05 CV 3940) which was filed in this same court on April 19, 2005.  A copy of that complaint is annexed hereto as Exhibit B.  During the course of that case, plaintiff filed a motion seeking to amend its complaint to join as new parties INGRAM PERIODICALS INC. and the other defendants now named in this lawsuit, and to add a new claim against Weider Publications and American Media asserting that they bear liability for distribution and retail sales of the Sylvester Stallone inspired SLY magazine which occurred after its trademark was registered.  That motion was denied in its entirety in a decision dated April 9, 2007, which was issued by Hon. Loretta Preska on behalf of the late Hon. Richard Casey.  A copy of that decision is annexed to the motion papers as Exhibit C.  Within its recitation of the facts, the court noted that the print SLY Magazine was named after the actor

Sylvester Stallone and purportedly aimed at a particular demographic, that being men over 40 with an interest in physical fitness and an active lifestyle.

In addressing plaintiff's contention that America Media and Weider Publication bear liability for the distribution and sale of the Sylvester Stallone SLY magazine after plaintiff's trademark was registered on January 17, 2006, the court concluded that the defendants could not be held liable for infringement by others of plaintiff's registered mark unless they knew or had reason to know that their publishing activity in December 2005 would infringe upon a registered mark.

As part of the *SLY Magazine LLC v. Weider Publications LLC and American Media* case, plaintiff sought a preliminary injunction, which was denied (Exhibit E).  The parties recently entered into a joint pre-trial order, a copy of which is annexed to the motion papers as Exhibit D.  Among the stipulated facts are the following:

a)    The first issue of the Sylvester Stallone inspired SLY Magazine "… had an on sale date of February 14, 2005, and a cover date of May/June 2005 and their third issue had an on sale date of July 25, 2005, and a cover date of July/August 2005, their fourth issue of SLY had an on sale date of December 26, 2005, and a cover date of December/January 2006".  (There is obviously something missing here as there is no mention of the second issue. Undoubtedly, what the parties meant to say was that the first issue had an on sale date of February 14, 2005 and had a cover date of February/March 2005, and that

4

the second issue had an on sale date in May of 2005 and a cover date of May/June 2005).

        b)     Weider Publications and American Media have ceased publication of SLY Magazine.

        c)     Plaintiff <u>plans</u> to offer a print version as ell as its online version (emphasis supplied).

Defendant INGRAM PERIODICALS is a distributor of magazines.  The affidavit of Bruce H. Jones, Vice President for Publisher Relations for INGRAM PERIODICALS, establishes the following facts:

        a)     INGRAM PERIODICALS is a distributor of magazines and has never published any magazines.

        b)     INGRAM PERIODICALS only distributed two issues of SLY Magazine, the first having an on sale date of February 18, 2005 and the second having an on sale date May 6, 2005.

        c)     With respect to the issue having an on sale date of February 18, 2005, INGRAM PERIODICALS distributed 2,806 copies of that issue, 2,016 of which were sold.

        d)     With respect to the issue having an on sale date of May 6, 2005, the number of issues distributed by INGRAM PERIODICALS which were sold was 7,342.

e)    At the time that INGRAM PERIODICALS distributed those two issues it had no knowledge of plaintiff's internet publication.

f)    INGRAM PERIODICALS was never aware of plaintiff's trademark registration dated January 17, 2006, and in any event did not distribute any issues of SLY Magazine at any time after January 17, 2006.

g)    INGRAM PERIODICALS did not participate in the selection of the mark used by the Sylvester Stallone based SLY Magazine; all INGRAM PERIODICALS did was to distribute the magazine on two occasions.

h)    The issues distributed by INGRAM PERIODICALS were sent to them by CURTIS CIRCULATION COMPANY.

## ARGUMENT

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim shall be dismissed if the pleading fails to set forth any set of facts that would entitle plaintiff to relief. *See* Fed. R Civ. P. 12(b)(6). *Cable News Network, L.P. v. GoSMS.Com,Inc.,* 2000 U.S. Dist. LEXIS 16156, at *16-17 (S.D.N.Y. 2000). A motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is analyzed under the same standard. *Nicholas v. Goord,* 430 F.3d 652, 658 n. 8 (2d Cir. 2005). In deciding a motion for judgment on the pleadings, a court may consider the pleadings and attached exhibits, statements or documents incorporated by reference, and matters subject to judicial notice. *Prentice v. Apfel*, 11 F. Supp. 2d 420, 424 (S.D.N.Y. 1998) (citation omitted).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations…a plaintiff's obligation to provide the 'grounds' or his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombley*, 127 S. Ct. 1955, 1964-65 (2007).  Accordingly, a complaint's "… factual allegations must be enough to raise a right to relief above the speculative level…". Id. at 1965.

Here, plaintiff's Complaint fails to meet this standard.

## I.    COUNT I OF THE COMPLAINT SHOULD BE DISMISSED BECAUSE INGRAM PERIODICALS DID NOT USE THE MARK IN COMMERCE AFTER THE REGISTRATION DATE

Count I of the plaintiff's complaint avers that, in violation of Section 35 of the Lanham Act, 15 U.S.C. Section 1114(1), defendant Ingram Periodicals infringed the plaintiff's registered trademark.  Section 1114(1), which governs liability for infringement of a registered trademark, in pertinent part, states that "[a]ny person who shall, without consent of the registrant…use in commerce any…colorable imitation of a registered mark…shall be liable."   15 U.S.C. Section 1114(1).

Plaintiff's complaint states that its "SLY" trademark was registered on January 17, 2006.  *See* Complaint at ¶ 37 and Exhibit 3 thereto.  Furthermore, the stipulated facts contained within the joint pre-trial order promulgated in the *Sly Magazine, LLC v. Weider Publications, L.L.C. and American Media* case states

that plaintiff's trademark was registered in January of 2006. Therefore, in order for Ingram Periodicals to be liable pursuant to Section 1114(1), it would have had to have used in commerce a colorable imitation of the plaintiff's mark after January 17, 2006. Count I of plaintiff's complaint merely asserts in broad, conclusory language that all of the nine defendants advertised, promoted, marketed and/or sold the Sylvester Stallone inspired SLY Magazine after January 17, 2006, but the complaints fails to provide any factual basis to support these allegations.

The court is respectfully referred to the affidavit of Bruce H. Jones, Vice President of Publisher Relations for Ingram Periodicals, which establishes that Ingram Periodicals distributed only two issues of SLY magazine, one in February 2005 and the other in May 2005, that Ingram Periodicals never distributed any issues of SLY magazine after plaintiff registered its trademark, that Ingram Periodicals has no plan to distribute any additional copies of SLY magazine, that Ingram Periodicals did not participate in the selection of the mark used by the Sylvester Stallone based SLY magazine and that Ingram Periodicals never had any knowledge about the existence of plaintiff's internet based publication.

Of course, plaintiff cannot rely on its January 2006 registration to capture retroactively alleged infringement before the registration. In *Sly Magazine, LLC v. Weider Publications, L.L.C.*, No. 05 Civ. 3940(RCC), 2007 U.S. Dist. LEXIS 26283, at *10 (S.D.N.Y. Apr. 9, 2007), this Court held that this very same plaintiff could not "allege direct infringement of its registered mark" where the alleged activities took place before the registration of its mark, "because there can be no

8

liability based on retroactive registration of a trademark." (quoting *IMAF, S.p.A v. J.C. Penny Co.*, No. 86 CV 9080, 1989 U.S. Dist. LEXIS 5262, at *3 (S.D.N.Y. May 12, 1989) ("[T]he plaintiff has presented no cases and the Court has uncovered no authority that supports [a] theory" whereby "once registration of a trademark is granted it applies retroactively from the date of filing.").

Accordingly, there are no set of facts that would entitle the plaintiff to relief pursuant to Section 1114(1). This Count should be dismissed.

## II.    COUNT II OF THE COMPLAINT ALLEGING INFRINGEMENT OF UNREGISTERED MARK MUST BE DISMISSED

Count II of plaintiff's complaint alleges that defendant Ingram Periodicals infringed the plaintiff's trade dress in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a). To prevail in a trade dress infringement suit under the Lanham Act, plaintiff must allege, and prove, that it has a protectable trade dress by establishing that it is distinctive, either because the trade dress is inherently distinctive or because it has become distinctive by acquiring a secondary meaning. Assuming that plaintiff is able to demonstrate that it has a protectable trade dress, plaintiff must also show that a likelihood of confusion exists between its product and the defendant's product. *Sports Traveler, Inc. v. Advance Magazine Publishers, Inc.*, 25 F. Supp. 2d 154 (S.D.N.Y. 1998).

In order to determine whether a trade dress is inherently distinctive, one must first determine whether the allegedly protected trade dress concerns the design of the product itself (product configuration) or the packaging of the product. *Sports Traveler, Inc. v. Advance Magazine Publishers, Inc.*, supra. Here, plaintiff pleads only that its trade dress, the word "SLY", is used to identify its magazine. (Complaint at par. 16). It does not plead anything further concerning its alleged trade dress.

It is respectfully submitted that, based upon the case of *Sports Traveler, Inc. v. Advance Magazine Pub., Inc.*, supra, the court in the instant case should analyze plaintiff SLY Magazine's trade dress as one directed to the configuration or design of its product rather than the packaging of its product. In *Sports Traveler*, the publisher of a start-up magazine entitled "Sports Traveler" sued Conde Nast, the publisher of another magazine entitled "Sports for Women" for trade dress infringement under Section 43(a) of the Lanham Act, as well as common law unfair competition and misappropriation claims. The focus of the plaintiff's allegations were directed to the cover design and logo of Conde Nast's magazine and hence the court analyzed the trade dress as directed to the configuration or design of the product itself and not the packaging.

The test for inherent distinction of a trade dress directed to the configuration of the product is "whether the claimed dress is likely to serve as a source designer." *Sports Traveler, Inc.* at 25 F. Supp. 2d at 161. Plaintiff has not

pled any facts to support an allegation that its trade dress is inherently distinctive, nor has plaintiff pled facts sufficient to establish that its trade dress has become distinctive by acquiring a secondary meaning.  These reasons alone are sufficient to require dismissal of plaintiff's second cause of action.

However, even if plaintiff were to prevail on the first prong of the *Sports Traveler, Inc.* test, it cannot establish a likelihood of confusion between its product and the allegedly infringing magazine.  In order to prove likelihood of confusion, plaintiff bears the burden of establishing that "numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of defendant's mark."  *Sports Traveler, Inc*., supra.  Furthermore, for a finding of infringement to be made, it must be supported by a probability of confusion among an appreciable number of consumers.  A mere possibility of confusion is not sufficient.  See, *Streetwise Maps, Inc. v. Vandam ,Inc.*, 159 F. 3d 739, 743 (2d Cir. 1998).

In determining whether a likelihood of confusion exists, the courts examine eight factors set forth in the case of *Polaroid Corp. v. Polaroid Elecs. Corp.*, 287 F. 2d 492, 495 (2d Cir. 1961), cert. denied 368 U.S. 820 (1961).  These well established "Polaroid factors" are as follows:

1.    Strength of plaintiff's mark;
2.    Similarity of the competing marks;
3.    Competitive proximity of the products;
4.    Likelihood that plaintiff will offer a product like the defendant's product;
5.    Evidence of actual confusion;
6.    Defendant's good faith in selecting the mark;

7.    The quality of the defendant's product;

8.    Sophistication of the buyers.

Evaluation of these factors is not mechanical; rather, a court should focus on the ultimate question of whether consumers are likely to be confused. *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F. 3d 43, 46 (2d Cir. 2000). Determining the existence of the likelihood of confusion is a question of law in this circuit and thus can be decided on the record available to this court. See, *e.g. Nabisco, Inc.*, 220 F. 3d at 48.

Before discussing each of these factors, it should be pointed out that this court has already considered many of these Polaroid factors in connection with the very same marks that are at issue in this case during a hearing to show cause for a preliminary injunction held in the *SLY Magazine, LLC v. Weider Publications, LLC* action. In that case, Hon. Richard Casey heard argument concerning at least six of the Polaroid factors, those being the strength of plaintiff's mark, the similarity of the competing marks, the competitive proximity of the products, the likelihood that plaintiff will offer a product like the defendant's product, the existence of any actual confusion and defendant's good faith in selecting the mark. He then denied the preliminary injunction finding that plaintiff was unable to demonstrate the likelihood of success on the merits. (See Exhibit E, transcript of hearing for preliminary injunction).

As demonstrated below, an analysis of the eight Polaroid factors establishes that there is no likelihood of confusion:

1.      *The strength of plaintiff's mark*.    The inquiry into the strength of plaintiff's mark "focuses on the distinctiveness of the mark, or more precisely, its tendency to identify goods as coming from a particular source. *Lang v. Retirement Living Publ'g Co.*, 949 F. 2d 576, 584 (2nd Circuit 1991).  As established at the preliminary injunction hearing, and as set forth in the joint pre-trial order promulgated in the *Sly Magazine*, *LLC v. Weider Publications, L.L.C. and American Media* case, plaintiff's publication is not a print magazine but rather an internet based publication only.  As such, it does not compete with magazines on newsstands, which is where the Sylvester Stallone SLY magazine was marketed. (Preliminary injunction transcript at 4:9-5:6, 33:24-34:6).  In addition, plaintiff has not offered any evidence that its use of the "SLY" designation functions as an identifier of source.  This Polaroid factor weighs in defendant Ingram Periodical's favor.

2.      *Similarity of the competing marks*.  In evaluating the similarity of the marks, it is not sufficient to simply compare the words used.  Rather, the marks must be considered in their entireties as they are encountered in the marketplace. See, *Streetwise Maps,* 159 Fed. 3d at 744; *Lang*, 949 Fed. 2d at 581.  As demonstrated at the preliminary injunction hearing, and as set forth by Judge Preska as a finding of fact in her opinion and order which denied plaintiff's application to amend its complaint in the previously filed action (Exhibit C), the

use of "SLY" on the allegedly infringing print magazine was used by the publisher as a nickname for its creator and editorial director, Sylvester Stallone. In contrast, plaintiff uses the mark followed by the tag line "Shoes…the Obsession". (See also a copy of the cover of one of plaintiff's publications which is attached to plaintiff's complaint). Thus, the marks are used differently in the marketplace. On balance, this Polaroid factor weighs in favor of defendant Ingram Periodicals.

3.      *Competitive proximity of products*.   In considering this factor, the court should consider "the nature of the products, whether and to what extent the products compete with each other, and the structure of the relevant market." *Edmiston v. Jordan*, No. 98 Civ. 3298 (BLC) 1999 U.S. Dist. LEXIS 18262 (S.D.N.Y., 1999). Plaintiff's magazine is an on line magazine and not a print publication. It is therefore not available on newsstands. In contrast, the allegedly infringing magazine distributed by defendant Ingram Periodicals is a print publication. Indeed, Judge Casey noted the two magazines did not compete with one another. (Exhibit E at page 33). This Polaroid factor weighs strongly in favor defendant Ingram Periodicals.

4.      *Likelihood that plaintiff will offer a product like the defendant's product.* There is virtually no likelihood that plaintiff will offer a product like the defendant's product.   As stated above, the differences between the two publications, one being internet based only and one being a print magazine only, and the very different target audiences, mandates that this Polaroid factor weighs strongly in favor of defendant Ingram Periodicals.

5.     *Evidence of actual confusion.*  Actual confusion requires a finding of "consumer confusion that enables the seller to pass off his goods as the goods of another."  *Brockmeyer v. Hearst Corp.*, 248 F. Supp. 2d 281 at 292.  Plaintiff's complaint sets forth no facts of any kind which would support the conclusion that there was actual confusion of two publications.

6.     *Defendant's good faith in selecting the mark.*   It is well established that the good faith factor looks to whether a defendant adopted the mark with the intention of capitalizing on the plaintiff's reputation and good will, and any confusion that might result between its and the plaintiff's product.  *Brockmeyer v. Hearst Corp.,*, 248 F. Supp. 2d 281 at 298.  Here, plaintiff has not alleged any facts that defendant Ingram Periodicals had any involvement in selecting the mark used in connection with the allegedly infringing magazine.  Ingram Periodicals merely distributed the magazine with that mark once it was already selected.  This Polaroid factor favors Ingram Periodicals.

7.     *The quality of the defendant's produc.*  As discussed above, plaintiff's magazine is an on line magazine and is thus of an entirely different nature than the magazine Ingram Periodicals distributed on two occasions in 2005.  Moreover, plaintiff has not presented any facts concerning the quality of the magazine at issue or suggesting in any way that the magazine Ingram Periodicals distributed in 2005 was of lesser quality then plaintiff's.

8.    *Sophistication of the buyers.*  Judge Casey already concluded that the plaintiff's on line magazine and the magazine Ingram Periodicals distributed in 2005 were directed to different target audiences.  (Transcript at page 33).  Plaintiff has not made any allegations in the complaint concerning the sophistication of the buyers.

Based upon the foregoing, plaintiff cannot, as a matter of law provide any set of facts upon which it would be entitled to relief.  Count II should therefore be dismissed.

### III.  COUNT IV AND COUNT V OF PLAINTIFF'S COMPLAINT ALLEGING VIOLATION OF NEW YORK'S ANTI-DILUTION STATUTE MUST BE DISMISSED

Count IV of plaintiff's complaint is comprised of six paragraphs and alleges in very general terms that defendants engaged in trademark infringement and unfair competition, and in so doing references New York General Business Law §360-1(sic), which in reality is §360-*l,* which states, in pertinent part, that injunctive relief is available in those cases where a party is able to demonstrate likelihood of injury to business reputation or dilution of the distinctive quality of a mark or trade name.  However, nowhere in Count IV, or in the wherefore clause portion of plaintiff's complaint, does plaintiff actually request an injunction.  Even if the complaint sought an injunction such a request would be moot because the Sylvester Stallone print magazine is no longer being published.

16

Count V of plaintiff's complaint (paragraph 73 through 84) attempts to allege, in very general terms, that defendants engaged in unfair and/or deceptive trade practices by distributing Sylvester Stallone's SLY magazine under a mark that is confusingly similar to plaintiff's SLY mark, thereby misappropriating plaintiff's trade dress and trade name, and causing harm to plaintiff's reputation and damaging plaintiff's good will.   This cause of action also repeats the generalized allegations of infringement, tarnishment and so forth and alleges the likelihood of confusion.

### **Trademark Dilution**

In order to establish a trademark dilution claim under New York law, plaintiff must show:  1) ownership of a distinctive mark capable of being diluted and 2) likelihood of dilution.  *Le Book Pub., Inc. v. Black Book Photography, Inc.*. 418 F.Supp. 2d 305 (S.D.N.Y. 2005), *Strange Music, Inc. v. Strange Music, Inc.*, 326 F.Supp. 2d 481(S.D.N.Y. 2004); *Katz v. Modiri*, 283 F.Supp. 2d 883 (S.D.N.Y. 2003).   Accordingly, under New York law a two prong inquiry is required, the first of which is to determine whether plaintiff's mark is distinctive and the second of which is to determine whether the defendant's mark brings about a likelihood of dilution.   In undertaking that analysis, one must remain mindful that New York's anti-dilution law only protects extremely strong marks that have inherent or acquired distinctiveness.  *Malaco Leaf, AB v. Promotion in Motion, Inc.*, 287 F.Supp. 2d 355 (S.D.N.Y. 2003).

Each of the two factors will be considered separately:

a)    Distinctiveness:  New York law accords protection against dilution to marks that are distinctive as a result of an acquired secondary meaning as well as to those that are inherently distinctive; "secondary meaning" exists where the public is moved in any degree to buy an article because of its source.  *DeBeersLV Trademark Ltd. v. DeBeersDiamond Syndicate, Inc.*, 440 F. Supp. 2d 249 (S.D.N.Y. 2006).  To determine whether a trademark is famous or sufficiently distinctive, New York courts will look to the following factors:  the amount of advertising and other promotions, consumer studies, attempts to plagiarize the mark, duration of use, and media coverage of the mark.  *SMJ Group, Inc. v. 417 Lafayette Restaurant LLC*, 439 F.Supp. 2d 281 (S.D.N.Y. 2006).  There being nothing to suggest that plaintiff's trademark is famous for sufficiently distinctive, plaintiff cannot establish the first prong of the test.

**<u>Likelihood of Dilution</u>**

The second factor, as mentioned above, is likelihood of dilution, which in New York can involve either "blurring", which occurs when defendant uses or modifies plaintiff's mark to identify defendant's goods and services, thereby raising the possibility that the mark will lose its ability to serve as a unique identifier of plaintiff's product, or "tarnishment", which occurs when the mark is linked to shoddy products or is portrayed in an unsavory context with the result that the public will associate a lack of quality or lack of prestige in defendant's goods with plaintiff's unrelated goods. *GTFM, Inc. v. Solid Clothing, Inc.*, 215 F.Supp. 2d 273( S.D.N.Y. 2002).  Tarnishment is obviously not a consideration in

this case.  In determining whether there has been blurring of a trade dress, New York courts consider the following six factors:   1) similarity of the allegedly protected and allegedly infringing dress, 2) similarity of products, 3) sophistication of consumers, 4) predatory intent, 5)   renown of allegedly protected dress, 6) renown of allegedly infringing dress.   *Landscape Forms, Inc. v. Columbia Cascade Co.*, 117 F.Supp. 2d 360 (S.D.N.Y. 2000).  See, also *Katz v. Modiri*, 283 F.Supp. 2d 883, (S.D.N.Y. 2003) and *Montblanc-Simplo v. Aurora Due S.r.L.,* 363 F.Supp. 2d 467 (E.D.N.Y 2005). As has been established earlier in this memorandum, the two magazines are completely dissimilar in that plaintiff's magazine is an internet publication only and is directed toward women who  have an obsession with shoes while the Sylvester Stallone inspired SLY Magazine was a print magazine which was directed toward men over the age of 40 who have an interest in fitness and an active lifestyle. Furthermore, there is no doubt that consumers are sufficiently sophisticated to be able to distinguish the two publications from each other.  In addition, the affidavit of Bruce Jones establishes that INGRAM PERIODICALS did not have any predatory intent when it distributed issues of the print SLY Magazine in January and May of 2005.

### **Unfair Competition and Trademark Infringement**

Under New York law, a cause of action alleging unfair competition or trademark infringement requires a demonstration that the public is likely to confuse a defendant's product or service with that of plaintiff.  *Allied Maintenance Corp. v. Allied Mechanical Trades*, 42 NY2d 538 (1977); *Adirondack Appliance*

*Repair v. Adirondack Appliance Parts*, 148 A.D.2d 796 (3d Dept, 1989); *Federal Express Corp. v. Federal Espresso, Inc.*, 201 F. 3d 168      (2d Cir. 2000).  Put another way, a party must demonstrate either that there is the "likelihood of injury to its business reputation or of dilution to a distinctive quality of its mark or trade name".  *Allied Maintenance Corp. v. Allied Mechanical Trades,* supra.  Where plaintiff merely alleges, in conclusory fashion, that its patrons or customers might be deceived, misled or confused, such allegations do not sufficiently demonstrate any likelihood of injury to plaintiff's business reputation.  Accordingly, in *Little India Stores, Inc. v. Singh*, 101 AD2d 727 (1st Dept., 1984), the court concluded that plaintiff's application for an injunction needed to be denied because plaintiff merely alleged, in conclusory fashion, that its patrons residing in Queens might be deceived, misled and confused into patronizing defendant's establishment under the mistaken belief that it is a branch of plaintiff's business.  The court went on to state that such allegations do not suffice to demonstrate any likelihood of injury to plaintiff's business reputation, nor do the bare allegations that telephone calls have been received from unnamed sources, allegedly inquiring as to whether defendant's Queens store was related to plaintiff's Manhattan store, without more, tend to establish the likelihood of confusion or support a finding that the defendants intentionally selected the name (Little India) with the intent to trade upon the reputation of the prior user.  As the court observed, to merit protection against dilution, the plaintiff must possess a strong name that has a distinctive quality or has acquired a secondary meaning which is capable of dilution.

The court is also respectfully referred to the case of *Del Pub. Co., v. Stanley Publications, Inc.*, 9 NY2d 126 (1961).  In that case, Del Publishing Co., which published a magazine entitled "Modern Romances", sued Stanley Publications, Inc. alleging trademark infringement and unfair competition because defendant published the magazine entitled "Modern Confessions".  The court found that neither the name, sound nor appearance of defendant's title or magazine was significantly similar so as to cause persons of average intelligence to be confused either as to their origin or identity, and hence affirmed the dismissal of plaintiff's complaint as proper.

New York also requires that in order to prevail in a trademark infringement claim, that plaintiff must show that the trade name has acquired a secondary meaning.  *Camelot Assocs. Corp. v. Camelot Design & Dev. LLC,* 298 80 2d 799 (3rd Dept., 2002), *Adirondack Appliance Repair v. Adirondack Appliance Part,* supra.  In order to establish that secondary meaning, a plaintiff must demonstrate that the trade name has become so associated in the public's mind with the plaintiff that it identifies goods sold by that entity as distinguished from goods sold by others.  *Camelot Assocs. Corp. v. Camelot Design & Dev. LLC*, supra.  Moreover, a cause of action in unfair competition further requires plaintiff to plead and prove some element of bad faith.  *Capitaland Heating & Cooling Inc.  v. Capital Refrig. Co.*,Inc. 134 A.D.2d 721 (3rd Dept, 1987); *Camelot Associates Corp. v. Camelot Design & Dev. LLC,* supra.

Applying those concepts to the case at bar, it is clear that plaintiff cannot prevail.  Plaintiff's publication is solely an internet based publication, and there is no evidence, nor even an allegation, that it has acquired a secondary meaning in the time that it has been in existence.  Furthermore, there is nothing in the complaint which alleges that a substantial section of the public equates "SLY" with plaintiff and no other entity.  (Indeed, if anything, the public is more likely to identify "SLY" with Sylvester Stallone than with any other person or business). As such, there is no reason to believe that there is any chance that the public will confuse the two publications.  Furthermore, there is nothing to suggest that INGRAM PERIODICALS acted in bad faith when it distributed two issues of the print SLY Magazine in 2005.

## **CONCLUSION**

Based upon the foregoing, it is respectfully requested that the court grant the instant motion in its entirety and dismiss plaintiff's complaint insofar as it seeks to assert claims against INGRAM PERIODICALS.


Dated:  White Plains, New York
      August 20, 2007

                       Respectfully submitted

                       VOUTÉ, LOHRFINK, MAGRO & COLLINS, LLP
                       Attorneys for INGRAM PERIODICALS INC.

                       By:_____
                          RALPH F. SCHOENE      (4547)
                       170 Hamilton Avenue
                       White Plains, New York 10601-1789
                       Tel.:  (914) 946-1400
                       Fax:  (914) 946-8024