UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
SLY MAGAZINE, LLC,

                        Plaintiff,                   CASE NO. 07 CV 6265

  -against-

                                                               AFFIDAVIT

CURTIS CIRCULATION COMPANY, HUDSON
NEWS COMPANY, WAL-MART STORES, INC.,
CHAS LEVY CIRCULATING CO., LLC,
ANDERSON NEWS, LLC, MAGAZINE
DISTRIBUTORS, INCORPORATED, INGRAM
PERIDOCIALS, INC., THE NEWS GROUP,
INC., AND GOPHER NEWS COMPANY,

                        Defendants.
-------------------------------------------------------X

STATE OF TENNESSEE      )

COUNTY OF RUTHERFORD  ) ss.:

BRUCE H. JONES, being duly sworn, deposes and says:

     1.    I am employed by defendant, INGRAM PERIODICALS INC. as its Vice President for Publisher Relations. I have held that position since September of 2004. My duties include acquiring new publications for distribution, expanding the client base of INGRAM PERIODICALS INC. and managing the relationship with our publishers and distributors. I submit this affidavit in support of INGRAM PERIODICAL INC.'s motion to dismiss this lawsuit.

2. INGRAM PERIODICALS INC. is a distributor of magazines to large book store chains and a few specialty markets. We do not, and never have, published a magazine. The corporate offices are located in La Vergne, Tennessee.

3. In 2005, INGRAM PERIODICALS INC. distributed two issues of a print magazine known as SLY, a magazine which I understand had an affiliation with Sylvester Stallone and which had as its target audience men over the age of 40 who were interested in issues of fitness and well being. The name of the magazine, Sly, certainly fit in with Sylvester Stallone's nickname and his image as a tough, physically fit man. All of the copies of the magazine which we distributed were sent to us by Curtis Circulation Company, and we in turn distributed them to large national book store chains such as Barnes & Noble and Borders. None of the copies were sent by Ingram to small retailers at airports, kiosks and the like.

4. The first issue of SLY magazine which INGRAM PERIODICALS INC. distributed was Issue #10 which had an on sale date of February 18, 2005. (The on sale date represents the first date when the magazine can be displayed for sale). All together, INGRAM PERIODICALS INC. distributed 2,806 copies of that issue. Our records indicate that 2,016 copies of Issue #10 that Ingram distributed were sold. The remaining 790 copies which were not sold were destroyed pursuant to a procedure whereby the covers of all unsold magazines were stripped off from the remainder of the magazine and sent to a return center which counted all of the covers that were sent to it. A credit for all unsold magazines would be issued to Ingram Periodicals. The body of each unsold magazines was then destroyed.

5. The only other issue of SLY magazine distributed by INGRAM PERIODICALS INC. was Issue #11, which had an on sale date of May 6, 2005. The number sold of Issue #11 that INGRAM PERIODICALS INC. distributed

was 7,342. The same procedure of destruction of all unsold magazines, which was described in the preceding paragraph, was invoked with respect to Issue #11 as well.

6. At the time that INGRAM PERIODICALS INC. distributed Issues #10 and 11 of SLY magazine, it had no knowledge that there was an Internet based publication of the same name. In fact, neither I, nor anyone else at INGRAM PERIODICALS INC. as far as I know, even heard of the Internet publication SLY until INGRAM PERIODICALS INC. was served with the summons and complaint within the last several weeks.

7. INGRAM PERIODICALS INC. was never aware of plaintiff's trademark registration dated January 17, 2006, and in any event did not distribute any issues of Sly Magazine at any time after January 17, 2006.

8. INGRAM PERIODICALS INC. did not distribute any magazines entitled SLY after Issue #11.

9. At no time prior to being served with the summons and complaint in this lawsuit was INGRAM PERIODICALS INC. contacted by any representative of the Internet magazine SLY advising INGRAM PERIODICALS INC. of its existence or any of the allegations which are now set forth in the complaint.

10. INGRAM PERIODICALS INC. has no plan to distribute any additional copies of SLY magazine, and as far as I know, that magazine no longer exists.

11. INGRAM PERIODICALS INC. did not participate in the selection of the mark used by the Sylvester Stallone based SLY magazine. All INGRAM

PERIODICALS INC. did was to distribute the magazine on the two occasions set forth above.

_____
BRUCE H. JONES

Sworn to before me ___Virginia Castro-McLaughlin___ and subscribed in my presence this _17th_ day of August, 2007, a Notary Public in and for the County of Rutherford, State of Tennessee.

_____
Notary Public

NOTARY PUBLIC AT LARGE
DAVIDSON COUNTY, TENN.
VIRGINIA CASTRO-McLAUGHLIN

My Commission Expires MAY 24, 2008

4