Susan J. Kohlmann (SK1855)
Elizabeth Valentina (EV4345)
JENNER & BLOCK LLP
919 Third Avenue, 37th Floor
New York, NY  10022
(212) 891-1600
(212)891-1699 (facsimile)
*Attorneys for Defendants, Curtis Circulation*
*Company, Hudson News Company, Wal-Mart*
*Stores, Inc., Chas Levy Circulating Co., LLC,*
*Anderson News LLC, Magazine Distributors,*
*Incorporated, The News Group, Inc. and*
*Gopher News Company.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SLY MAGAZINE, LLC, | |
| *Plaintiff,* | Civ. No. 07-O6265 (DAB) |
| v. | |
| CURTIS CIRCULATION COMPANY, et al., | |
| *Defendants.* | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS**

# TABLE OF CONTENTS

Table of Authorities ......................................................................................................... i

**INTRODUCTION** ...................................................................................................... 1

**FACTS** ....................................................................................................................... 5

    A.  **The Parties** ................................................................................................. 5

    B.  **The Creation of SLY Magazine** ............................................................ 5

    C.  **The Publication of SLY Magazine** ......................................................... 6

    D.  **The Distribution of SLY Magazine** ....................................................... 7

    E.  **Plaintiff's Internet Website** ..................................................................... 7

    F.  **Plaintiff's Market** .................................................................................... 8

    G.  **Plaintiff's Trademark** .............................................................................. 9

**I.**   **PROCEDURAL HISTORY** ............................................................................. 9

    A.  **Judge Casey's Decision Denying Motion to Amend** .............................. 9

    B.  **The Complaint in the Instant Case** ......................................................... 10

**II.**  **LEGAL STANDARD UNDER RULE 12(b)(6)** ............................................. 11

**III.** **PLAINTIFF'S TRADEMARK INFRINGEMENT AND RELATED UNFAIR COMPETITION CLAIMS MUST BE DISMISSED** ....................................... 12

    A.  **Standard of Proof** .................................................................................... 12

        1.  **Plaintiff's Rights to the SLY Designation are Not Superior** ............... 13

        2.  **Plaintiff's Allegations Do Not and Cannot Support a Likelihood of Confusion** ...................................................................................... 14

            a.  **Plaintiff's mark is weak** .............................................................. 15

            b.  **Plaintiff's use of the "Sly" designation was distinct from the SLY Magazine that Defendants distributed or sold** .............................. 17

c.   Plaintiff and Defendants did not compete in the same market ..................... 17

d.   The relevant consumers were sufficiently sophisticated to distinguish between AMI's magazine and the Plaintiff's Website ................................. 19

e.   There is no evidence of actual confusion or reverse confusion ................... 19

f.   AMI did not adopt SLY in bad faith ............................................................ 19

g.   The quality of the magazine distributed or sold by Defendants has little bearing given the facts of this case ...................................................... 20

h.   Plaintiff was and is unlikely to "Bridge the Gap." ....................................... 20

IV.  PLAINTIFF'S NEW YORK STATE DILUTION CLAIM MUST BE DISMISSED ................................................................................................... 21

V.   PLAINTIFF'S MISAPPROPRIATION CLAIM AND OTHER MISCELLANEOUS CLAIMS UNDER NEW YORK COMMON LAW SHOULD BE DISMISSED ..........22

CONCLUSION ....................................................................................................... 25

## Table of Authorities

**Cases**

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ............................................................ 11

*Brockmeyer v. Hearst Corp.*, 248 F. Supp. 2d 281 (S.D.N.Y. 2003) ........................... 5, 13, 19, 20

*Diversified Marketing, Inc. v. Estee Lauder, Inc.* 705 F. Supp. 128 (S.D.N.Y. 1988)................. 23

*Durkin v. Shea*, 957 F. Supp. 1360, 1375-76 (S.D.N.Y. 1997) .................................................... 24

*Edmiston v. Jordan*, No. 98 Civ. 3928, 1999 WL 1072492 (S.D.N.Y. Nov. 24, 1999)............... 18

*FiberMark , Inc. v. Brownville Specialty Paper Products, Inc.*, No. Civ A7:02CV0517TJM-DE, 2006 WL 659514 (N.D.N.Y. March 13, 2006)......................................................................... 21

*Greenpoint Fin. Corp. v. Sperry & Hutchison Co., Inc.*, 116 F. Supp. 2d 405 (S.D.N.Y. 2000). 21

*Gruner + Jahr v. Meredith Corp.*, 991 F.2d 1072 (2d Cir. 1993) .................................... 12, 14, 15

*Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007) ............................................................................... 11

*Johnson & Johnson v. Guidant Corp.*, No. 06 Civ. 7685, 2007 WL 2456625 (S.D.N.Y. Aug. 29, 2007) ..................................................................................................................................... 12

*La Cibeles, Inc. v. Adipar, Ltd.*, No. 99 Civ. 4129, 2000 WL 1253240 (S.D.N.Y. Sept. 1, 2000) ............................................................................................................................................. 21, 23

*Lang v. Retirement Living Publ'g Co.*, 949, F.2d 576 (2d Cir. 1991) ....................... 12, 15, 19, 20

*Le Prevost v. N.Y. State*, No. 03 Civ. 2544, 2006 WL 2819582 (S.D.N.Y. Sept. 29, 2006) .......... 4

*Mejia and Assocs., Inc. v. Int'l Bus. Machs. Corp.*, 920 F. Supp. 540 (S.D.N.Y. 1996).. 15, 21, 22

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966 (C.D. Cal. 2006)... 24

*Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43 (2d Cir. 2000)............................................. 15

*National Football League Properties, Inc. v. Hi-Pro Marketing, Inc.*, No. 92 Civ. 1456 (MJL), 1992 WL 204370 (S.D.N.Y.  Aug. 11, 1992)......................................................................... 24

*New York Stock Exchange, Inc. v. New York, New York Hotel, LLC*, 69 F. Supp. 2d 479 (S.D.N.Y.)...................................................................................................................................... 24

*Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209 (2d Cir. 2003)................................. 12, 15

*Playtex Prods, Inc. v. Georgia Pacific Corp.*, 390 F.3d 158 (2d Cir. 2004) ................................ 15

*Res. Developers, Inc. v. Statute of Liberty Ellis Island Found., Inc.*, 926 F.2d 134 (2d Cir. 1991)
................................................................................................................................................ 15

*Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037 (2d Cir. 1980)................................ 23

*Sports Traveler, Inc. v. Advance Magazine Publishers, Inc.*, 25 F. Supp. 2d 154 (S.D.N.Y. 1998)
................................................................................................................................................ 22

*Streetwise Maps, Inc. v. Vandam, Inc.*, 159 F.3d 739 (2d Cir. 1998) ........................ 14, 16, 17, 20

*Sunenblick v. Harrell*, 895 F. Supp. 616 (S.D.N.Y. 1995) ............................................................ 22

*W.W.W. Pharmaceutical Co., Inc. v. The Gillette Co.*, 984 F.2d 567 (2d Cir. 1993).................. 14

**Statutes**

Fed.R.Civ.P. 12(b)(6)........................................................................................................................ 3
Fed.R.Civ.P. 8(a)(2)........................................................................................................................ 11
N.Y. Gen. Bus. L. §§ 349, 350 ...................................................................................................... 23
N.Y. Gen. Bus. Law § 360-1 .......................................................................................................... 21

**Miscellaneous**

J. Thomas McCarthy, 5 *McCarthy on Trademarks and Unfair Competition* § 28:46 (4th Ed.,
    2007) ...................................................................................................................................... 13
*McCarthy on Trademarks* § 1:8 .................................................................................................... 23
*McCarthy on Trademarks* § 7:38.1 ........................................................................................ 16, 17
*McCarthy on Trademarks* § 24:89................................................................................................ 24

# INTRODUCTION

With this action, Plaintiff is attempting to circumvent Judge Casey's decision denying, in a virtually identical case, a motion to add the very claim and join as defendants, the very parties it names as defendants, here.  In April 2005, Plaintiff brought a trademark infringement action against the *publishers* of SLY Magazine in *Sly Magazine, LLC v. Weider Publications LLC and American Media, Inc.,* 05 Civ 3940 (hereinafter *"Weider"*).  In this case, Plaintiff is bringing the same claims against the *distributors* of SLY Magazine.  The *Weider* complaint and the complaint against Defendants here are virtually identical.[1]  In order to find the Defendant distributors liable, the Court must find the publishers liable.  Plaintiff is simply seeking "another kick at the can" by re-litigating the same facts.  Plaintiff's allegations are not plausible or sufficient to support its claims.  Moreover, its complaint cannot be salvaged by amendments.  Based on the admissions and record evidence in *Weider*, Plaintiff's claims against the publishers cannot succeed as a matter of law.  In *Weider*, the Court denied Plaintiff's motion for a preliminary injunction and the publishers' motion for summary judgment is pending.  Nothing has changed since the original *Weider* allegations; the claims against the Defendants here, too, must fail.

The four issues of Sylvester Stallone's SLY Magazine were targeted to a completely distinct market from and in no way could be confused with Plaintiff's website.  The now defunct print magazine was named for its editorial director and namesake, Sylvester "Sly" Stallone, and was all about him and what he represents.  This 4-issue test magazine was directly linked to Sly Stallone's status in the media and public consciousness as a fit, over-40-year-old male.  It ceased

---

[1] There are no substantive differences between the facts alleged in this case (hereinafter "*Curtis*") and those alleged in *Weider*.  In the *Curtis* complaint, paragraphs 14-25 correspond directly and are identical to paragraphs 7-18 of the *Weider* complaint.  The remaining facts in the *Curtis* complaint, paragraphs 26-36, are all also present in the *Weider* complaint, either identically or with minor non-substantive changes.  Copies of the *Weider* complaint and the *Curtis* complaint are attached to the Declaration of Susan J. Kohlmann as Exhibits 36 and 37, respectively.

publication in December 2005.  Plaintiff has conceded it <u>never</u> published a print magazine. Accordingly, its trademark registration for a print magazine is based on a misrepresentation and therefore invalid. (Compl.[2] ¶ 38, Ex. 3.)  Plaintiff's Internet "magazine" "Sly" with the tagline "shoes…the obsession" is targeted to young women, thirty-five and under, who are single, with a college degree and earn above $40,000 a year.  It focuses on women's fashion and shoes. Stallone's SLY Magazine and Plaintiff's website operated in different media, targeted different consumers and did not compete with one another.    In denying Plaintiff's application for a preliminary injunction in its entirety in *Weider* on December 27, 2005, Judge Casey found that the Plaintiff did not show irreparable harm or the likelihood of success on the merits.  (P.I. Tr. at 39:14-17 – SJK Ex.[3] 1.)   As Judge Casey concluded, since Plaintiff has not published a print magazine and Stallone's SLY Magazine is no longer in print, the two will never appear side by side in the newsstands.  (P.I. Tr. at 33:18-22 – SJK Ex. 1.)  Plaintiff has not and is unable to allege facts that would entitle it to the relief it is seeking.

Plaintiff's invalid trademark registration issued on January 17, 2006. (Compl. ¶ 38, Ex. 3.) On March 3, 2006, Plaintiff moved in *Weider* to amend the Complaint to add a new claim of trademark infringement based on the registration and to join the distributors of Stallone's SLY Magazine, the precise parties named as defendants in this action.  On April 9, 2007, Judge Loretta Preska issued the Opinion and Order of the Court on Judge Casey's behalf and in his name, denying, in its entirety, Plaintiff's motion to amend and join the distributors named here.

---

[2] Plaintiff's complaint in this case shall be cited as "Compl. ¶ _."
[3] For the Court's convenience, Defendants submit the Declaration of Susan J. Kohlmann, dated September 17, 2007, to which all evidence cited in this Memorandum is attached as Exhibits and cited as "SJK Ex._." Declarations shall be cited as "Name Decl. ¶ _."  Deposition transcripts shall be cited as "Name Dep. page:line." The transcript of the hearing of the preliminary injunction motion in *Weider* shall be cited as "P.I. Tr. at page:line" and Judge Casey's Opinion in *Weider* shall be cited as "Op. at _." The Stipulated Facts in the Joint Pre-Trial Order in *Weider* shall be cited as "Stip. Facts in Jt. Pre-Trial Order ¶ _."

(Op. at 12 – SJK Ex. 2.)  Judge Casey held that to grant Plaintiff's motion would cause undue prejudice to the defendant publishers and would be futile because Plaintiff can prove no set of facts in support of its theory of contributory liability for infringement of a registered trademark. (Op. at 8 and 12 – SJK Ex. 2.)

Notwithstanding Judge Casey's decisions noted above, Plaintiff filed this duplicative action against the distributors of the defunct SLY Magazine.  The complaint in the instant case is based on the same facts as the complaint in *Weider*.  Both complaints allege that "[d]efendants are displaying, distributing, selling, and/or offering for sale a magazine, which infringes Plaintiff's trademark rights." (*Weider* Compl. ¶4; *Curtis* Compl. ¶11).  Indeed, Plaintiff has not even bothered to update the new complaint to add that the publishers, American Media, Inc. and Weider Publications, LLC (collectively, "AMI") ceased publishing the magazine at the end of 2005.  Compounding the frivolousness of this action is the fact that Plaintiff brought the instant case even though AMI's summary judgment motion to dismiss all of Plaintiff's claims – the very claims alleged here – is currently pending in *Weider*.  The disposition of the *Weider* summary judgment motion in AMI's favor would effectively resolve the issues of liability in this case.

Defendants Curtis Circulation Company, Hudson News Company, Wal-Mart Stores, Inc., Chas Levy Circulating Co., LLC, Anderson News LLC, Magazine Distributors, Incorporated, The News Group, Inc. and Gopher News Company (collectively, "Defendants") submit this memorandum of law in support of their motion to dismiss Plaintiff's complaint in its entirety for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6). Defendants also respectfully request that this Court consider the overwhelming evidence of admissions and stipulated facts from the record in *Weider* submitted in connection with this

motion and, if necessary, convert this motion to a motion for summary judgment.[4]    All of the evidence cited and even the arguments made in this motion to dismiss have in substance been briefed by the parties in the *Weider* action.[5]    As Judge Casey noted, Plaintiff knew of the distributors in August 2005 and chose to do nothing. (Op. at 10, 11 – SJK Ex. 2.)  At the very end of discovery, Plaintiff subpoenaed Curtis Circulation Company, a named defendant here, obtained its documents and took its deposition. (*Id.*)  In fact, Plaintiff has had every opportunity to have full discovery on and the opportunity to litigate in *Weider* the very issue of liability for trademark infringement and related claims that it raises in this case.

As a threshold matter and as will be explained more fully below, Plaintiff cannot plausibly claim that it has superior rights to the mark SLY.  Even accepting this threshold can be met, Plaintiff has not and cannot plead sufficient facts to make a plausible claim of likelihood of either potential or actual confusion between Plaintiff's use of "Sly" for its Internet Website directed to young, college-educated women about shoes, fashion, and lifestyle, and the now defunct men's magazine SLY which was targeted to appeal to fit men over 40, and based on its namesake and editorial director Sylvester "Sly" Stallone.  Furthermore, Plaintiff's state law claims are completely without merit and lack any plausible factual substantiation.    Therefore, Defendants' motion to dismiss should be granted in its entirety.

---

[4] *Le Prevost v. N.Y. State*, No. 03 Civ. 2544, 2006 WL 2819582 *4 (S.D.N.Y. Sept. 29, 2006) ("[A] motion to dismiss under Rule 12(b)(6) can be converted into a motion for summary judgment when matters outside of the pleadings have been presented, provided that all parties are given a reasonable opportunity to present all material made pertinent to such a motion by Rule 56…") (internal quotation omitted).

[5] *Id.* ("[t]he essential inquiry is whether the [non-moving party] should reasonably recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise…") (*citing In re G & A Books, Inc.*, 770 F. 2d 288, 295 (2d Cir. 1985).

## FACTS[6]

### A.    The Parties

Defendants Curtis Circulation Company, Hudson News Company, Wal-Mart Stores, Inc.,

Chas Levy Circulating Co., LLC, Anderson News LLC, Magazine Distributors, Incorporated,

The News Group, Inc. and Gopher News Company are in the business of distributing, selling

and/or offering for sale magazines and other published materials.  (Compl. ¶ 27.)

Plaintiff is a New York limited liability corporation, that maintains and operates a

website at www.slymagazine.com and the "online magazine" at that website it calls "Sly"

(hereinafter Plaintiff's "Website"). (Stip. Facts in Jt. Pre-Trial Order ¶4 – SJK Ex. 3; Compl.

¶ 1.)

### B.    The Creation of SLY Magazine

Sylvester Stallone has been known publicly as "Sly" since in or about 1976, the year the

first *Rocky* movie was released.  Sly Stallone is a famous, public figure, whose name and public

image evoke masculinity, physical fitness, and a general "tough guy" image for millions of fans

around the world. (2005 Kohlmann Decl. ¶ 3, Ex. B – SJK Exs. 15, 17.)   Personified by his best-

known characters, "Rambo" and "Rocky Balboa," "Sly" Stallone is a well known celebrity. (2005

Kohlmann Decl. ¶ 2, Exs. A, B – SJK Exs. 15-17.)  Over a period of more than three decades, Mr.

Stallone has starred or appeared in 52 films, has made more than 90 television guest appearances,

including personal interviews on nearly every major news program. (*Id.*)

---

[6] The evidence on which Defendants rely in support of this motion, other than Plaintiff's allegations
concerning the Defendants which are from the complaint, are admissions from the Plaintiff made in
depositions or declarations, stipulated facts from the Joint Pre-Trial Order and facts not specifically
controverted by Plaintiff in *Weider* and therefore deemed admitted pursuant to L.Civ.R. Rule 56.1(c).
*Brockmeyer v. Hearst Corp.*, 248 F. Supp. 2d 281, 289 (S.D.N.Y. 2003) ("The plaintiff's failure to
respond or contest the facts set forth by Defendants in their Rule 56.1 statement as being undisputed
constitutes an admission of those facts, and those facts are accepted as being undisputed.")

Mr. Stallone, together with AMI, developed a test magazine to appeal to the demographic that Mr. Stallone most embodies: fit men over 40, with an interest in physical fitness and an active lifestyle. (Kahane Decl. ¶ 3 – SJK Ex. 14; Swider Decl., Ex. A – SJK Ex. 26.) AMI used SLY as the nickname for its creator and editorial director, Sylvester Stallone. (Swider Decl., Exs. B, C, D, and E – SJK Exs. 27-30.)    Sly Stallone himself appeared on the first two covers, with the premier issue including features like, "Sly Has Dinner with James Caan," in which Mr. Stallone transcribed his dinner conversation with his friend and fellow actor, "Sly's Picks" in which Mr. Stallone reviewed movies recently released on DVD, an electronics review titled "Sly Stuff," and "The Sly Review" where Mr. Stallone interviews a woman described as "the first lady of porn." (Swider Decl. ¶¶ 5, 6, Exs. B, C – SJK Exs. 25, 27, 28.) The final issue of Defendants' SLY listed the following featured articles on its cover: "5 Ways to Keep Her Happier at Home," "Babes in the USA: The 40 Hottest Women Over 40," "How to Muscle Up at Any Age: the Sly No-Fail Plan!" and "Go From Seriously Soft to Seriously Fit: One Man's Success Story." (Swider Decl. ¶ 8, Ex. E – SJK Exs. 25, 30.)

### C.    The Publication of SLY Magazine

The first issue of SLY had an on sale date of February 14, 2005, and had a cover date of March 2005.  The second issue of SLY had an on sale date of May 9, 2005, and a cover date of May/June 2005 and the third issue had an on sale date of July 25, 2005, and a cover date of July/August 2005.  The final issue of SLY, the December/January 2006 issue, had an on sale date of December 26, 2005. (Stip. Facts to Jt. Pre-Trial Order ¶ 5 – SJK Ex. 3.)  The on sale date is the target date by which all issues of the magazine should be on sale. (Swider Dep. 47:18-24 – SJK Ex. 6; Swider Decl. ¶ 8 – SJK Ex. 25.)  AMI ceased to publish this title in December 2005. (Stip. Facts in Jt. Pre-Trial Order  ¶ 6 – SJK Ex. 3.)

###### D.    The Distribution of SLY Magazine

Each of the Defendants distributed one or all four of the now defunct issues of SLY Magazine sometime between February 14, 2005 and end of March 2006.  (Compl. ¶ 27; Stip. Facts in Jt. Pre-Trial Order ¶ 5 – SJK Ex. 3; 2006 Kohlmann Decl. ¶ 9, Ex. F – SJK Exs. 19, 20.)

###### E.    Plaintiff's Internet Website

Plaintiff's Website launched on or about November 1, 2004. (Stip. Facts in Jt. Pre-Trial Order ¶ 8 – SJK Ex. 3.)  Invitations to the November 4, 2004 launch party in Manhattan's Chelsea neighborhood featured a "Designer Shoe Give Away" as a part of the event. (R. Charles Dep. 66:15-16 – SJK Ex. 4; R. Charles Decl. ¶ 10, Ex. K – SJK Exs. 7, 9.)  As of December 17, 2005, Plaintiff's Website was titled "Sly. . . shoes, the obsession" in a stylized italicized script. (2005 Kohlmann Decl. ¶ 6, Ex. D – SJK Exs. 15, 18.)   Plaintiff initially planned to call its Internet "magazine" "Fierce" but changed the name to "Sly" because "Fierce" was clearly taken. (R. Charles Dep. 41:3-11 – SJK Ex. 4.)  Plaintiff chose "Sly" after conducting only a search of the USPTO's trademark database and nothing more.  (R. Charles Dep. 32:15-23 – SJK Ex. 4.)   Judge Casey acknowledged that Plaintiff knew or should have known that Mr. Stallone is known as "Sly." (P.I. Tr. at 36:13-16 – SJK Ex. 1.)

Despite claims that Plaintiff has and will publish a print magazine, it has <u>never</u> done so. (Stip. Facts to Jt. Pre-Trial Order ¶ 13 – SJK Ex. 3; P.I. Tr. at 4:9-5:6, 33:24-34:6 – SJK Ex. 1.) On January 9, 2006, Ruby Charles, Plaintiff's editor-in-chief, testified that it had not published a print magazine and the earliest one was scheduled to be on shelves was July 2006.  (R. Charles Dep. 81:4-13, 99:17-23 – SJK Ex. 4.)  Similarly, Jason Gerdes, Plaintiff's publisher, testified on January 11, 2006, that there was no print magazine. (Gerdes Dep. 129:23-25, 134:4-8 – SJK Ex.

7

5.)  Judge Casey found that Defendants' and Plaintiff's products will never appear side by side on the shelf in a newsstand.  (P.I. Tr. at 33:18-22 – SJK Ex. 1.)

**F.**    **Plaintiff's Market**

Plaintiff's marketing materials described their target market as follows: "Sly is for the quintessential woman — independent and charming.  Sly bridges the gap between beauty and wit because the two are never separate when discussing the beauty of women. Sly women." (R. Charles Decl., Ex. M – SJK Ex. 11.)  The Internet pages displayed at Plaintiff's Website in December 2005 depict a woman's shoe prominently and show advertisements and brief editorial pieces with leads such as "Diamonds are a girl's best friend and they're making a comeback" and "Bohemian chic dominated the runways at New York's fashion week.  Here's a sneak peak of what to expect this fall" as well as other items targeted to female audience. (2005 Kohlmann Decl. ¶ 6, Ex. D – SJK Exs. 15, 18.)  Plaintiff describes their target demographic as young women thirty-five and under, who are single, with a college degree, and earn above $40,000 a year. (R. Charles Decl., Ex. M – SJK Ex. 11; Charles Dep. 54:10-14 – SJK Ex. 4.)   Plaintiff describes its Internet "magazine" as "an invaluable resource to the upper echelon of lifestyle marketers who rely on the tastes of popular trendsetters to help define their business objectives. Sly provides coverage on *[sic]* the leading issues of *[sic]* which women have an opinion; speaking to women as no other has." (R. Charles Decl., Ex. O – SJK Ex. 13.)

Plaintiff features a column called "On Your Feet" and a department with a display of shoes called "Shoe Space" (R. Charles Decl., Ex. L – SJK Ex. 10.)  Plaintiff's profile describes that it will cover "High-end shoe designs and accessories" and "Shoe shopping with celebrities and lifestyle trends." (R. Charles Decl., Ex. O – SJK Ex. 13.)    Plaintiff has an ad depicting the word "Sly" where the "L" is a boot and the words "the obsession" underneath. (R. Charles Decl., Ex. L – SJK Ex. 10, S-00055.)  Plaintiff indicates:  "Sly will not discuss relationships in a

manner where women are held to be the victims and men are both the center of their universe

and the root of all their issues. Band *[sic]* from our pages are *How to ...* or *10 Ways ....*" (R.

Charles Decl., Ex. O – SJK Ex. 13.)

> ### G.    Plaintiff's Trademark

Plaintiff's trademark registration No. 3,045,096 for "Sly" issued on January 17, 2006 for

printed publications in Class 16. (2006 Kohlmann Decl. ¶ 10, Ex. G – SJK Exs. 19, 21.)  Plaintiff

filed a sworn declaration of use indicating first use of the mark on 6/30/2003 and first use in

commerce on 11/02/2004.  (2006 Kohlmann Decl. ¶ 11, Ex. H – SJK Exs. 19, 22.) The Patent &

Trademark Office noted in its Office Action in connection with the mark, that the goods should fall

in either or both of Class 16 or Class 41 for providing online magazines.  (2006 Kohlmann Decl. ¶

15, Ex. L – SJK Exs. 19, 23.)  Yet, despite never having published a print magazine under the

name "Sly," Plaintiff responded to the Office Action by deleting references to "online" and

"websites" and maintained and elected only Class 16, printed publications.  (2006 Kohlmann Decl.

¶ 16, Ex. M – SJK Exs. 19, 24.)

## I.    PROCEDURAL HISTORY

> ### A.    Judge Casey's Decision Denying Motion to Amend

On March 3, 2006, Plaintiff moved in *Weider* to amend the Complaint to add a new claim

of trademark infringement based on its apparently false registration and to join the precise parties

named as Defendants in this action.  Although Plaintiff was attempting to add a contributory

liability claim,[7] the Court's findings are equally applicable here.  On April 9, 2007, Judge

Loretta Preska issued the Opinion and Order of the Court on Judge Casey's behalf and in his

name, denying, in its entirety, Plaintiff's motion to amend and join the defendant distributors.

---

[7] As Judge Casey noted, Plaintiff was trying to add a claim of contributory infringement because
"Plaintiff [was] unable to allege direct infringement of its registered mark because there can be no
liability based on retroactive registration of a trademark."  (Op. at 5 – SJK Ex. 2.)

(Op. at 12 – SJK Ex. 2.)  Judge Casey held, among other things, "[p]laintiff is unable to allege direct infringement of its registered mark because there can be no liability based on retroactive registration of a trademark." (Op. at 5 – SJK Ex. 2.)  Judge Casey rejected Plaintiff's further argument that "Defendants are 'contributorily responsible' for third parties' direct infringement of a registered trademark even though, as Plaintiff admits, the final issue of SLY Magazine was no longer in Defendants' custody and control when the SLY mark became registered." (Op. at 6 – SJK Ex. 2.)  Judge Casey held that "Plaintiff can prove no set of facts in support of its claim' against Defendants for contributory liability under Section 32(1) of the Lanham Act. Amending the complaint to add such a claim would be futile."  (Op. at 8 – SJK Ex. 2.)  With respect to the joinder of the identical parties Plaintiff now sues in this action, Judge Casey held, among other things, "the Court's preceding determination that Plaintiff's theory of contributory liability is unavailing renders the proposed joinder fundamentally beside the point.  In any event, the Court would not allow joinder at this stage of the litigation for such pretextual purposes."  (Op. at 11 – SJK Ex. 2.)

### B.     The Complaint in the Instant Case

Plaintiff filed this action alleging essentially the same causes of action alleged in *Weider* against AMI, against the same defendants it unsuccessfully sought to join in *Weider*.   The complaint in the instant case arises out of the exact same facts as the complaint in *Weider*.  Both complaints allege that "[d]efendants are displaying, distributing, selling, and/or offering for sale a magazine, which infringes Plaintiff's trademark rights."  (*Weider* Compl. ¶4; *Curtis* Compl. ¶11.)  Plaintiff did not even bother to update the facts here to make clear that SLY Magazine has not been published since the end of 2005, or that Plaintiff has yet to publish a print magazine. (Stip. Facts to Jt. Pre-Trial Order ¶¶ 5-6, 13 – SJK Ex. 3.)

10

In both complaints, Plaintiff alleges ownership of the trade dress and trademark "Sly," that it adopted the mark "as early as June 30, 2003," used it in commerce "as early as October 2004," and "continues to prominently display the 'SLY' trademark on its publication." (*Weider* Compl. ¶¶ 7-10; *Curtis* Compl. ¶¶ 14-17.) Plaintiff alleges that "use of the 'SLY' trademark for its publication is inherently distinctive" and "has substantial secondary meaning in the marketplace." (*Weider* Compl. ¶¶ 16-17; *Curtis* Compl. ¶¶ 23-24.) It also alleges that it has "advertised and promoted SLY in various media" and "established goodwill." (*Weider* Compl. ¶¶ 18-20; *Curtis* Compl. ¶¶25, 26.)

The only difference between the two complaints is that in the instant case, Plaintiff alleges in addition, as Count I, Trademark Infringement of a Registered Mark. (*Curtis* Compl. ¶ 51.) In each of the remaining counts, the allegations within are almost identical to those in the *Weider* complaint.[8]

## II.    LEGAL STANDARD UNDER RULE 12(b)(6)

Since the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955 (2007), courts are to apply "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty,* 490 F.3d 143, 158 (2d Cir. 2007). Plaintiff's obligation under Fed.R.Civ.P. 8(a)(2) to show it is entitled to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 127 S.Ct. at 1965 (internal citation omitted). Where a plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be

---

[8] In the instant case Plaintiff does not have a Count III. Since the allegations in Count II here correspond directly to Counts I and III in *Weider*, it appears that plaintiff may have inadvertently left out the title. Alternatively, an explanation may be that because Counts IV and V are identical in both complaints, plaintiff copied Counts IV and V from the *Weider* complaint and did not renumber them as III and IV respectively in the complaint here.

dismissed." *Id.* at 1974; *see also, Johnson & Johnson v. Guidant Corp.*, No. 06 Civ. 7685, 2007 WL 2456625 *4 (S.D.N.Y. Aug. 29, 2007).

Here, Plaintiff has merely repeated by rote the elements of the claims also alleged in *Weider*. It did not even bother to include the fact that Defendants' SLY magazine ceased publication in December 2005. Plaintiff has not pleaded facts necessary to raise plausible claims nor show its entitlement to relief against Defendants. The record evidence and stipulated facts in *Weider* further establish that Plaintiff has not raised plausible claims here. Therefore, Defendants' motion to dismiss Plaintiff's complaint in its entirety, as a matter of law, should be granted.

## III. PLAINTIFF'S TRADEMARK INFRINGEMENT AND RELATED UNFAIR COMPETITION CLAIMS MUST BE DISMISSED

Plaintiff has not made plausible allegations that it has superior rights to the trademark SLY and that there was a likelihood of confusion between Plaintiff's Website and Defendants' print magazine. Therefore, Plaintiff cannot show that it is entitled to relief based on trademark, trade dress or trade name infringement or unfair competition of any kind.[9]

### A.    Standard of Proof

To succeed on its Lanham Act claims, plaintiff must demonstrate "that it has a valid mark entitled to protection and that defendant's use of it is likely to cause confusion." *Gruner + Jahr v. Meredith Corp.*, 991 F. 2d 1072, 1075 (2d Cir. 1993). Here, Plaintiff has failed to raise plausible allegations to support 1) that Plaintiff's rights in the "Sly" designation are superior to AMI's and 2) that AMI's SLY Magazine was likely to cause confusion.

---

[9] The standard of proof for trademark infringement applies equally to claims of trade name and trade dress infringement. *See Lang v. Retirement Living Publ'g Co.*, 949 F.2d 576, 579 (2d Cir. 1991) ("The central issue in trade name infringement cases … is the same as it is in trademark cases, namely, whether there is a likelihood of confusion."); *see Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 219 (2d Cir. 2003) (applying likelihood of confusion test to trade dress claim).

1.    *Plaintiffs' Rights to the SLY Designation are Not Superior*

Because he has been publicly and commercially known by the name "Sly" for decades, Sylvester Stallone is effectively the senior user of the name SLY.  Even Plaintiff has conceded[10] that Sylvester Stallone has been "publicly known as 'Sly' since in or about 1976, is a famous, public figure, whose name and public image evoke masculinity, physical fitness and a general 'tough guy' image for millions of fans around the world."  (2005 Kohlmann Decl. ¶ 3, Ex. B – SJK Exs. 15, 17.)  In *Weider*, Judge Casey acknowledged that Plaintiff knew or should have known that Mr. Stallone is known as "Sly." (P.I. Tr. at 36:9-18 – SJK Ex. 1.)

Name recognition often helps to sell products, such as magazines. As a result companies often utilize the name, or nickname of a celebrity in naming their product. *Cf. Brockmeyer v. Hearst Corp.,* 248 F. Supp. 2d 281, 290 (S.D.N.Y. 2003).  ("'O' is Oprah Winfrey's nickname, and the team responsible for the creation of 'O The Oprah Magazine' believed the magazine should incorporate this nickname in its title in order to capitalize on Ms. Winfrey's name recognition.")  Mr. Stallone's and Oprah Winfrey's magazines utilized their tremendous popularity amongst a particular target audience in hopes that it would translate into magazine sales. Oprah's "wholesome image and interest in the improvement of women's lives" is utilized in her magazine, aimed at women, as Mr. Stallone's masculine image was utilized in his, aimed at older men trying to stay fit and healthy. *Brockmeyer,* 248 F. Supp. 2d at 290.

For this reason, celebrities have an absolute right to use their name publicly, a right that courts have recognized as a property right that they can license for commercial purposes. *See* J. Thomas McCarthy, 5 *McCarthy on Trademarks and Unfair Competition* § 28:46 (4th Ed., 2007) ("The courts have uniformly held that the right of publicity is a 'property' right.")  The mere fact

_____

[10] Plaintiff did not specifically controvert this fact in its Rule 56.1 Statement filed in opposition to AMI's motion for summary judgment in *Weider*.

that Plaintiff started a website wholly unrelated to Sly Stallone or men's fitness did not prevent Mr. Stallone from exercising rights in his own name.  Therefore, Plaintiff's claim to superior rights to SLY is not plausible.

As noted earlier, notwithstanding Plaintiff's trademark registration for printed publications in Class 16, Plaintiff has conceded that it has never used SLY in connection with printed publications.  Therefore, Plaintiff's trademark registration is invalid and Count I must therefore be dismissed.

2.    ***Plaintiff's Allegations Do Not and Cannot Support a Likelihood of Confusion***

Even if Plaintiff's claim to superior rights in SLY were tenable, its allegations do not and cannot support a likelihood of confusion.  Plaintiff bears the burden of demonstrating that "*numerous* ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of defendant's mark."  *Gruner + Jahr*, 991 F. 2d at 1077.  A finding of infringement must be supported by a *probability* of confusion among an *appreciable* number of consumers, not a mere possibility.  *See Streetwise Maps, Inc. v. Vandam, Inc.*, 159 F.3d 739, 743 (2d Cir. 1998); *W.W.W. Pharmaceutical Co., Inc. v. The Gillette Co.*, 984 F.2d 567, 571 (2d Cir. 1993), *superseded on other grounds by Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39, 46 n.10 (2d Cir. 1994) (internal citation omitted).

In determining whether there is a likelihood of confusion, the following "*Polaroid*" factors are considered:  (i) the strength of plaintiff's mark; (ii) the similarity of the parties' marks; (iii) the proximity of the goods; (iv) the sophistication of the purchasers; (v) evidence of actual confusion; (vi) defendant's good faith in selecting the mark; (vii) the quality of defendant's products; and (viii) plaintiff's plans to bridge the gap."  *Gruner + Jahr*, 991 F.2d at

14

1077 (citing *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961), *cert. denied*, 368 U.S. 820 (1961)).

"[T]he evaluation of the *Polaroid* factors is not a mechanical process where the party with the greatest number of factors weighing in its favor wins.  Rather, a Court should focus on the ultimate question of whether consumers are likely to be confused."  *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 46 (2d Cir. 2000) (quoting *Paddington Corp. v. Attiki Importers & Distribs., Inc.*, 996 F.2d 577, 584 (2d Cir. 1993) (internal quotations omitted).

The determination of likelihood of confusion is a question of law in this Circuit, and under the circumstances of this case, Plaintiff's claims should be dismissed as a matter of law.  *See Nabisco, Inc.*, 220 F.3d at 48 (affirming grant of summary judgment of no trademark infringement); *Playtex Prods., Inc. v. Georgia Pacific Corp.*, 390 F.3d 158, 160 (2d Cir. 2004) (same); *Lang v. Retirement Living Publ'g Co.*, 949 F.2d 576, 584 (2d Cir. 1991) (same); *Res. Developers, Inc. v. Statute of Liberty Ellis Island Found., Inc.*, 926 F.2d 134, 138, 141-42 (2d Cir. 1991) (same); *Mejia and Assocs., Inc. v. Int'l Bus. Machs. Corp.*, 920 F. Supp. 540, 551 (S.D.N.Y. 1996) (granting summary judgment of no trademark infringement).

As a matter of law, Plaintiff's allegations cannot support the claim that Defendants' distribution of four issues of SLY Magazine was likely to cause confusion with Plaintiff's Website.  A review of the record of undisputed evidence in *Weider* further demonstrates that the *Polaroid* factors overwhelmingly favor Defendants.

a.    **Plaintiff's mark is weak.**

To evaluate the strength of a trademark (or trade dress), the court evaluates how strongly the mark identifies the source of the goods in the marketplace.  *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 217–18 (2d Cir. 2003).  Nothing in the *Weider* record suggests that Plaintiff's mark has any strength in the marketplace, and Plaintiff's "new" pleading cites to no

added strength since 2005.

According to Plaintiff's submissions to the Court in *Weider*, since November 2004, Plaintiff has had a total of three versions of its Website "magazine" – November 2004, February 2005 and December 2006 – and only the first two were available at the same time as Defendants' magazine. (Raps Decl. ¶¶ 13, 14, 16, Exs. 17, 18 – SJK Exs. 31-3; 2007; Charles Decl. ¶ 4, Ex. A – SJK Exs. 34-5.)  These first two "versions" contain about twenty pages of mostly redundant content without Plaintiff's trademark "Sly."  (Raps Decl. Exs. 17 and 18, respectively – SJK Exs. 32-3.)  The third "version" dated December 2006, almost a year after AMI's last issue was published, reflects web pages dated May 25, 2007 with "Sly" and the tagline "shoes… the obsession" on the top of the page.  (2007 Charles Decl. ¶ 4, Ex. A – SJK Exs. 34-5.)

Plaintiff's vague and conclusory allegations fail to support in any way the contention that Plaintiff's use of "Sly" strongly identifies its Website or that it has acquired distinctiveness in the marketplace.  *See Streetwise Maps, Inc.*, 159 F.3d at 744 (citing *W.W.W. Pharm. Co. v. Gillette Co.*, 984 F.2d 567, 572 (2d Cir.1993) (A term that is inherently distinctive does not necessarily produce a strong trademark, if the trademark lacks distinctiveness in the marketplace.)

Indeed, the only change since December 2005 is that AMI ceased publishing SLY and Plaintiff obtained its trademark registration in connection with Class 16 goods, by misrepresenting its Internet magazine as a print publication.  Plaintiff concededly has not created a print magazine.  Thus, there is simply no indication whatsoever that Plaintiff's use of the "Sly" designation functions as an identifier of source.

Furthermore, Plaintiff's use of the "Sly" designation is inconsistent, thus further weakening the strength of the mark. *See McCarthy on Trademarks* § 7:38.1. Plaintiff displays its designation sometimes in the form of an acronym as "S.L.Y." (R. Charles Decl. Ex. J – SJK

Ex. 8), in a stylized script followed by the tagline "Shoes, the Obsession" (2007 Charles Decl., Ex. A – SJK Ex. 35), and in block capital letters (R. Charles Decl. Ex. K – SJK Ex. 9). This inconsistent use since Plaintiff first launched its Website, weakens the ability of its "Sly" designation to function as an indication of source, thus further weakening any trademark rights that Plaintiff may have. *See McCarthy on Trademarks*§ 7:38.1 ("When a mark or trade dress consists of a wide range of different packaging and promotional images...it is more difficult to prove … plaintiff [is at] the source.") Since Plaintiff's mark is weak, entitled to only a narrow scope of protection, this *Polaroid* factor weighs strongly in Defendants' favor.

### b.    Plaintiff's use of the "Sly" designation was distinct from the SLY Magazine that Defendants distributed or sold.

In evaluating the similarity of marks, it is axiomatic that the marks must be considered in their entireties as they are encountered in the marketplace. *See Streetwise Maps*, 159 F.3d at 744; *Lang*, 949 F.2d at 581. Plaintiff and AMI have each used SLY in different ways. AMI used SLY as the nickname for its creator and editorial director, Sylvester Stallone, and was always shown in imposing block capital letters. (Swider Decl., Exs. B, C, D, and E – SJK Exs. 27-30.) Plaintiff, meanwhile, most often (although not consistently) uses the mark in a "feminine" script or followed by the tag line "Shoes...the obsession." (2007 Charles Decl. ¶ 4, Ex. A – SJK Exs. 34-5.) Thus, on balance, the marks as used in the marketplace are dissimilar and this *Polaroid* factor also favors Defendants.

### c.    Plaintiff and Defendants did not compete in the same market.

Given that it is indisputable that the parties' "publications" are delivered through different media, target very different consumers and are not competitive with each other, Plaintiff's allegations in this regard are not plausible. In considering this factor, the Court must consider "the nature of the products, whether and to what extent the products compete with

each another, and the structure of the relevant market." *Edmiston v. Jordan*, No. 98 Civ. 3928 (DLC), 1999 WL 1072492 at *5-6 (S.D.N.Y. Nov. 24, 1999). The magazine that Defendants distributed or sold, for the short time it existed, operated in a distinctly different media market than Plaintiff's Website, thus eliminating their competitive proximity and requiring that this factor favor Defendants. As Judge Casey noted, the two publications simply did not compete. (P.I. Tr. at 33:18-23 – SJK Ex. 1.)

Plaintiff's Website, often displayed with the tagline "Shoes...the obsession" is focused toward single young women aged thirty-five and under, with a college degree, who earn above $40,000 a year. (R. Charles Decl., Ex. M – SJK Ex. 11; Charles Dep. 54:10-14 – SJK Ex. 4.) Plaintiff describes its Website as "an invaluable resource to the upper echelon of lifestyle marketers who rely on the tastes of popular trendsetters to help define their business objectives. Sly provides coverage on *[sic]* the leading issues of *[sic]* which women have an opinion; speaking to women as no other has." (R. Charles Decl. Ex. O – SJK Ex. 13.)

In stark contrast, SLY Magazine that was distributed or sold by Defendants, as noted, was formulated around the personality, interests and identity of its creator and editorial director, Sylvester "Sly" Stallone. (Kahane Decl. ¶ 6 – SJK Ex. 14.) Sly Stallone himself appeared on the first two covers, with the premier issue including features like, "Sly Has Dinner with James Caan," in which Mr. Stallone transcribed his dinner conversation with his friend and fellow actor, "Sly's Picks" in which Mr. Stallone reviewed movies recently released on DVD, an electronics review titled "Sly Stuff," and "The Sly Review" where Mr. Stallone interviews a woman described as "the first lady of porn." (Swider Decl. ¶ ¶ 5, 6, Exs. B, C – SJK Exs. 25, 27, 28.) The final issue of SLY listed the following featured articles on its cover: "5 Ways to Keep Her Happier at Home," "Babes in the USA: The 40 Hottest Women Over 40," "How to Muscle

Up at Any Age: the Sly No-Fail Plan!" and "Go From Seriously Soft to Seriously Fit: One Man's Success Story." (Swider Decl. ¶ 8, Ex. E – SJK Exs. 25, 30.)  Plaintiff's Website and Stallone's SLY Magazine targeted very different audiences.  *See Lang*, 949 F.2d at 582 (finding parties' publications were not competitive based on different target audiences).  Given the lack of competitive proximity, this *Polaroid* factor weighs strongly in Defendants' favor.

d.    **The relevant consumers were sufficiently sophisticated to distinguish between AMI's magazine and the Plaintiff's Website.**

It is undisputed that the magazines were targeted to different audiences.  Plaintiff's distinct target audience of college-educated metropolitan women under the age of 35 could plainly tell the difference between Plaintiff's Website and a national men's magazine targeted to men over the age of 40 who aspire to live like Sylvester Stallone.

e.    **There is no evidence of actual confusion or reverse confusion.**

Plaintiff only alleges actual confusion in a general way based upon information and belief. (Compl. ¶¶ 58, 59.)  The only particulars Plaintiff offers is that "many relevant purchasers were deceived into believing that the word mark "Sly" is associated with Defendants' [sic] magazine even though defendants are junior users, creating reverse confusion." (Compl. ¶ 35.)

"Reverse confusion exists when a subsequent user selects a trademark that is likely to cause consumers to believe, erroneously, that the goods marketed by the prior user are produced by the subsequent user." *Id.* at 583; *Brockmeyer*, 248 F. Supp. 2d at 293.  Even the evidence plaintiff pointed to in *Weider* (some misdirected e-mails), which plaintiff did not bother to include in its allegations here, did not support actual trademark confusion, or reverse confusion as defined under the law. *See Lang*, 949 F.2d at 582-3.

f.    **AMI did not adopt SLY in bad faith.**

The allegation of bad faith on the part of Defendants simply cannot be sustained. (See

19

generally, Compl. ¶ 84.)   Bad faith cannot be imputed here, where, as in *Brockmeyer*, it is inconceivable that AMI, in choosing its mark would seek to capitalize upon Plaintiff's little known Website targeted to women.   Bad faith requires a finding that a defendant chose the trademark with the intention of capitalizing on the plaintiff's reputation and goodwill.  *Lang*, 949 F.2d at 583-4; *Streetwise*, 159 F.3d at 745.   The name "SLY" was the obvious choice since Mr. Stallone, the magazine's creator and editorial director, had been known publicly as "Sly" for decades. (Kahane Decl. ¶¶ 3, 5-6 – SJK Ex. 15)  AMI's good faith in adopting the name "SLY" for its magazine is thus irrefutable.   Moreover, Defendants here had nothing whatsoever to do with the choice of the name SLY.  This *Polaroid* factor also weighs in favor of Defendants.

> **g.    The quality of the magazine distributed or sold by Defendants has little bearing given the facts of this case.**

As addressed above, Plaintiff's Website, only an Internet venture, is of an entirely different nature from the now defunct SLY Magazine so the relative quality of the "publications" is irrelevant to an analysis of likelihood of confusion.   Moreover, Plaintiff has made no allegations to suggest otherwise.

> **h.    Plaintiff was and is unlikely to "Bridge the Gap."**

Plaintiff did not and has not demonstrated the likelihood of offering a product like the magazine distributed or sold by Defendants, nor would any prospective purchasers have any reason to believe it would.  *Lang*, 949 F.2d at 582 (the intent to "bridge the gap," or enter Defendants' market, "unless known by prospective purchasers, does not affect the likelihood of confusion") (citation omitted).   At the time that AMI's magazine was in print, a prospective visitor to Plaintiff's Website directed to women under 35 and focused on fashion would have had absolutely no reason to believe that Plaintiff would produce a print magazine focused on Sylvester Stallone and directed to men over 40.   Today, there is no gap to bridge given that

AMI ceased publishing its SLY Magazine almost 2 years ago. Whether Plaintiff plans to publish a print magazine some time in the future is completely irrelevant and inconsequential.

* * * * *

Plaintiff's allegations in its complaint here simply do not plausibly support a likelihood of confusion. Furthermore, the admissions and undisputed facts of *Weider* overwhelmingly establish that, as a matter of law, Plaintiff's allegations cannot support the likelihood that "numerous" or an "appreciable" number of consumers were confused as a result of Defendants' use of SLY in distributing Stallone's print magazine. Therefore, Counts I and II (Lanham Act infringement and unfair competition) must be dismissed. Plaintiff's New York common law claims for trademark infringement, trade dress infringement and unfair competition claims in Count V also require a showing of likelihood of confusion and should therefore also be dismissed. *Mejia*, 920 F. Supp. at 552.

## IV.    PLAINTIFF'S NEW YORK STATE DILUTION CLAIM MUST BE DISMISSED

Only equitable relief is available under New York's anti-dilution statute. N.Y. Gen. Bus. Law § 360-1; *see also*, *FiberMark, Inc. v. Brownville Specialty Paper Products, Inc.*, No. CIV A7:02CV0517TJM-DE, 2006 WL 659514 *2 (N.D.N.Y. March 13, 2006). Plaintiff is not seeking an injunction, nor can one be granted given that Defendants' SLY Magazine is no longer in print. Therefore, this claim must be dismissed.

In any event, Plaintiff's allegations do not even come close to supporting a claim for dilution. A claim for dilution under N.Y. Gen. Bus. Law § 360-1 requires the plaintiff to show (1) ownership of a distinctive mark, and (2) a likelihood of dilution. *La Cibeles, Inc. v. Adipar, Ltd.*, No. 99 Civ. 4129, 2000 WL 1253240, at *13 (S.D.N.Y. Sept. 1, 2000). The Second Circuit has firmly established that a mark must be "extremely strong" to merit protection under the New York anti-dilution statute. *See Greenpoint Fin. Corp. v. Sperry & Hutchinson Co., Inc.*, 116 F.

Supp. 2d 405, 413 (S.D.N.Y. 2000) (citing *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1049 (2d Cir. 1992). "Trademarks protected by the New York anti-dilution statute … must be of truly distinctive quality or have acquired secondary meaning in order to be protected against dilution." *Mejia*, 920 F. Supp. at 552 (citing *Deere & Co.*, 41 F.3d at 42).

As described above, Plaintiff's "Sly" mark -- used for an Internet magazine -- clearly fails to qualify as an "extremely strong mark," as required by Second Circuit precedent. *See, e.g.*, *Sports Traveler, Inc. v. Advance Magazine Publishers, Inc.*, 25 F. Supp. 2d 154, 167 (S.D.N.Y. 1998) (granting defendant's motion for summary judgment on plaintiff's dilution claim under New York law); *Mejia*, 920 F. Supp. at 552-53 (same); *Sunenblick v. Harrell*, 895 F. Supp. 616, 627 (S.D.N.Y. 1995) (the Court noted that the plaintiff's use of the mark for eleven years and the adulation of a certain segment of the music industry, including numerous Grammy nominations, were not enough to establish secondary meaning). Plaintiff's New York dilution claim in Count IV of the Complaint must fail.

## V.    PLAINTIFF'S MISAPPROPRIATION CLAIM AND OTHER MISCELLANEOUS CLAIMS UNDER NEW YORK COMMON LAW SHOULD BE DISMISSED

In Count V, Plaintiff asserts claims for trademark infringement, misappropriation and unfair competition under New York's common law with a laundry list of vague and ambiguous allegations, including, "misappropriation," "fraud, false pretense, false promise, misrepresentation, or the concealment, suppression or omission of a material fact," "unfair or deceptive trade practices," "misuse," and "tarnishment". The claims for trademark infringement and unfair competition may be dismissed as noted above. With respect to the remaining allegations, it is unclear whether Plaintiff intended each as an independent claim.

There is no independent claim for misappropriation of a trademark. Misappropriation in the trademark context generally requires likelihood of confusion and, absent that, bad faith. As

explained above, neither exists here. Misappropriation may be a relevant factor in proving unfair competition, but in most cases, "the single most important element of a State law unfair competition action is a showing that the defendant's conduct will result in consumers confusing the source of defendant's products." *Diversified Marketing, Inc. v. Estee Lauder, Inc.*, 705 F. Supp. 128 (S.D.N.Y. 1988) (citation omitted). No confusion can be shown here.

Absent confusion, misappropriation of goodwill can substantiate a claim of unfair competition only upon showing bad faith. *Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980). To prevail on this theory, to the extent courts recognize it at all, one must show bad faith. *Id.* The allegation of bad faith is simply not tenable, as discussed above. Similarly, the allegation of fraud is insufficient since it is not plead with particularity as required by Fed.R.Civ.P. 9(b). Indeed, none of the general assertions of "false pretense, false promise, misrepresentation, or the concealment, suppression or omission of material fact" – claims which are generally unheard of in trademark infringement cases – provide sufficient facts to which Defendants may even respond. Therefore, these claims also fail.

Similarly, Plaintiff has not alleged any facts to support an allegation of "unfair or deceptive practices" under New York common law.[11] Any consideration of "deception" or "unfair practices" under trademark law would be considered in an analysis of trademark infringement or unfair competition. *See, e.g. McCarthy on Trademarks* § 1:8 (describes unfair competition as covering a broad array of unfair practices). This claim, too, is without merit and must fail.

Misuse is not a claim alleged in trademark law. The misuse defense applies in copyright cases when a copyright holder leverages its copyright to restrain creative activity, often engaging

---

[11] Plaintiff has not made any allegations of "deceptive trade practices" under N.Y. Gen. Bus. L. §§ 349, 350, which generally require a commercial claimant to adequately allege harm to the public interest. *See, e.g., La Cibeles*, 2000 WL 1253240, at *15.

23

in some sort of anti-competitive behavior. *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 995-97 (C.D. Cal. 2006). Plaintiff has not alleged any facts to support any anti-competitive behavior or other possible misuse on the part of Defendants. This claim is completely without merit and must fail.

Finally, dilution by tarnishment applies when "defendant has used plaintiff's mark in a clearly unwholesome or degrading context." *McCarthy on Trademarks* § 24:89. "The essence of tarnishment therefore is … the displacement of positive with negative associations of the mark that, like a claim for blurring, reduces the value of the mark to the trademark owner." *New York Stock Exchange, Inc. v. New York, New York Hotel, LLC*, 69 F. Supp. 2d 479 (S.D.N.Y. 1999), aff'd in part, rev'd in part, 293 F.3d 550 (2d Cir. 2002) (citing *Restatement (Third) of Unfair Competition* § 25 cmt. c (1995)). Surely, Plaintiff cannot maintain that Defendants' use of SLY to denote the famous Sylvester Stallone somehow tarnishes Plaintiff's shoe fetish Website. Plaintiff has not alleged facts to support this claim and it too must necessarily fail.

As demonstrated above, Plaintiff has failed to plead plausible and sufficient facts to prove its claims. Therefore, the complaint should be dismissed in its entirety.[12]

---

[12] In light of the procedural history of this case and the *Weider* case, should the Court not wish to grant the motion to dismiss, Defendants respectfully renew their request to stay these proceedings pending the disposition of AMI's motion for summary judgment in *Weider* currently before Judge McMahon. The complaint in the instant case was filed on June 12, 2007, over two years after Plaintiff filed its *Weider* complaint. In both cases, the plaintiff is the same. Plaintiff has been given a full opportunity to litigate the liability issue in *Weider*. The issues that are going to be decided as a matter of law in the *Weider* summary judgment motion will necessarily apply to the instant case. To avoid inconsistent results and in the interests of judicial economy, this case could be stayed in lieu of dismissal. *National Football League Properties, Inc. v. Hi-Pro Marketing, Inc.*, No. 92 Civ. 1456 (MJL), 1992 WL 204370 (S.D.N.Y. Aug. 11, 1992) (Motion to stay granted because the facts as pleaded established that the two cases were inextricably intertwined and a stay could avoid the duplication of discovery, testimony and other trial proceedings. *Id*. at *2-3); *Durkin v. Shea*, 957 F. Supp. 1360, 1375-76 (S.D.N.Y. 1997) (to conserve judicial resources and prevent the risk of inconsistent judgments, a stay was granted where similar litigation with the same plaintiff had commenced and progressed to a more advanced stage).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant Defendants' motion to dismiss Plaintiff's complaint in its entirety.

Respectfully submitted,

Date:    September 17, 2007

JENNER & BLOCK LLP

By: /s Susan J. Kohlmann
Susan J. Kohlmann (SK1855)
Elizabeth Valentina (EV4345)
919 Third Avenue
New York, New York 10022
(212) 891-1600
(212) 891-1699

*Counsel for Defendants, Curtis Circulation Company, Hudson News Company, Wal-Mart Stores, Inc., Chas Levy Circulating Co., LLC, Anderson News LLC, Magazine Distributors, Incorporated, The News Group, Inc. and Gopher News Company*

25