# EXHIBIT 1

```
                                                                    1
     5CRASLYHps

 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   SLY MAGAZINE, LLC,

 4
                Plaintiff,
 5
           v.                                      05 CV 3940 (RCC)
 6
     WEIDER PUBLICATIONS L.L.C.
 7   AMERICAN MEDIA, INC.,

 8              Defendants.

 9   ------------------------------x

10                                                 December 27, 2005
                                                   10:30 a.m.
11

12   Before:

13                     HON. RICHARD CONWAY CASEY

14                                                 District Judge

15
                                APPEARANCES
16
     THE BOSTANY LAW FIRM
17        Attorneys for Plaintiff
     BY:  JOHN PETER BOSTANY
18
     PILLSBURY WINTHROP SHAW PITTMAN LLP
19        Attorneys for Defendant
             Weider Publications L.L.C., et al.
20   BY:  SUSAN J. KOHLMANN
          NANCY VERMYLEN THORNTON
21

22

23

24

25

                      SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

4

5CRASLYHps

1  disputing an order recalling the magazines that are on the
2  newsstands. They're disputing an order preventing them from
3  shipping any more of these magazines. And that is really what
4  this hearing is about, Judge. It's not about whether an
5  injunction should issue, because, as the defendants have
6  represented, there is no prejudice to the defendants and the
7  equities clearly lie in favor of the plaintiff in terms of the
8  issuance of an injunction but --
9          THE COURT: Slow down, slow down. Does your client
10 have a magazine?
11         MR. BOSTANY: Yes, Judge.
12         THE COURT: Has it ever been sold?
13         MR. BOSTANY: My clients published the magazine on the
14 Internet in November and they have already received --
15         THE COURT: Has it ever been sold on a newsstand?
16 Don't play cute with me.
17         MR. BOSTANY: Well, Judges, it's a distinction. It's
18 not on the newsstand. No, there's no printed -- on the
19 newsstand.
20         THE COURT: No printed publication. Don't try to blow
21 past me, Mr. Bostany. You'll have a bad hair day in this
22 courtroom. All right?
23         MR. BOSTANY: Judge, I agree with you that there is --
24         THE COURT: No, don't agree with me, just do it.
25         MR. BOSTANY: There is a distinction and we have

5CRASLYHps

1  argued in our paper that even though, as the Court correctly
2  points out, there is no publication being sold for coins and
3  dollars on the newsstand, that the Second Circuit has approved
4  exactly what the plaintiff did do, which is launch the magazine
5  on the Internet, and they have sold subscriptions to that
6  Internet magazine, and they are publishing that magazine --
7          THE COURT:  How many have they sold?
8          MR. BOSTANY:  It's in an exhibit to my reply
9  declaration, Judge.  It's Exhibit U.
10         THE COURT:  Don't tell me where it is.  Tell me what
11 it is.
12         MR. BOSTANY:  I see approximately 40 or 50
13 subscriptions, Judge.
14         THE COURT:  At how much?
15         MR. BOSTANY:  Conservative.
16         THE COURT:  At how much per subscription?
17         MR. BOSTANY:  $17.99, Judge.
18         But, Judge, I respectfully submit that sales, in order
19 to have a use in commerce in this circuit, sales are not
20 necessary.  In fact, courts have time and time again said just
21 that, including starting from Judge Friendly's case back in the
22 1970s.  Every circuit that's addressed this issue has
23 specifically stated that use in commerce is established by
24 launching the magazine to the public, or launching a product to
25 the public, having a product and launching it.  And sales are

5CRASLYHps

1      irreparable harm to your client?
2              MR. BOSTANY:  The irreparable harm, Judge, is exactly
3      that which occurred in *Banff*.
4              THE COURT:  Tell me what in this case is the
5      irreparable harm.
6              MR. BOSTANY:  Irreparable harm is the larger company
7      here, American Media, Inc., which publishes an enormous amount
8      of magazines.
9              THE COURT:  We aren't discussing size, big guys and
10     small guys.  Tell me what the harm is.
11             MR. BOSTANY:  As the public begins to associate the
12     Sly trademark with a men's magazine, when a woman's magazine,
13     which was also a lifestyle-fashion magazine, is on the
14     newsstands, as the plaintiff has indicated in its declaration
15     that it is about to do, and it is not unreasonable for a
16     plaintiff that has an online magazine to also publish on
17     newsstands, which it has declared it is about to do, that
18     having those magazines side by side on the shelf in the same
19     section of the newsstand would cause confusion.
20             THE COURT:  It they ever occurred.  That fact has
21     never occurred, correct?  The magazine is going out of
22     existence, and therefore it will never occur.  Is that not
23     true?
24             MR. BOSTANY:  That is incorrect, Judge.  The plaintiff
25     wants to put their magazine on the shelf in January or February

5CRASLYHps

1  of next year, the same exact time that the defendants' magazine
2  is on the shelf.  And the plaintiff's magazine is --
3           THE COURT:  It hasn't occurred yet, has it?
4           MR. BOSTANY:  They have a right to do it.  It has not
5  occurred yet, Judge.  January-February of next year has not
6  occurred yet.  They have a right to do it.  And if the Court
7  says no, we're going to give the defendants a license to sell
8  through their magazine, the plaintiff is prohibited from
9  launching their magazine until the defendants' issue that went
10 out yesterday is sold through newsstands, that would be a
11 unique ruling.  It would be a case of first impression.  It
12 would give a license to infringers to infringe.
13          THE COURT:  You've used that phrase more than once.
14          MR. BOSTANY:  Yes, Judge, and I firmly believe that it
15 would give the license to infringers to infringe.  The
16 defendants have just published the magazine.  It has just hit
17 the newsstands.  And I don't think all magazines have been
18 shipped.  Otherwise why would Ms. Kohlmann be so adamantly
19 asking the Court not to enjoin further shipment?  So it just is
20 a --
21          THE COURT:  Sir, you take great latitude suggesting
22 dishonesty by a member of this court.  And unless you have
23 proof, sir, I would expect some apology from you.  That's
24 outrageous conduct.
25          MR. BOSTANY:  Your Honor, I've already submitted

1    that ten minutes ago.
2              MR. BOSTANY:  The plaintiff is going to be thought of
3    as an unauthorized user.  They're going to be thought of as an
4    infringer.  Just like in the *Banff* case.  They're the senior
5    user.  And the harm is exactly that.  If the public perceives
6    my client as an infringer upon Sylvester Stallone's magazine,
7    Sly, the public will turn away.  If the public believes that
8    the plaintiff --
9              THE COURT:  Your client, didn't they know that the
10   moment they used the word "Sly"?
11             MR. BOSTANY:  My client used the word "Sly" in 2003,
12   Judge, years before.
13             THE COURT:  Weren't they aware of Mr. Stallone being
14   known as Sly?
15             MR. BOSTANY:  I imagine, Judge, but that is an
16   entirely --
17             THE COURT:  You imagine.  You sound almost
18   incredulous.
19             MR. BOSTANY:  It's an entirely different issue, Judge.
20   The fact that a movie star is nicknamed Sly, I don't believe,
21   is analogous to the plaintiff associating the trademark Sly
22   with respect to magazines.  And neither did the United States
23   Patent and Trademark Office.  And that is why they issued the
24   mark Sly for the exclusive use --
25             THE COURT:  I don't think you ought to start speaking

5CRASLYHps

1   something that's happening now. It's happening yesterday.
2   It's happening in January and February of next year. And I'm
3   asking the Court not to allow it.
4            THE COURT: Just a minute.
5            (Pause)
6            THE COURT: We'll take a short break and I'll give you
7   a resolution to your application.
8            (Recess)
9            THE COURT: The Court has read the papers and heard
10  the parties' arguments regarding plaintiff's application for a
11  preliminary injunction. Plaintiff's application is denied in
12  its entirety. Defendants' last issue is on newsstands now and
13  counsel has stated it will not publish any more issues.
14           For the reason outlined in defendants' papers and its
15  presentation this morning, the Court finds that plaintiff has
16  not shown irreparable harm or the likelihood of success on the
17  merits. Plaintiff's recent correspondence regarding discovery
18  disputes will be addressed at the upcoming status conference on
19  February 10. It is so ordered.
20           I believe that concludes our business unless either
21  counsel wishes to be heard on something further.
22           MR. BOSTANY: That's it, Judge. I think you covered
23  everything.
24           MS. KOHLMANN: Your Honor, I do have one thing. I'm
25  sorry.