# EXHIBIT 36

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SLY MAGAZINE, LLC,

          Plaintiff,

- against -

WEIDER PUBLICATIONS L.L.C. and
AMERICAN MEDIA, INC.,

          Defendants.
------------------------------------------------------------X

**ORIGINAL**



05 CV 3940

VERIFIED COMPLAINT

Civil Action No.:

Plaintiff, SLY MAGAZINE, LLC, brings this complaint against, WEIDER PUBLICATIONS L.L.C. and AMERICAN MEDIA, INC., alleging as follows:

### PARTIES

1. Plaintiff, SLY MAGAZINE, LLC, is a limited liability company duly organized and existing under the laws of the State of New York, with a place of business at 323 Bleecker Street, #K39, City and State of New York, County of New York. Plaintiff is the owner of the trademark "SLY" and is in the business of <u>inter alia</u>, designing, advertising, marketing, publishing, distributing, selling and/or offering for sale a magazine ("SLY").

2. Upon information and belief, Defendant, American Media is a corporation duly organized and existing under the laws of the State of New York, with its principal place of business located at 1 Park Avenue, 10th Floor, City and State of New York, County of New York.

3. Upon information and belief, Defendant, Weider Publications L.L.C is a corporation duly organized and existing under the laws of the State of

California, with its principal place of business located at 21100 Erwin St., Woodland Hills, California.

4. Defendants are displaying, distributing, selling and/or offering for sale a magazine, which infringes Plaintiff's trademark rights.

## JURISDICTION AND VENUE

5. This is an action for unfair competition, trade dress infringement, federal and state dilution, and common law infringement of the Lanham Act, 15 U.S.C. Sec. 1125(a) and 1125(c), New York Law, N.Y.Gen.Bus.Law sec. 360-1. Jurisdiction is conferred upon this Court by 28 U.S.C. 1338(a) and 1338(b).

6. Venue is proper under 28 U.S.C. Sec. 1391 (b), and (c) and Sec. 1400 (a).

## FACTS

7. At least as early as June 30, 2003, Plaintiff adopted the "SLY" trademark to identify a fashion/life style publication which Plaintiff has marketed and advertised widely.

8. At least as early as October 2004, Plaintiff used in interstate commerce its trade dress and trademark for its SLY. Plaintiff has expended considerable time, effort, and resources to design and develop its unique and inherently distinctive trade dress and trademarks for its magazine.

9. Plaintiff's trade dress is the word mark "SLY" used to identify its magazine. A copy of the cover of one of plaintiff's publications is attached as Exhibit 1.

10. Plaintiff has and continues to prominently display the "SLY" trade dress and trademark for its publication. Such use by Plaintiff has been continuous since its first use.

2

11. The word "SLY" is arbitrary as it refers to magazines and published materials

12. The word "SLY" does not describe or suggest the Defendants' publication.

13. The word "SLY" does not describe or suggest the plaintiff's publication

14. Plaintiff's use of the "SLY" trademark for its Sly Magazine is non-functional.

15. The plaintiff's SLY is a lifestyle/fashion magazine.

16. Plaintiff's use of the "SLY" trademark for its publication is inherently distinctive.

17. Plaintiff's use of the "SLY" trademark for its publication has substantial secondary meaning in the marketplace.

18. Plaintiff has extensively advertised and promoted SLY in various media in the United States including, Internet web-sites, promotional mailers and sales materials, company profiles, trade show displays, sample requests, promotional events, clothing and in business transactions with journalists, photographers and stylists.

19. Upon information and belief, as a result of Plaintiff's continuous and exclusive use of SLY and its extensive advertising and promotion, the purchasing public has come to associate Plaintiff as the source and sponsor of SLY.

20. Plaintiff has established goodwill in its trade dress and trademark. As a result, these trade dress and trademarks are valuable assets of Plaintiff's business.

21. Upon information and belief, Defendants, are in the business of inter alia, designing, advertising, marketing, publishing, distributing, selling and/or offering for sale magazines and other published materials.

22. Upon information and belief, since at least January of 2005, Defendants have

advertised its magazine as "SLY".

23. Upon information and belief, since February 14, 2005, Defendants have offered its SLY publication for sale to the public. A copy of the cover of defendants' premier issue is annexed as **Exhibit 2**.

24. Defendants' use of the "SLY" word mark to identify its publication is confusingly similar to Plaintiff's use of the SLY word mark to identify its publication.

25. The defendants' SLY publication is a lifestyle/fashion magazine.

26. Defendants have used and are using the mark "SLY" that is confusingly similar to Plaintiff's "SLY". Defendants published its premier issue long after receiving actual notice of plaintiff prior use of the SLY mark. A copy of plaintiff's warning letter dated January 12, 2005 is annexed as **Exhibit 3**.

27. The use of the mark "SLY" by Defendants is likely to cause confusion with Plaintiff's magazine also identified by the SLY trademark.

28. The Defendants used the word mark SLY in commerce to identify a magazine long after Plaintiff adopted and first used the same trademark in commerce to identify its magazine.

29. Defendants, by its acts as aforesaid, has taken advantage of the creative skill of Plaintiff, and of the good will developed by Plaintiff, and has capitalized upon advertisements and promotions for SLY developed by the Plaintiff.

30. Defendants have extensively advertised, promoted, marketed and sold its publication under the name "SLY".

31. As a result, many relevant purchasers are deceived into believing that the

4

word mark "SLY" is associated with Defendants' Magazine, even though defendants are the junior user.

32. Defendants' sales and advertising greatly exceeds that of Plaintiff; the senior holder.

33. As such there is reverse confusion in that in the minds of the relevant purchasers any attempt at sales by Plaintiff of its SLY will be viewed as either originating or copied from Defendants.

## COUNT I – TRADE DRESS INFRINGEMENT (FEDERAL)

34. As a cause of action and ground for relief, Plaintiff alleges trade dress infringement by the Defendants in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 33 as if fully set forth herein.

35. Section 43 (a) of the Lanham Act, 15 U.S.C. Section 1125(a) prohibits the copying of trade dress and sets forth in pertinent part:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> >
> > (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

5

shall be liable in a civil action by any person who believes that he or she is unlikely to be damaged by such act.

36. Defendants' use in commerce of the "SLY" mark is confusingly similar to Plaintiff's trade dress for its SLY.

37. The Defendants' SLY is publicized in their advertising and promotional materials.

38. Upon information and belief, as a result of Defendants' conduct, the public has already believed and is likely to continue to believe that Plaintiff's publication is in some way associated with, affiliated with and/or originating from Defendants.

39. Defendant has intentionally used and will continue to use in commerce the SLY mark unless restrained by this Court.

40. The Defendants' acts constitute false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or affiliation of Plaintiff's SLY with Defendants.

41. There is actual confusion among the potential consumers of plaintiff's magazine as to the source of the SLY trademark.

42. There is actual confusion among the potential consumers of Defendants' magazine as to the source of the SLY trademark.

43. Defendants' use of SLY is without the license or consent of Plaintiff.

44. Defendants' aforesaid acts constitute trade dress infringement in violation of §

6

43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

45. Plaintiff has suffered, and continues to suffer, substantial and irreparable injury as a result of Defendants' infringement of Plaintiff's trade dress and will continue to do so unless enjoined by this Court.

## COUNT II - TRADEMARK DILUTION (FEDERAL)

46. Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 through 45 above as though fully set forth at length herein.

47. Plaintiff is entitled to protection of its mark under the Federal Trademark Dilution Act, 15 U.S.C. § 1125 (c)("FTDA").

48. Plaintiff is suffering the lessening of the capacity of its "SLY" mark to identify and distinguish its magazine.

49. Defendants are responsible for this dilution of Plaintiffs' "SLY" mark.

50. Plaintiff started using the "SLY" mark in commerce before Defendant.

51. Plaintiff's "SLY" is the senior mark.

52. The senior mark is famous.

53. The senior mark is distinctive.

54. The Defendants' junior use is a commercial use in commerce.

55. The junior commercial use in commerce began after the senior mark became famous.

56. The Defendants' use of "SLY" causes dilution of the distinctive quality of the senior mark.

## COUNT III - UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN, AND FALSE DESCRIPTION OR REPRESENTATION (FEDERAL)

57. As a cause of action and ground for relief, Plaintiff alleges that Defendants are engaged in acts of unfair competition, false designation of origin, and false description or representation in violation of § 43(a) of the Lanham act, 15 U.S.C. § 1125(a), and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 56 as if fully set forth herein.

58. Upon information and belief, Defendants have intentionally engaged in and will continue to engage in acts of false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which are likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or affiliation of Plaintiff's SLY with Defendants.

59. Defendants' aforesaid acts constitute unfair competition, false designation of origin, and/or false description or representation in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

60. Plaintiff has suffered, and continues to suffer, substantial and irreparable injury as a result of the Defendants' infringement of Plaintiff's "SLY" trademark and will continue to do so unless enjoined by this Court.

## COUNT IV - VIOLATION OF THE NEW YORK ANTI-DILUTION STATUTE

61. As a cause of action and ground for relief, Plaintiff alleges that Defendants are engaged in deceptive trade practices in violation of the New York Anti-Dilution Statute, and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 60 as if fully set forth herein.

62. Section 360-1 of the New York General Business Law provides: "Likelihood of injury to business or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark . . . or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services." N.Y. Gen.Bus. Law sec. 360-1.

63. Defendants have engaged in trademark infringement and unfair competition by manufacturing, marketing, selling and/or offering for sale a product using the exact same "SLY" word mark and upon information and belief continues to distribute a magazine using the mark "SLY" for this product.

64. Defendants have engaged in, and continues to engage in, trademark infringement and unfair competition by causing a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of the Plaintiff's SLY.

65. Defendants have engaged in, and continues to engage in, trademark infringement and unfair competition by causing a likelihood of confusion or of misunderstanding as to affiliation, connection or association of the Plaintiff's Magazine with the Defendants' Magazine.

9

66. Plaintiff has not consented to any sponsorship, approval, status, affiliation, or connection with the Defendants' Magazine.

67. Plaintiff has been irreparably damaged, and will continue to be damaged by Defendants' trademark infringement and unfair trade practices and is entitled to injunctive relief, pursuant to N.Y.Gen.Bus.Law 360-1.

## COUNT V – VIOLATION OF TRADEMARK INFRINGEMENT, TRADE DRESS INFRINGEMENT, MISAPPROPRIATION AND UNFAIR COMPETITION UNDER NEW YORK'S COMMON LAW

68. Plaintiff as a cause of action and ground for relief, alleges that Defendants are engaged in acts of trademark infringement, trade dress infringement, unfair competition and misappropriation in violation of the common law of the state of New York and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 67 as if fully set forth herein.

69. Defendants have infringed Plaintiff's trade dress and trademarks and continues to do so, by manufacturing, marketing and/or selling magazines that infringe, Plaintiff's SLY trade dress and "SLY" trademark

70. Defendants' acts constitute deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression or omission of a material fact.

71. Upon information and belief, Defendants intend that others rely upon these unfair methods of competition and unfair or deceptive trade practices.

72. Defendants' deceptive business practices involve conduct addressed to the market generally and implicate consumer protection concerns because the deceptive practices have caused and continue to cause injury to consumers. Unless Defendants' acts are restrained by this Court, Defendants' deceptive

business practices will continue and the public will continue to suffer great and irreparable injury.

73. Defendants' acts are likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association with Plaintiff, or origin, sponsorship, or affiliation of Plaintiff's SLY by Defendant.

74. Defendants' acts have harmed Plaintiff's reputation and have severely damaged Plaintiff's goodwill.

75. Defendants have unfairly competed with Plaintiff, and upon information and belief, continues to do so, by selling the Stallone Magazine to purchasers under a mark that is confusingly similar to Plaintiff's "SLY" mark and infringes Plaintiff's trade dress and trademark for published materials. Upon information and belief Defendants' acts are an attempt to deceive the public. The public is likely to be confused as to the source and origin of Plaintiff's published materials.

76. Defendants have misappropriated Plaintiff's trade dress and trade name, and upon information and belief continues to do so, by selling a Magazine that is offered under a mark that is confusingly similar to Plaintiff's "SLY" mark using the exact same word mark for said magazine.

77. Defendants' trade name infringement is in violation of the common law of New York.

78. Defendants' aforesaid acts constitute infringement, tarnishment, dilution, misappropriation, and misuse of Plaintiff's trade dress and trademark, unfair competition, palming-off and passing-off against Plaintiff, and unjust enrichment by Defendants, all in violation of Plaintiff's rights under the

11

common law of New York.

79. Defendants' aforesaid acts are likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association with Plaintiff, or origin, sponsorship, or affiliation of Plaintiff's SLY by Defendants. The public is likely to be confused as to the source, origin, sponsorship, approval or certification of Plaintiff's SLY trademark.

80. Upon information and belief, Defendants' actions have been willful and deliberate.

81. Plaintiff has suffered, and continues to suffer, substantial and irreparable injury as a result of Defendants' deceptive business practices and therefore Plaintiff is entitled to injunctive relief under New York Common Law.

WHEREFORE, Plaintiff prays:

A. That this Court adjudge that the Defendants have infringed, tarnished and diluted Plaintiff's SLY trade dress and "SLY" trademark, competed unfairly, engaged in deceptive trade and business practices, and committed consumer fraud as set forth in this Complaint, in violation of Plaintiff's rights under the Lanham Act, 15 U.S.C. §§ 1125(a), 1125(c), New York statutory and common law.

B. That Defendants, and all owners, suppliers, distributors, sales companies, sales representatives, salespersons, representatives, printers, officers, directors, agents, servants, employees, affiliates, attorneys, successors, and assigns, and all persons in active concert or participation therewith, including but not limited to their distributors and retailers, be preliminarily and permanently enjoined and restrained (1) from reproducing, copying, displaying, the "SLY" mark and (2) advertising, promoting, importing, selling, marketing, offering for sale or

otherwise distributing their infringing Stallone Magazine or (3) from in any other way infringing Plaintiff's SLY trade dress and "SLY" word mark. Including, in particular, that Defendants be preliminarily and permanently enjoined and restrained directly or indirectly from:

(1) Using the "SLY" Trademark, or any other confusingly similar marks, in connection with the advertising, distribution, promotion, offering for sale or sale of Defendants' Stallone Magazine.

(2) Holding themselves out as, or otherwise representing themselves to be, the owners of, or otherwise authorized to use, the "SLY" Trademark;

(3) Performing any actions or using any words, names, styles, titles or marks which are likely to cause confusion to cause mistake or to deceive, or to otherwise mislead the trade or public into believing that "SLY" and the Defendants are one and the same or are in any way connected, or that Defendants are a sponsor of Plaintiff, or that Defendants and Plaintiff are in any manner affiliated or associated with or under the supervision or control of each other, or that Plaintiff's Stallone Magazine originates from the Defendants or is otherwise manufactured, offered for sale or sold with approval, consent authorization, or under the supervision of Defendants, to engage in any other activity which may lead the trade or public to associate Defendants with Plaintiff;

(4) Using any words, names, styles, titles or marks, either individually or otherwise, which create a likelihood of injury to the business

13

reputation of Plaintiff, or a likelihood of dilution of Plaintiff's "SLY" Trademark and the goodwill associated therewith;

(5) Engaging in any other practices, including those complained of herein, which tend to unfairly compete with or injure Plaintiff's business and the goodwill appertaining thereto;

(6) Effecting assignments or transfers, forming new entities or associations or utilizing any other means or devices for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (1) through (6) hereof.

C. That Defendants be required to deliver up for destruction all products, brochures, signs, packaging, labels, promotional materials, advertisements, prints, catalogues, wrappers, receptacles, and other written or printed materials that bear the infringed trade dress and "SLY" word mark, and any plates, molds, and other materials for making such infringing products.

D. That Defendants be directed to file with this Court and to serve upon Plaintiff within three (3) days after service of the injunction issued in this action, a written report under oath, setting forth in detail the manner of compliance with paragraphs B and C, pursuant to 15 U.S.C. 1116(a).

E. That Plaintiff recover Defendants' profits and the damages arising from Defendants' acts of trade dress and trademark infringement, trademark dilution, false designation of origin, dilution, tarnishment, false description or representation, unfair competition, deceptive trade and business practices, and consumer fraud pursuant to 15 U.S.C. 1117(a).

F. That the Court treble such damages as awarded pursuant to 15 U.S.C. 1117(a).

14

G.  That Plaintiff recover pre-judgment and post-judgment interest on each and every award.

H.  That Plaintiff recover its reasonable attorney fees incurred in this action pursuant to 15 U.S.C 1117(a).

I.  That Plaintiff have and recover its taxable costs and disbursements incurred in this action pursuant to 15 U.S.C. 1117(a).

J.  That Plaintiff have such other and further relief as the Court may deem just and proper.

K.  That Plaintiff at its option be awarded statutory damages of $1 million in lieu of actual damages pursuant to 1117(a).

## JURY DEMAND

Plaintiff respectfully requests a trial by jury as to all issues.

Dated: New York, New York
April 8, 2005

Respectfully Submitted,

THE BOSTANY LAW FIRM

By: _____
JOHN P. BOSTANY (JB-1986)
Attorney for Plaintiff SLY
40 Wall Street
New York, New York 10005
(212) 530-4400

15