UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
SLY MAGAZINE, LLC,

                Plaintiff,

                                                     Civil Action No.: 07 CV 6265 (DAB)

- against -

CURTIS CIRCULATION COMPANY,
HUDSON NEWS COMPANY,
WAL-MART STORES, INC.,
CHAS LEVY CIRCULATING CO., LLC,
ANDERSON NEWS, LLC,
MAGAZINE DISTIBUTORS,
INCORPORATED, INGRAM,
PERIODICALS, INC.,
THE NEWS GROUP, INC. and
GOPHER NEWS COMPANY,

                Defendants.
-------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

**PRELIMINARY STATEMENT**

Plaintiff respectfully requests that Defendants' motion to dismiss be denied because Plaintiff's complaint sets forth facts entitling it to relief.

**FACTS**

Judge Casey did not hold, as defendants attorney continues to represent, that the claims against the defendants in this case "would be futile". On the contrary, Judge Casey referring to the defendants here as "third parties" called them "direct infringers" who should not be joined in the case against the publishers for procedural reasons.

There is no dispute that the defendants named here are "distributors" that began marketing and selling the magazine after the mark was registered to plaintiff thereby becoming the converse of the "publishers" who Judge Casey found stopped selling the magazine before the mark was registered. Judge Casey held that the publishers could not be liable under Section 35(a) and rejected the plaintiff's argument that the publishers could be equated with the distributors based on a theory of co-infringement. However, that holding clearly does not immunize the distributors themselves from liability as defense counsel seeks to lead this Court to believe.

Also, contrary to defendants' representation, in their dramatic attempt to have this Court invalidate plaintiff's trademark registration, plaintiff "did print and distribute some hard copy SLY publications in 2004 and 2005 as explained in paragraphs 7 and 15 of the Declaration of Adrienne Raps". See August 7, 2007 Declaration of Ruby Charles and the Declaration of Adrienne Raps, which are annexed to the September 17, 2007 Declaration of Susan J. Kohlmann in support of this motion, as exhibits 34 and 31 respectively.

It is worthwhile noting that the defendants' attorneys here are the same attorneys that were fully aware of the plaintiff's trademark application and received Notice of Publication of the SLY mark in 2005, giving them a full and fair opportunity to oppose the plaintiff's registration in the USPTO which was finally awarded in January of 2006. It is therefore entirely improper for the defendants' attorneys to make such conclusory arguments on a 12(b)(6) motion without so much as objecting to the registration in the proper procedural manner.

## ARGUMENT

## POINT I

## DEFENDANTS' ARE NOT ENTITLED TO RELIEF UNDER FRCP 12(b)(6)

On a motion under Rule 12(b), all factual allegations in the complaint are deemed true and all reasonable inferences favor the plaintiff. See *Koppel v. 4987 Corp.*, 167 F.3d 125, 127 (2d Cir. 1999); *Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997). "The issue to consider is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Crawford & Sons, Ltd. Profit Sharing Plan v. Besser*, 216 F.R.D. 228, 232 (E.D.N.Y.2003); (citing *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). "Evidence that might be presented at trial will not be weighed; instead, the Court will merely determine whether the complaint itself is legally sufficient." *Id.*

On a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court's task is to assess the legal feasibility of the claim rather than to weigh the evidence that might be offered in support thereof. *Small v. Arch Capital Group, Ltd.*, 2006 WL 2708448 (S.D.N.Y. 2006), citing *Geisler v Petrocelli*, 616 F.2d 636, 630 (2d Cir. 1980). In other words, the issue before the Court on a motion to dismiss "is not whether . . . plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *GMA Accessories, Inc. v. Idea Nuova, Inc.*,157 F.Supp.2d 234 (S.D.N.Y. 2000). In deciding such a motion, the court must accept as true all material facts alleged in the nonmovant's favor. *Keith v. Black Diamond Advisors, Inc.*, 48 F.Supp.2d 326, 329 (S.D.N.Y. 1999) (citations omitted).

Because a motion for summary judgment goes outside the pleadings and introduces evidence which either reasonably supports or refutes the allegations, in the event that the Court decides to treat this motion as one for summary judgment, we respectfully ask for an opportunity to introduce the evidence here that is now before the Hon. Colleen McMahon in the related case. Inasmuch as the exhibits are quite voluminous and disprove many of the conclusory arguments made in affidavits, we respectfully ask for judicial permission before simply filing all papers here. We would also ask for an opportunity to conduct discovery of the defendants here under Rule 56(f), on the issue of their sale of the allegedly infringing products after the plaintiff's mark was registered.

## POINT II

### PLAINTIFF'S TRADEMARK INFRINGEMENT CLAIM SHOULD NOT BE DISMISSED

The two part test for a claim of trademark infringement looks to (1) whether or not the plaintiff's mark is entitled to protection; and (2) whether defendant's use of the mark is likely to cause confusion. *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 115 (2d Cir. 2006); *Virgin Enterprises Ltd. v. Tahir Nawab, et al*, 335 F.3d 141, 146 (2d Cir. 2003).

A.   SLY IS ENTITLED TO PROTECTION AS PLAINTIFF HAS PRIORITY

Plaintiff has priority by virtue of its valid trademark registration. *See Lane Capital Management, Inc. v. Lane Capital Management, Inc.*, 192 F.3d 337, 345 (2d Cir. 1999) ("A certificate of registration with the PTO is prima facie evidence that the mark is registered and valid (*i.e.*, protectible), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce.").

Advertising alone or preparation for the availability of a service or good on the market is not sufficient to clock in a "use" for priority purposes. *Buti v. Perosa*, 139 F.3d 98, 103 (2d Cir. 1998); *Zazu Designs v. L'Oreal*, S.A., 979 F.2d 499, 503 (7th Cir. 1992). This is consistent with the teachings of Judge Friendly in the landmark "use in commerce" decision followed in this Circuit for nearly 30 years. *La Societe Anonyme v. Jean Patou*, Inc. 495 F.2d 1265 (2d Cir. 1974).

Plaintiff launched its commercial website in November of 2004. *See Planetary Motion v. Techplosion*, 261 F.3d 188 (11th Cir. 2001). (publication on the internet is sufficient to satisfy the use in commerce test). *Planned Parenthood Fed'n of America, Inc. v. Bucci*, 1997 WL 133313 (S.D.N.Y. 1997) *aff'd*, 153 F.3d 920 (2d Cir.), *cert. denied*, 525 U.S. 834 (1998).

It is also undisputed that Defendants magazine did not even have a product until at least February of 2005 and therefore it is respectfully submitted that Plaintiff is the "senior user" of the SLY mark. *See Zazu Designs*, 979 F.2d at 503.

The fact that Sylvester Stallone has the SLY nickname is wholly irrelevant to this case as there is no allegation that Stallone used this mark with respect to magazines at any time before Plaintiff. In other words, a person does not have priority to his or her nickname for products it has not used in commerce. *See Brockmeyer v. Hearst Corp.*, 248 F. Supp. 2d 281 (S.D.N.Y. 2003) (Though Oprah Winfrey's nickname is "O" the question of whether she had priority in the mark with respect to magazines hinged on whether or not the prior "O" magazine was confusingly similar to Oprah's magazine). In *Brockmeyer*, Judge Koeltl carefully distinguished Oprah's lifestyle magazine from the blatantly sado-masochistic magazine distributed by the plaintiff in that case and correctly found that the public would not confuse the two publications as coming from the same source.

B.  **THERE IS A STRONG LIKELIHOOD OF CONFUSION BETWEEN THE SLY MARKS**

A successful action for trademark infringement requires the analysis of whether a party's use of a mark is likely to confuse customers as to the source of the product. *See Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1044 (2d Cir. 1992). The Second Circuit analyzes the eight non-exclusive *Polaroid* factors in the likelihood of consumer confusion analysis. *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 116 (2d Cir. 2006). The eight factors are as follows: (1) the strength of the senior mark; (2) the degree of similarity between the two marks; (3) the proximity of the products; (4) the likelihood that the prior owner will "bridge the gap"; (5) actual confusion; (6) defendant's bad faith in adopting the mark; (7) quality of defendant's products; and (8) sophistication of the consumers. *Id.*

a.  **Strength of the Trade Dress**

Plaintiff's trademark registration is prima facie proof of both the validity of the mark and the plaintiff's right to exclusive use of the mark on all goods contained in the registration. 15 U.S.C. 1057(b); *Savin Corp. v. Savin Group*, 391 F.3d 439, 456 (2d Cir. 2004).

Further plaintiff's mark SLY is inherently distinctive adding to its strength. *Virgin Enterprises Ltd. v. Tahir Nawab, et al, 335 F.3d at 147; The Morningside Group Ltd. v. Morningside Capital Group, L.L.C., 182 F.3d at 139; Charles of the Ritz Group Ltd. V. Quality King Distributors, Inc., 832 F.2d at 1321; American Home Products v. Johnson Chemical Co., 589 F.2d 103, 106 (2d Cir. 1977).*

Inherently distinctive marks are either (1) "arbitrary" ("Camel" cigarettes), (2) "fanciful" ("Kodak" film) or (3) "suggestive" ("Tide" laundry detergent). *Wal-Mart Stores, Inc.*, 529 U.S. at 210-11. (*Citing* "the now-classic test originally formulated by Judge Friendly" in *Abercrombie & Fitch, Co. v. Hunting World, Inc.*, 537 F.2d 4, 10-11 (2d Cir. 1976)); *Best Cellars, Inc.*, 90 F. Supp. 2d at 451. By contrast, merely descriptive or generic marks have little or no creative value, do not inherently identify a source of a product and are not "inherently distinctive". *Two Pesos, Inc.*, 505 U.S. at 768-769. As discussed in *Wal-Mart Stores, Inc.,* Courts continue to rely upon Judge Friendly's discussion of the various categories of word marks, which determine their eligibility for protection under § 2 of the Lanham Act. 529 U.S. at 210-11; *Abercrombie & Fitch, Co.*, 537 F.2d at 10-11.; *Best Cellars, Inc.*, 90 F. Supp. 2d at 451.

Judge Friendly, following Judge Learned Hand, outlined the principle "that the validity of the mark ends where suggestion ends and description begins". *Id.* at 10 *quoting Franklin Knitting Mills, Inc.*, 297 F. 247, 248 (2d Cir. 1923) *aff'd per curiam*, 4 F. 2d 1018 (2d Cir. 1925). In the context of word marks, marks that are suggestive, arbitrary or fanciful are held to be inherently distinctive. *Lane Capital Management, Inc. v. Lane Capital Management, Inc.*, 192 F.3d 337, 344 (2d Cir. 1999); *Genesee Brewing Co., Inc. v. Stroh Brewing Co.*, 124 F.3d 137, 143 (2d Cir. 1997). "A term is suggestive if it requires imagination, thought and perception to reach a conclusion as to the nature of the goods." *Abercrombie & Fitch, Co.*, 537 F.2d at 11 (*quoting Stix Products, Inc. v. United Merchants and Manufacturers, Inc.*, 295 F. Supp. 479, 488 (S.D.N.Y. 1968)); *Genesee Brewing Co., Inc.*, 124 F.3d at 142-43. When a word is applied in an unfamiliar way, the use is called arbitrary ("Camel" cigarettes). *Id. See also Lane Capital Management, Inc.*, 192 F.3d 344.

Of the four categories that a trademark may be classified as, arbitrariness is afforded the most protection. *The Morningside Group Ltd. v. Morningside Capital Group, L.L.C.*, 182 F.3d 133, 139 (2d Cir. 1999); *Abercrombie & Fitch Co.*, 537 F.2d at 11. When a word is applied in an unfamiliar way, it is deemed arbitrary. *Id.* There should be "no logical relationship whatsoever between the mark and the product on which it is used." *Nabisco, Inc.*, 191 F.3d at 216. *See also Charles of the Ritz Group Ltd. v. Quality King Distributors, Inc.*, 832 F.2d 1317, 1321 (2d Cir. 1987) ("Opium" as applied to perfume is arbitrary). "A trademark is arbitrary or fanciful if there is no logical relationship whatsoever between the mark and the product on which it is used." *Nabisco, Inc. v. PF Brands, Inc.,* 191 F.3d 208, 216 (2d Cir. 1999).

Plaintiff's product is a magazine. Accordingly, there is no logical relationship between the mark and the product. It is also noteworthy that the U.S.P.T.O. has already determined that the mark is inherently distinctive by issuing the certificate of registration without any claim or proof of acquired distinctiveness. An arbitrary trademark like SLY to identify publication is by its very nature distinctive and strong. *Virgin Enterprises Ltd.*, 335 F.3d at 147; *The Morningside Group Ltd.*, 182 F.3d at 139; *Charles of the Ritz Group Ltd.*, 832 F.2d at 1321; *American Home Products v. Johnson Chemical Co.*, 589 F.2d 103, 106 (2d Cir. 1977).

Plaintiff has established marketplace recognition in the industry illustrated by recognition from individuals in the industry praising SLY magazine. *See* Raps Declaration, Exh. 25. 1Additionally, Plaintiff has received numerous invitations to industry events. *Id.*, Exh. 26. Further, consumers have come to associate the SLY mark with Plaintiff's magazine. *Id.*, Exh. 27. Plaintiff has already received at least 81 subscriptions for its print magazine. *See* Raps Declaration, ¶ 24 and exhibit referenced therein.

---

1 The Raps declaration without exhibits is annexed as Exhibit 31 to the Kohlmann declaration. Plaintiff has requested permission from this court to submit these exhibits as well as the Sweeney Declaration and other evidence in the event that this Court converts the instant motion to a motion for summary judgment.

### b. The Degree Of Similarity Between The Marks

"Of salient importance among the *Polaroid* factors is the 'similarity of the marks' test, which attempts to discern whether the similarity of the marks is likely to cause confusion among potential customers." *Toni & Guy (USA) Ltd. v. Nature's Therapy, Inc.*, 2006 WL 1153354 (S.D.N.Y. 2006) *quoting Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 537 (2d. Cir. 2005).

Here both Plaintiff's and Defendants' use the word SLY. Where both plaintiff's and defendant's marks consist of the same word, minor differences are inconsequential. *Savin Corp. v. Savin Group*, 391 F.3d 439, 458 (2d. Cir. 2004) (subtle differences in fact are inconsequential where same mark used); *Virgin Enterprises Ltd.*, 335 F.3d at 149 (any differences in the marks "are quite minor" in relation to the fact that the name being used was the same); *Rosenthal v Ritelite*, 986 F.Supp. 133, 143 (E.D.N.Y. 1997) ("the differences in typeset are not so significant as to reduce the impact of similarity"); *Toys R Us, Inc. v Canarsie Kiddie Shop, Inc.* 559 F.Supp. 1189, 1197 (E.D.N.Y. 1983). ("minor lettering differences are unlikely to be noticed by many consumers and are undetectable when the two marks are spoken").

### c. The Closeness Of The Products

This factor considers to what extent the 2 products compete against each other, the nature of the products themselves, and the structure of the relevant market. *Eastern America Trio v. Tang Electronics*, 97 F.Supp 2d 395, 411 (S.D.N.Y. 2000) *citing Morningside Group Ltd. v. Morningside Capital Group, L.L.C.,* 182 F.3d 133, 140 (2d Cir. 1999).

9

Defendants use their marks on products, which are similar in kind, in that both are lifestyle/fashion trend magazines, though the Defendants' magazine is marketed to the males and the plaintiff's to females. Plaintiff's SLY also reports on lifestyle issues such as career advancement and electronics and in no way is limited to fashion and shoes. Further, even if Plaintiff's and Defendants' products are considered to be sold in a different market, confusion is more likely. *Lois Sportswear, U.S.A., Inc.*, 799 F.2d at 874 (*quoting* Judge Learned Hand, "…unless the borrower's use is so foreign to the owner's as to insure against any identification of the two, it is unlawful." *Yale Electric Corp. v. Robertson*, 26 F.2d 972, 974 (2d Cir. 1928)).

"The Lanham Act extends trademark protection to related goods in order to guard against numerous evils in addition to restraints on the possible expansion of the senior user's market, including consumer confusion, tarnishment of the senior user's reputation, and unjust enrichment of the infringer." *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 259 (2d Cir. 1987). It is well established that one of the interests protected by the Lanham Act is a "senior user's interest in being able to enter a related field at some future time." *Scarves by Vera, Inc. v. Todo Imports Ltd.*, 544 F.2d 1167, 1172 (2d Cir.1976); *Horn's Inc. v. Sanofi Beaute, Inc.*, 963 F.Supp. 318, 325 (S.D.N.Y. 1997).

In *Bear U.S.A. v. A.J. Sheepskin & Leather*, the court held that there was a heightened sense of confusion where the parties sold the same products even if they did not directly compete. *Bear U.S.A. v. A.J. Sheepskin & Leather*, 909 F.Supp.896, 906 (S.D.N.Y. 1995). The Second Circuit has in many instances protected trademark owners' rights when their marks are used by others on related, but not directly competing, products. *Rosenthal v Ritelite* 986 F.Supp. 133, 140 (E.D.N.Y. 1997). *See also, Warner Bros., Inc. v. Gay Toys, Inc.*, 658 F.2d 76, 78-79 (2d Cir. 1981). These cases recognize that consumers do not always know all of the types of products

manufactured by a particular company and can reasonably be expected to be confused about source or sponsorship when a mark from one product area appears in a related product area. *Rosenthal*, 986 F.Supp. at 140. As such, absent equities in a defendant's favor, courts should enjoin defendants "from using a similar trademark whenever the non-competitive products are sufficiently related that customers are likely to confuse the source of origin." *Id.*; *Scarves by Vera, Inc..*, 544 F.2d at 1173.

Under the Related Products Doctrine, "an owner of a common law trademark may use its mark on related products or services." *See Tally-Ho, Inc. v. Coast Community College Dist.*, 889 F.2d 1018, 1023 (11th Cir. 1989). In applying this doctrine, courts have held that a senior user's first use date will apply to all goods or services within a zone of "natural business expansion." *Scarves by Vera, Inc. v. Todo Imports Ltd.*, 544 F.2d 1167, 1173 (2d Cir. 1976) (extending trademark protection from scarves to cologne); *Communications Satellite Corp. v. Comcet, Inc.*, 429 F.2d 1245, 1251 (4th Cir. 1970) (extending protection from satellites to communications computers); *Aunt Jemima Mills Co. v. Rigney & Co.*, 247 F. 407, 410 (2d Cir. 1917) (extending protection from pancakes to syrup); *Augusta Nat'l, Inc. v. Executive Golf Management, Inc.*, 996 F. Supp. 492, 496-97 (D.S.C. 1998) (extending protection from golf tournament to golf school); *Frank Brunckhorst Co. v. G. Heileman Brewing Co., Inc.*, 875 F. Supp. 966, 978 (E.D.N.Y. 1994) (extending protection from cold cuts to beer); *Lambda Elec. Corp. v. Lambda Tech., Inc.*, 515 F. Supp. 915, 929 (S.D.N.Y. 1981) (extending protection from electronic components to software); *Alfred Dunhill of London, Inc. v. Kassar Distillers Prods. Corp.*, 350 F. Supp. 1341, 1362 (E.D. Pa. 1972) (extending protection from tobacco to whiskey); *Jaguar Cars, Ltd. Skandrani*, 771 F. Supp. 1178, 1183 (S.D. Fla. 1991) (finding that senior user of mark "Jaguar" in connection with cars and sportswear held priority rights to use mark in connection with

cologne); *see also Mantle Lamp Co. v. Alladin Mfg. Co.*, 78 F.2d 426, 429 (7th Cir. 1935) (finding extension of mark from kerosene lamps to electrical lamps to be natural expansion of business); *May Dep't Stores Co. v. Prince*, 200 U.S.P.Q. 803, 809 (T.T.A.B. 1978) (finding extension of mark from general health and beauty aids to shampoo to be natural expansion of business); *J.C. Penney Co., Inc. v. Security Tire & Rubber Co., Inc.*, 382 F. Supp. 1342, 1344 (E.D. Va. 1974) (granting priority rights even though "plaintiff's extension of its trade from bicycle tires to automotive tires began subsequent to defendant's sale of automotive tires").

With both the Plaintiff and Defendants in the same industry, customers were confused as to the source of SLY magazine. "Consumers do not always know all of the types of products manufactured by a particular company and can reasonably expect it to be confused about source or sponsorship when a mark from one product area appears in a related product area". *Rosenthal A.G.*, 986 F. Supp. at 141.

### d. Likelihood That Prior Owner Will Bridge The Gap

Where the infringer's products are made to look confusingly similar to the trademark holder's, as is the case here, this factor need not be considered. *Bristol-Myers Squibb Co.*, 786 F. Supp. at 201.

> The issue here is whether the two companies are likely to compete directly in the same market. This factor applies when the first user sells its products in one field and the second user sells its products in a closely related field, into which the first user might expand, "bridging the gap".

*Best Cellars, Inc*, 90 F. Supp. 2d at 456 (internal quotations omitted).

"Here, there is no gap to bridge." *Id*, "The products are nearly identical and would compete in the same market, supporting the finding of a likelihood of confusion." *Fun-damental*

*Too, Ltd*, 111 F. 3d at 1003. "If the gap is bridged or if consumers would conceive no gap at all, this factor weighs in favor of the trademark owner even if the trademark owner is not targeting the same customers as the alleged infringer." *Cache, Inc. v. M.Z. Burger & Co.*, 2001 WL38283 * 9 (S.D.N.Y. 2001). There is no gap to bridge between SLY Magazine LLC and Defendants' because both products are magazines. To the extent that the court deems the defendant's product to be diverse, the evidence shows that Plaintiff not only has plans to enter the market but has already taken steps toward the transition. *See* Raps Declaration ¶¶ 25-30 and exhibits referenced therein.

*Actual Confusion*

There have been numerous instances of actual confusion. Publishers admission, it is respectfully submitted, is determinative. To wit, the publishers wrote in response to its own readership complaints: "We didn't mean to confuse you. There is another Sly Magazine." *See* Sweeney Declaration, Exh. 31. Nearly 100 emails were written to Plaintiff requesting subscriptions to Defendants' magazine. *See* Sweeney Declaration, Exh. 32. Also, several emails were written to Plaintiff commenting on articles in Defendants' publication. *See* Sweeney Declaration, Exh. 33. Further, over 50 emails were written to Plaintiff requesting a business relationship with Defendants. *See* Sweeney Declaration, Exh. 34. Additionally, Ford Motor Company was so confused that they sent a camera ready advertisement to Plaintiff following negotiations with Defendants' to be an advertiser in its publication. *See* Sweeney Declaration, Exh. 29-30. And finally, Plaintiff received survey responses written by consumers who believed they were rating Defendant's publication. *See* Sweeney Declaration, Exh. 35.

### f.  Defendants' Bad Faith In Adopting The Mark

In determining a second user's intent, actual or constructive knowledge of the prior user's mark may indicate bad faith. *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 258 (2d Cir. 1987). *See also International Star v. Tommy Hilfiger,* 80 F.3d 749, 753-754 (2d Cir. 1996) (a company cannot avoid a finding of knowledge by "covering their eyes and ears"); *Paddington Corp., v. Attiki Importers & Distrib.,* 996 F.2d 577, 587 (2d Cir. 1993). Bad faith may also be found where prior knowledge is accompanied by similarities so strong that it seems clear that deliberate copying occurred. *Id.*

The Court need to reach the question of whether Sylvester Stallone had the rights to the SLY mark with respect to magazines because Mr. Stallone did not license the mark to the defendants or the publishers.

### g. Quality Of Defendants' Products

"A senior user may sue to protect his reputation even where the infringer's goods are of top quality." *Mobil Oil Corp.*, 818 F.2d at 259-60. It is the control of quality that a trademark owner is entitled to that is relevant in this inquiry. *Polymer Technology Corp. v. Mimran*, 975 F.2d 58, 62 (2d Cir. 1992) *citing El Greco Leather Products Co., Inc. v. Shoe World, Inc.* 806 F.2d 392, 395 (2d Cir. 1986) ("the actual quality of the goods is irrelevant; it is the control of quality that a trademark holder is entitled to maintain"); *Frank Brunckhorst Co. v. G. Heileman Brewing Co., Inc.,* 875 F. Supp. 966, 985 (E.D.N.Y. 1994). ("The irreparable injury created by the infringement here at issue is plaintiffs' loss of control over their marks.").

### h.  Sophistication Of Buyers

This factor focuses on "whether consumers spend much time evaluating the product before making a purchase." *See, e.g., Bristol-Myers Squibb Co.,* 786 F. Supp. at 211-12. Even if Plaintiff's and Defendants' consumers are deemed to be sophisticated, the sophistication of Plaintiff's and Defendants' consumers is inconsequential because the products are so similar. Where there is a high degree of similarity between the goods, a buyer's sophistication cannot be relied upon to prevent confusion. *The Morningside Group Ltd.*, 182 F.3d at 143. The similarity of the Plaintiff's product and Defendants' product weighs against relying on a buyer's sophistication.

It is respectfully submitted that magazine buyers are more likely to mistakenly associate Plaintiff's publication using the same name as coming from the same source, as the Defendants' publication. *See Banff v. Federated Department Stores*, 841 F.2d 486, 490-491 (2d Cir. 1988) ("Were reverse confusion not a sufficient basis to obtain Lanham Act protection, a larger company could with impunity infringe the senior mark of a smaller one"); *Rosenthal*, 986 F. Supp. at 143. As a consequence, it is not surprising that prospective purchasers upon seeing the name SLY mistakenly believed that the magazine was geared toward men rather than the unique style conscious female that the magazine is tailored to attract.

## POINT III

**PLAINTIFF IS ENTITLED TO DAMAGES DUE TO THE EXISTENCE OF ACTUAL CONFUSION**

It is well-established that damages are available for a Lanham Act claim in cases where there is actual confusion, or where the defendant's actions were intentionally deceptive. *E.g., George Basch, Co. Inc. v. Blue Coral, Inc.*, 968 F.2d 1532, 1534 (2d Cir. 1992); *Getty*

*Petroleum Corp. v. Island Transportation Corp.*, 878 F.2d 650, 655 (2d Cir. 1989). Here, the Complaint plainly alleges that there has been actual confusion. See Complaint paragraphs 35 and 42. For this reason alone, defendants' motion to dismiss with respect to damages is without basis. On a motion to dismiss, these allegations must be taken as true, and the defendant's motion should accordingly be denied.

The Complaint also alleges that the defendants knowingly and intentionally used plaintiff's trademark. See Complaint paragraphs 39 and 45. As such, even were there no actual confusion, damages would still be in order. *Id*. It has also been held that bad faith is not required for recovery of damages, in light of the amendments to the Lanham Act. *See Nike v. Top Brand, Co.*, 2005 WL 1654859 at * 10 (S.D.N.Y. 2005)

## POINT IV

### PLAINTIFF'S STATE LAW CLAIM SHOULD NOT BE DISMISSED

To establish a claim of common law unfair competition, a plaintiff must prove either (1) a likelihood of confusion or actual confusion; and (2) bad faith on the part of the defendant. *Friesland Brands, B.V. v. Vietnam Nat. Milk Co.*, 228 F.Supp.2d 399, 412 (S.D.N.Y. 2002). The first part of the test is judged in the same manner as in a Lanham Act claim. *Nabisco, Inc.*, 191 F.3d at 212.

Plaintiff has plead both actual confusion and bad faith each of which independently supports the state claim. See Complaint paragraphs 39 and 45. To establish a claim for dilution under New York State's General Business Law § 360-1, a plaintiff must prove (1) inherent or acquired distinctiveness; and (2) likelihood of dilution. *Friesland Brands, B.V.*, 228 F.Supp.2d at 413-14. Inherent distinctiveness alone is sufficient to prevail on the first part of the test. *Id.* at

413. *See also New York Stock Exchange, Inc. v. New York, New York Hotel, LLC*, 69 F.Supp. 2d 479, 490 (S.D.N.Y. 1999); *Bristol-Myers Squibb Co., Inc.,* 973 F.2d at 1048.

For the reasons discussed in Point II (B)(a) *supra*, SLY is inherently distinctive. The SLY mark connotes sexiness, sleekness, and attractiveness. *See* R. Charles Depo., 29:13-29:15. Plaintiff's product is a magazine. Accordingly, there is no logical relationship between the mark and the product.

The second part of the test, likelihood of dilution, may be shown by either blurring or tarnishment. *Paco Sport, Ltd. v. Paco Rabanne Parfums*, 86 F.Supp.2d 305, 328 (S.D.N.Y. 2000). Tarnishment exists when the senior user's trademark "is linked to products of shoddy quality or is portrayed in an unwholesome or unsavory context likely to evoke unflattering thoughts about the owner's product." *Id.* at 329 *quoting Deere & Co. v. MTD Prods., Inc.*, 41 F.2d 39, 43 (2d Cir. 1994).

Plaintiff's magazine is tarnished by Defendants' magazine because the public is likely to associate Plaintiff's SLY with Defendants' male-oriented SLY. *See* R. Charles Declaration, December 9, 2005, ¶ 14, 16.

"The blurring analysis contains six factors: (1) similarity of the trademarks; (2) similarity of the products; (3) consumer's sophistication; (4) predatory intent; (5) the senior mark's renown; and (5) the junior mark's renown. *Paco Sport, Ltd.*, 86 F.Supp.2d at 329. The first five factors are nearly identical to those in the *Polaroid* test, which in this case weigh heavily towards a finding of blurring.

The final factor, the junior's mark renown, is significant here. "[A] junior mark may become so famous that it will overwhelm the senior mark." *Id. quoting Mead Data Cent., Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 875 F.2d 1026, 1038 (2d Cir. 1989). This is exactly the

situation here where the Defendants' have spent a considerable amount of money on publishing and advertising its magazine and distributed hundreds of thousands of issues to the public, creating the false impression that the SLY mark signifies a testosterone driven, cigar smoking publication rather than the Plaintiff's female lifestyle magazine. *See* Raps Declaration, ¶ 30. Accordingly, Plaintiff has a viable cause of action for dilution under New York State law and should be allowed to present its claims to the jury.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that Defendants' Motion to Dismiss be denied.

Dated:  New York, New York
        October 3, 2007

Respectfully submitted,

THE BOSTANY LAW FIRM

By: _____
    Andrew T. Sweeney (AS 0724)
    Attorneys for Plaintiff
    40 Wall Street
    New York, NY 10005
    (212) 530 4400