Susan J. Kohlmann (SK1855)
Elizabeth Valentina (EV4345)
JENNER & BLOCK LLP
919 Third Avenue, 37th Floor
New York, NY 10022
(212) 891-1600
(212)891-1699 (facsimile)
*Attorneys for Defendants, Curtis Circulation Company, Hudson News Company, Wal-Mart Stores, Inc., Chas Levy Circulating Co., LLC, Anderson News LLC, Magazine Distributors, Incorporated, The News Group, Inc. and Gopher News Company.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SLY MAGAZINE, LLC,<br><br>    *Plaintiff*,<br><br>v.<br><br>CURTIS CIRCULATION COMPANY, et al.,<br><br>    *Defendants*. | Civ. No. 07-O6265 (DAB) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS**

TABLE OF CONTENTS

**INTRODUCTION** ................................................................................................................1

**I. PLAINTIFF'S CLAIMS ARE NOT PLAUSIBLE ON THEIR FACE** ...................1

    A. Plaintiff's Complaint Cannot Meet the Standard for a Motion to Dismiss. ................1

    B. No Additional Discovery is Warranted for Dismissal on the Merits. ........................2

**II. PLAINTIFF'S TRADEMARK INFRINGEMENT AND RELATED UNFAIR COMPETITION CLAIMS MUST BE DISMISSED** ...................................................3

    A. Plaintiff's Trademark Registration is Not Enforceable. ..............................................3

    B. Plaintiffs' Rights to the SLY Designation are Not Superior. .....................................4

    C. There is No Likelihood of Confusion. ..........................................................................5

        1. *Plaintiff's mark is weak.* ...........................................................................................5

        2. *Plaintiff's use of the Sly designation was distinct from Defendants' SLY.* ...............6

        3. *Plaintiff and Defendants did not compete in the same market.* ................................6

        4. *There was and is no likelihood of bridging the gap.* ................................................7

        5. *There was no actual trademark confusion.* .............................................................8

        6. *Defendants did not adopt SLY in bad faith.* .............................................................8

        7. *The relevant consumers were sufficiently sophisticated to distinguish between AMI's magazine and the Plaintiff's Website.* ................................................9

**III. PLAINTIFF IS NOT ENTITLED TO DAMAGES** .................................................9

**IV. PLAINTIFF'S NEW YORK STATE LAW CLAIMS MUST BE DISMISSED** ...9

**CONCLUSION** ..................................................................................................................10

## TABLE OF AUTHORITIES

## FEDERAL CASES

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ............................ 2

*Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007) ............................................... 2

*Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033 (2d Cir. 1992) ............... 9

*Brockmeyer v. Hearst Corp.*, 248 F. Supp. 2d 281 (S.D.N.Y. 2003) ............... 5, 7, 8, 9, 10

*Commc'ns Satellite Corp. v. Comcet, Inc.*, 429 F.2d 1245 (4th Cir. 1970) ........................ 7

*Gualandi v. Adams*, 385 F.3d 236 (2d Cir. 2004) ......................................................... 2

*ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135 (2d Cir. 2007) ............................................. 5

*Lambda Electronics Corp. v. Lambda Technology, Inc.*, 515 F. Supp. 915
   (S.D.N.Y. 1981) ................................................................................................... 7

*Lang v. Retirement Living Publ'g Co.*, 949 F.2d 576 (2d Cir. 1991) ......................... 7, 8, 9

*National Trailways*, 269 F.Supp. 352 (E.D.N.Y. 1965) ................................................ 3

*Orient Exp. Trading Co., Ltd. v. Federated Department Stores, Inc.*, 842 F.2d 650
   (2d Cir. 1988) ...................................................................................................... 4

*Paddington Partners v. Bouchard*, 34 F.3d 1132 (2d Cir. 1994) ................................... 2

*Pilates, Inc. v. Current Concepts, Inc.*, 120 F. Supp. 2d 286 9 (S.D.N.Y. 2000) ............... 4

*Playtex Products, Inc. v. Georgia-Pacific Corp.*, 390 F.3d 158 (2d Cir. 2004) ................ 5

*Sally Gee, Inc. v. Myra Hogan, Inc.*, 699 F.2d 621 (2d Cir. 1983) ................................ 10

*Scarves by Vera, Inc. v. Todo Imports Ltd.*, 544 F.2d 1167 (2d Cir. 1976) ..................... 6

*Streetwise Maps, Inc. v. Vandam, Inc.*, 159 F.3d 739 (2d Cir. 1998) ....................... 5, 6, 8

*W.W.W. Pharm. Co. v. Gillette Co.*, 984 F.2d 567 (2d Cir. 1993) .................................. 6

## FEDERAL STATUTES

15 U.S.C.A. § 1115 ............................................................................................................3

## MISCELLANEOUS

J. Thomas McCarthy, 6 *McCarthy on Trademarks and Unfair Competition*
 §31:59 (4th ed. 2007) ..................................................................................................4

## INTRODUCTION

Plaintiff continues to play games and make a mockery of these proceedings by using misleading language (e.g. conflating Internet website with a printed magazine or calling a single sheet brochure a printed magazine), misstating the law (see sections on Motion to Dismiss Standard and "Related Products Doctrine") and citing to evidence which is not before this Court (e.g. Sweeney Declaration). Significantly, Plaintiff does not dispute that this case arises out of the exact same facts as those in *Sly Magazine, LLC v. Weider Publications LLC and American Media, Inc.*, 05 Civ 3940 (McMahon, J.) (hereinafter "*Weider*").[1] Plaintiff blithely relies on submissions from the *Weider* case that are not before this Court. Furthermore, Plaintiff relies on an invalid trademark registration procured by a fraudulent misrepresentation.

Plaintiff has essentially conceded that the subject matter of Plaintiff's Internet website (which no longer has any content at all and directs viewers to a "myspace" page) and Defendants' 4-issue print magazine, as well as the medium of delivery for each, the target market for each, and the channels of trade for each were completely dissimilar. The allegations in Plaintiff's complaint simply do not plausibly support a claim for trademark infringement. Therefore, for the reasons stated below and in its opening memorandum of law, Defendants' motion to dismiss the complaint should be granted in its entirety.[2]

## I. PLAINTIFF'S CLAIMS ARE NOT PLAUSIBLE ON THEIR FACE

### A. Plaintiff's Complaint Cannot Meet the Standard for a Motion to Dismiss.

Plaintiff completely ignores the Supreme Court's recent pronouncement on the standard

---

[1] The publisher defendants in *Weider*, American Media, Inc. and Weider Publications, LLC shall be referred to collectively as "AMI".

[2] Defendants submit the Declaration of Susan J. Kohlmann dated October 15, 2007, to which all evidence cited in this Reply Memorandum is attached as Exhibits and cited as "SJK2 Ex.__." The exhibits to the Kohlmann Declaration dated September 17, 2007 shall be cited as "SJK Ex.__." Declarations shall be cited as "Name Decl. ¶ __." Deposition transcripts shall be cited as "Name Dep. page:line." The transcript of the hearing of the preliminary injunction motion in *Weider* shall be cited as "P.I. Tr. at page:line," and Judge Casey's Opinion in *Weider* shall be cited as "Op. at __." The Stipulated Facts in the Joint Pre-Trial Order in *Weider* shall be cited as "Stip. Facts in Jt. Pre-Trial Order ¶ __."

under Rule 12(b)(6). A complaint must set forth facts that "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). Where a plaintiff has not "nudged [its] claims across the line from conceivable to plausible," the complaint must be dismissed. *Id.*; *see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). Plaintiff has not pleaded facts necessary to raise plausible claims nor shown its entitlement to relief against Defendants. The record evidence and stipulated facts of *Weider* further establish that Plaintiff has not raised plausible claims here. Nor could Plaintiff demonstrate otherwise at trial. Therefore, the complaint should be dismissed.

### B.      No Additional Discovery is Warranted for Dismissal on the Merits.

The only additional evidence that Defendants have submitted to the Court is record evidence and stipulations from the *Weider* action. Plaintiff has also cited to declarations and exhibits in the *Weider* action in its opposition memorandum (*see, e.g.*, Sweeney Decl.; Raps Decl. Exs. 25-27) but has failed to submit them to the Court. Instead, Plaintiff has requested permission to submit the "voluminous" exhibits now before the Court in *Weider*, as well as additional time to conduct discovery of the defendants in the instant action "on the issue of their sale of the allegedly infringing products after the plaintiff's mark was registered." (Mem. in Opp. at 4.) No such filing or discovery is warranted.

Plaintiff has failed to submit the required Rule 56(f) affidavit, let alone to demonstrate how any undiscovered facts related to the sale of SLY Magazine after January 17, 2006 could reasonably be expected to raise any genuine issue of material fact. *See Gualandi v. Adams*, 385 F.3d 236, 244 (2d Cir. 2004) (describing requirements for affidavit a party requesting discovery under Rule 56(f) must file); *see also Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994) (litigants seeking further discovery under Rule 56(f) must show that the material sought is "germane" to their

case, and that it is "neither cumulative nor speculative") (quoting *Sundsvallsbanken v. Fondmetal, Inc.*, 624 F. Supp. 811, 815 (S.D.N.Y. 1985)).

The Defendants have stipulated in *Weider* to the distribution of SLY Magazine until the end of March 2006. (Stip. Facts in Jt. Pre-Trial Order ¶ 5 – SJK Ex. 3.) Newly discovered details related to that distribution will not shed light upon the central question of law now before this Court, and before the *Weider* Court, namely, whether the distribution of SLY Magazine infringed Plaintiff's trademark rights.[3] Moreover, Plaintiff has failed to specify what "facts" it seeks related to the sale of SLY Magazine after its trademark was registered. Any such facts would necessarily relate only to damages which may be assessed only if the Court finds the Defendants liable.

## II. PLAINTIFF'S TRADEMARK INFRINGEMENT AND RELATED UNFAIR COMPETITION CLAIMS MUST BE DISMISSED

### A. Plaintiff's Trademark Registration is Not Enforceable.

Plaintiff argues that its mark is entitled to protection due to its valid trademark registration. (Mem. in Opp. at 4.) This argument fails. Plaintiff's registration is based upon a fraudulent statement of use. While registration is prima facie evidence of the validity of a mark, the procedural benefits of registration do not inure when registration is based upon fraud. *See* 15 U.S.C.A. § 1115 ("conclusive evidence of the right to use the registered mark shall be subject to [certain] defenses or defects," including "[t]hat the registration or the incontestable right to use the mark was obtained fraudulently").

Furthermore, fraud in the procurement of a trademark registration may be raised as an affirmative defense to a charge of infringement of a registered mark,[4] even if the registration has

---

[3] Plaintiff has effectively conceded that the record in *Weider* is directly applicable here. Accordingly, the determination of the summary judgment motion currently pending in *Weider* will necessarily affect the outcome of this case. In the event the Court is not prepared to dismiss the complaint, Defendants renew their request that the Court grant a stay pending the decision on summary judgment in the *Weider* action.

[4] It is not an argument that can *only* properly be made in opposition to a trademark registration as Plaintiff asserts. (Mem. in Opp. at 2.) See *National Trailways*, 269 F. Supp. 352, 357 (E.D.N.Y. 1965) (ordering cancellation of registrations where defendant entered affirmative defense of fraud but did not formally apply for cancellation).

3

become incontestable. *See* J. Thomas McCarthy, 6 *McCarthy on Trademarks and Unfair Competition* § 31:59 (4th ed., 2007); *Pilates, Inc. v. Current Concepts, Inc.*, 120 F. Supp. 2d 286, 312 (S.D.N.Y. 2000). Plaintiff's trademark registration is too new to be incontestable and should be cancelled given the stipulated facts in *Weider* that the Plaintiff has never published a print magazine. *Orient Exp. Trading Co., Ltd. v. Federated Dept. Stores, Inc.*, 842 F.2d 650, 653 (2d Cir. 1988) (citations omitted) (affirming cancellation of plaintiffs' trademarks in infringement action in part due to exaggerated claimed scope of use of the marks).

There is clear and convincing evidence, as a matter of public record, that Plaintiff deliberately included a false allegation in its declaration of use. Specifically, Plaintiff swore that it had published a print magazine when it had not. (2006 Kohlmann Decl. ¶¶11,16, Exs. H, M – SJK Exs. 19, 22, 24; Stip. Facts to Jt. Pre-Trial Order ¶ 13 – SJK Ex. 3; P.I. Tr. at 4:9-5:6, 33:24-34:6 – SJK Ex. 1; R. Charles Dep. 81:4-13, 99:17-23 – SJK Ex. 4.) Plaintiff cannot -- and *does* not -- claim that such a dramatic deviation from the truth was inadvertent. Instead, Plaintiff argues that it has plans to enter the print magazine market. (Mem. in Opp. at 13.) Future plans, however, do not remedy a fraud that has already taken place. Compounding the fraud, plaintiffs now seek to mislead the Court by claiming that they have distributed "some hard copy SLY publications in 2004 and 2005" without putting those documents before this Court. (Mem. in Opp. at 2; citing Raps Decl. ¶¶ 7, 15 – SJK Ex. 31.) Those exhibits are two-sided single sheet flyers hardly constituting a print magazine. (*See* SJK2 Exs. B, C.) Judge Casey would not tolerate Plaintiff's shenanigans nor should this Court. ("No printed publication. Don't try to blow past me, Mr. Bostany." P.I. Tr. at 4:9-24 – SJK Ex. 1.) Plaintiff's claim for infringement of a registered mark must therefore be dismissed.

**B.   Plaintiffs' Rights to the SLY Designation are Not Superior.**

Notwithstanding the uncontestable fact that Sylvester Stallone has been "publicly known as 'Sly' since in or about 1976, is a famous public figure whose name and public image evoke

4

masculinity, physical fitness and a general 'tough guy' image for millions of fans around the world," (2005 Kohlmann Decl. ¶ 3, Ex. B – SJK Exs. 15, 17; P.I. Tr. at 36:9-18 – SJK Ex. 1), Plaintiff argues that its use of the word "Sly" in connection with its internet website supersedes Sylvester Stallone's right to use his nickname in connection with a magazine he helped create and that was all about him. Defendants' use of SLY for its test magazine capitalized on Stallone's image and name recognition. *Brockmeyer v. Hearst Corp.*, 248 F. Supp. 2d 281, 290 (S.D.N.Y. 2003). The law is clear that Plaintiff's use of "Sly" on unrelated goods, such as an internet website, neither impedes such use nor creates priority of use. *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 147 (2d Cir. 2007) (priority of use established by being the first to use a particular mark to identify goods in a given market).

### C. There is No Likelihood of Confusion.

Plaintiff begins with the mistaken assumption that its mark relates to magazines. As noted, there has been no such use and plaintiff's mark must be considered solely in relation to its website.

#### 1. *Plaintiff's mark is weak.*

Plaintiff mistakenly argues that since its mark is "inherently distinctive" in that there is "no logical relationship between the mark and the product" (Mem. in Opp. at 6-8), it is somehow entitled to protection under the Lanham Act. However, distinctiveness alone is not enough. The Court must also consider the distinctiveness of the mark in the marketplace. *Brockmeyer*, 248 F. Supp. at 294; *see also, Playtex Products, Inc. v. Georgia-Pacific Corp.*, 390 F.3d 158, 163 (2d Cir. 2004); *Streetwise Maps, Inc. v. Vandam, Inc.*, 159 F.3d 739, 743-44 (2d Cir. 1998). There is no "print" magazine in the marketplace. (*See* Casey Op. at 1; "At the time Plaintiff filed the instant motion [March 2006], it had yet to publish a print version of SLY.") Plaintiff makes the dubious and unsubstantiated claim that it has "established marketplace recognition" based on unidentified testimonials (Raps Decl. Ex. 25), a handful of fashion event invitations in 2005 (Raps Decl. Ex. 26)

5

and mostly anonymous web surveys (Raps Decl. Ex. 27). (Mem. in Opp. at 8.) Again, none of these exhibits from the *Weider* action are even before this Court. Furthermore, Plaintiff claims its website is known in the market as Sly based on 81 alleged subscriptions for its non-existent "print magazine." (*Id.*; Raps Decl. ¶ 24 – SJK Ex. 31.) Even if one accepted as true Plaintiff's nonsensical argument that the 81 alleged subscriptions were for its non-existent "print magazine," it hardly constitutes market recognition. It is unclear how, if at all, Plaintiff could even accept payment for a magazine it has not published and cannot deliver. Plaintiff has not made any allegations relating to advertising expenditures, any advertising sold on its website, or even of any actual sales or revenue. Plaintiff's vague and conclusory evidence fails to support in any way the contention that Plaintiff's use of "Sly" strongly identifies its website or that it has acquired distinctiveness in the marketplace. *See Streetwise Maps, Inc.*, 159 F.3d at 744 (citing *W.W.W. Pharm. Co. v. Gillette Co.*, 984 F.2d 567, 572 (2d Cir.1993) (A term that is inherently distinctive does not necessarily produce a strong trademark, if the trademark lacks distinctiveness in the marketplace.)) Furthermore, Plaintiff's website has not displayed any content at all for at least the last month. (SJK2 ¶ 2, Ex. A.)

### 2. *Plaintiff's use of the Sly designation was distinct from Defendants' SLY.*

Defendants' use of SLY referred solely to Sylvester Stallone. Plaintiff does not contest that Defendants used SLY as the nickname for its creator and editorial director Sly Stallone and that Sly Stallone appeared on the cover of several of the issues and was featured in many of the articles. (Swider Decl. ¶¶ 5, 6, Exs. B, C, D, and E – SJK Exs. 27-30.) Plaintiff is not alleging that its use of 'Sly' refers to Stallone in any way but was chosen as an arbitrary mark. (Mem. in Opp. at 8.)

### 3. *Plaintiff and Defendants did not compete in the same market.*

The key inquiry in determining whether products are "related" for the purposes of a trademark dispute is whether customers would be likely to confuse the origin of the products. *See Scarves by Vera, Inc. v. Todo Imports Ltd.*, 544 F.2d 1167, 1173 (2d Cir. 1976). Plaintiff has cited

6

a series of cases for the proposition that because the parties are in the "same industry," customers were confused by the source of the products at issue. (Mem. in Opp. at 11-12.) The form a product takes does not alone determine whether it is related to another product. Instead, in the cases Plaintiff cites, courts found products to be "related" when they were complementary to one another or were marketed to the same consumers. *See id.* (women's scarves and sportswear related to women's cosmetics and toiletries); *Commc'ns Satellite Corp. v. Comcet, Inc.*, 429 F.2d 1245, 1252-53 (4th Cir. 1970) (satellite communications system related to computer systems when they share a class of customers); *Lambda Electronics Corp. v. Lambda Technology, Inc.*, 515 F. Supp. 915, 926 (S.D.N.Y. 1981) (electronic power supplies related to customized software applications because products are complementary and sold to many of the same customers).

In this case, Plaintiff's target customers -- single, affluent women under the age of 35 interested in fashion and shoes -- would not be confused if they saw an issue of Stallone's SLY Magazine. These two products are not interchangeable or complementary, and do not reach remotely the same consumers. (See Defs' Mem. in Supp. at 17-19.) Plaintiff claims the products are "similar in kind, in that both are lifestyle/fashion trend magazines" but Plaintiff's product is not even a magazine at all. (Mem. in Opp. at 10.) Plaintiff's use of the "related products doctrine" is wholly without merit here.

4. *There was and is no likelihood of bridging the gap.*

To bridge the gap, the law cited by Plaintiff requires that, unlike here, "the products [be] nearly identical and [ ] compete in the same market." (Mem. in Opp. at 13.) The question is whether prospective purchasers knew or had reason to believe Plaintiff would publish a print magazine comparable to that distributed or sold by Defendants almost 2 years ago. *Lang v. Ret. Living Publ'g Co.*, 949 F.2d 576, 582 (2d Cir. 1991); *Brockmeyer*, 248 F. Supp at 297. Here, there is nothing to suggest that the average consumer would think such a thing even remotely possible.

7

5.  *There was no actual trademark confusion.*

Actual confusion means "consumer confusion that enables a seller to pass off his goods as the goods of another." *Brockmeyer*, 248 F. Supp at 297. Plaintiff's purported evidence of actual confusion merely indicates that consumers obtained the wrong contact information. These consumers, as characterized by Plaintiff, were merely attempting to contact Defendants – "requesting subscriptions to Defendants' magazine;" "requesting a business relationship with Defendants;" sending "a camera ready advertisement...to be an advertiser in [Defendants'] publication;" and sending "survey responses...rating Defendants' publications." (Mem. in Opp. at 13.) There is no evidence, and indeed Plaintiff does not even suggest, that these consumers were prospective purchasers of Plaintiff's publication. *Lang*, 949 F.2d at 583. On the contrary, many of the consumers reference their connection to Sylvester Stallone ("I am a massive Stallone fan," "a follower of Stallone since I first saw Rocky," heard about the show "from Sly himself on NBC" and "Sly on Larry King," Sweeney Decl. Ex. 32 – SJK2 Ex. C.) In *Lang*, the Court rejected similar (but significantly more substantial) evidence, "approximately four hundred phone calls," and held reliance on such "evidence of actual confusion was misplaced." *Id*. As in *Lang*, this evidence does not establish that Defendants were trying to pass off their goods as Plaintiff's. *Id*. at 582.[5]

6.  *Defendants did not adopt SLY in bad faith.*

Incredibly, Plaintiff suggests that "deliberate copying occurred." (Mem. in Opp. at 14.) Bad faith requires a finding that a defendant chose the trademark with the intention of capitalizing on the plaintiff's reputation and goodwill. *Lang*, 949 F.2d at 583-4; *Streetwise*, 159 F.3d at 745. Prior knowledge that a similar trademark is registered is not necessarily inconsistent with good faith, *id.*, particularly if the Defendants reasonably conclude that there is no likelihood of confusion between their use of the mark and the Plaintiff's use of the mark, *Brockmeyer*, 248 F. Supp. 2d 281. Here,

---

[5] Nor does AMI's editorial remark reprinted in the first issue of its magazine suggest otherwise. The remark was made entirely in jest because Plaintiff's website was so obviously unrelated to AMI's magazine.

8

even if Defendants had prior knowledge of the Plaintiff's use of the mark "Sly," they chose the name SLY in good faith to capitalize on Stallone's reputation and celebrity persona.[6]

### 7. *The relevant consumers were sufficiently sophisticated to distinguish between AMI's magazine and the Plaintiff's Website.*

Again Plaintiff makes the ludicrous allegation that "the products are so similar." (Mem. in Opp. at 15.) Plaintiff raises in passing an argument apparently based on reverse confusion. However, "[r]everse confusion exists when a subsequent user selects a trademark that is likely to cause consumers to believe, erroneously, that the goods marketed by the prior user are produced by the subsequent user." *See Lang*, 949 F.2d at 583; *Brockmeyer*, 248 F. Supp. 2d at 293. The misdirected emails to which Plaintiff refers do not indicate that the individuals who sent them erroneously believed that Defendants were the source of Plaintiff's website – they were merely trying to contact Defendants. *Id.* Plaintiff's allegations in its complaint simply do not plausibly support a likelihood of confusion and therefore Counts I, II and V should also be dismissed.

## III. PLAINTIFF IS NOT ENTITLED TO DAMAGES

The purported evidence of actual confusion is not actionable at all and cannot form the basis for a damages claim. Furthermore, Defendants submit that the assessment of the availability of damages and amounts, if any, should be undertaken after a decision on liability.

## IV. PLAINTIFF'S NEW YORK STATE LAW CLAIMS MUST BE DISMISSED

The undisputed facts do not support a finding of actual confusion or likelihood of confusion, nor do they establish bad faith on the part of Defendants. Therefore, Plaintiff's claim for unfair competition must be dismissed. Plaintiff's claim for dilution is equally without merit. The Second Circuit requires that the mark must be truly distinctive, or have acquired secondary meaning. *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1049 (2d Cir. 1992). Where a

---

[6] Plaintiff also makes the false and misleading claim that Mr. Stallone did not license the mark to the Defendants or the publishers. The details concerning the contractual relations between Defendants and/or the publishers and Stallone do not create an issue preventing entry of dismissal. There is no reason to believe that AMI's collaboration with Sly Stallone to create the test magazine was anything other than authorized.

9

plaintiff claims inherent distinctiveness of a mark to make out a state dilution claim, the Second Circuit has held that the statute "'protects only extremely strong marks.'" *Id.* (quoting *Sally Gee, Inc. v. Myra Hogan, Inc.*, 699 F.2d 621, 624 (2d Cir. 1983). As discussed above, Plaintiff's mark is weak and therefore cannot maintain a dilution claim. *Brockmeyer*, 248 F. Supp. 2d at 301. The facts also do not support a likelihood of dilution by blurring or tarnishment, nor are there any allegations that even support such a claim.

Sylvester Stallone was famous and well-known as SLY well before Plaintiff adopted the mark "Sly." (2005 Kohlmann Decl. ¶ 3, Ex. B – SJK Exs. 15, 17; P.I. Tr. at 36:9-18 – SJK Ex. 1.) Indeed, Plaintiff admits that SLY signified "a testosterone driven, cigar smoking publication rather than the Plaintiff's female lifestyle magazine" in which case there certainly cannot be any confusion, let alone dilution. (Mem. in Opp. at 18.) Therefore, Plaintiff's state law claims are not plausible and Counts IV and V should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant Defendants' motion to dismiss Plaintiff's complaint in its entirety.

Date:   October 15, 2007

Respectfully submitted,

JENNER & BLOCK LLP

By: /s Susan J. Kohlmann
Susan J. Kohlmann (SK1855)
Elizabeth Valentina (EV4345)
919 Third Avenue
New York, New York 10022
(212) 891-1600
(212) 891-1699

*Counsel for Defendants, Curtis Circulation Company, Hudson News Company, Wal-Mart Stores, Inc., Chas Levy Circulating Co., LLC, Anderson News LLC, Magazine Distributors, Incorporated, The News Group, Inc. and Gopher News Company*

## CERTIFICATE OF SERVICE

I, Susan J. Kohlmann, an attorney, hereby certify that on this 15th day of October, 2007, I caused true and correct copies of the foregoing *Reply Memorandum of Law in Support of Defendant' Motion for to Dismiss* to be served on the following individuals in the following manner:

**By USPS First Class Mail and ECF:**

**John Peter Bostany**
**Andrew Thomas Sweeney**
The Bostany Law Firm
40 Wall Street
New York, NY 10005
(212) 530-4400
Fax: (212) 530-4488
Email: Andrew.Sweeney@Bozlaw.com
Email: John@Bozlaw.com
*Attorneys for Plaintiff*

**Voute, Lohrfink, Magro & Collins, LLP**
Ralph F. Schoene
Elliot A. Cristantello
170 Hamilton Avenue
White Plains, New York 10601-1789
Email: elliot@vlmc-law.com
*Attorneys for Defendant, Ingram Periodicals, Inc.*

s/ Susan J. Kohlmann